James R. Touchstone, SBN 184584
 jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
 dlr@jones-mayer.com
Scott Wm. Davenport, SBN 159432
 swd@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendants,
CITY OF ONTARIO and ALBERT ALVARADO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE and NICOLE VENTRESS,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No.: 5:23-CV-00266-SSS<br><br>*Judge:* Hon. Sunshine S. Sykes<br><br>**DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>Date:　May 17, 2024<br>Time:　2:00 p.m.<br>Ctrm:　2 |

**TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

　　Defendants CITY OF ONTARIO and ALBERT ALVARAO respectfully submit the following Statement of Uncontroverted Facts and Conclusions of Law, in support of their Motion for Summary Judgment and/or Partial Summary Judgment of Issues. As set forth herein, Defendants submit that Plaintiffs have not – and cannot – carry their burden of demonstrating a genuine issue of material fact and, accordingly, the motion should be granted.

/ / /

/ / /

-1-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. Shortly before midnight on February 22, 2021, members of the Ontario Police Department attempted to initiate a traffic stop of Joseph Benavente who was driving a car with what appeared to be illegally tinted windows. | 1. Benavente Depo at 12; Alvarado Depo at 6, 30; Vasquez Lopez Depo at 6; Varela Depo at 9, 26, 30. |
| 2. Unbeknownst to the officers, Benavente was a recent parolee who had been in-and-out of both the juvenile justice and adult incarceration systems for most of his life and had only been in California for six days. | 2. Benavente Depo at 32, 34, 36, 44-50, 53, 60. |
| 3. Rather than pulling over, Benavente led the officers on a five to seven minute high-speed chase in which he drove on the wrong side of the road, almost t-boned a civilian motorist at an intersection, stopped and then performed a U-turn in an attempt to escape. | 3. Alvarado Depo at 33, 35; Vasquez Lopez Depo at 11; Varela Depo at 32, 34, 43, 45; *Exhibit* G-1 at 0:13-0:30), *Exhibit* G-3 at 0:45. |
| 4. After attempting to evade the officers for approximately five to seven minutes, Benavente pulled into a cul-de-sac, found himself trapped, and came to an abrupt halt. | 4. Varela Depo at 32, 49, 52; *Exhibit* "G-2" at 0:01-0:06. |

| | | |
|---|---|---|
| 1 2 3 4 5 | 5.   Believing that a foot pursuit was about to ensue, Corporal Albert Alvarado, an experienced field training officer, opened his car door and started to exit his vehicle. | 5.   Alvarado Depo at 20; Varela Depo at 20. |
| 6 7 8 9 | 6.   When Benavente stopped for the second time, Corporal Alvarado did not know if he was going to run, surrender, or drive off again. | 6.  Alvarado Depo at 39. |
| 10 11 12 13 14 15 16 17 18 19 | 7.   However, instead of surrendering himself, Benavente threw his car into reverse, revved his engine, accelerated backwards at a high rate of speed while significantly turning his vehicle directly toward Corporal Alvarado's patrol vehicle, striking both the front of Corporal Alvarado's patrol vehicle as well as the door Corporal Alvarado was standing behind. | 7.   Alvarado Depo at 12-13, 27; Vasquez Lopez Depo at 18-19; Varela Depo at 49, 52, 56, 58-59; *Exhibit "G-2"* at 0:01-0:06; see *Exhibits* "H", "I", and "J"; *Exhibit* "K" at 8-9. |
| 20 21 22 23 | 8.   As Corporal Alvarado stepped out of his car, he saw Benavente's reverse lights come on, but he had no time to get back in the car. | 8.  Alvarado Depo at 26, 46-48. |
| 24 25 26 27 28 | 9.   Finding himself sandwiched between his open patrol car door and the frame of his vehicle, and believing he was about to be crushed to death, | 9.   Alvarado Depo at 6, 8, 12, 29, 48-49; Vasquez Lopez Depo at 6-7, 9, 36-38; Exhibit E; Varela Depo at 9-10; *Exhibit "G-2"* at 0:01-0:06; |

| | |
|---|---|
| Corporal Alvarado fired three shots in rapid succession at Benavente's car from a distance of approximately one to four feet. | *Exhibit* "G-3" at 0:58-1:00; see *Exhibit* "K" at 8-9. |
| 10.   Corporal Alvarado fired because he was trying to stop the threat. | 10.   Alvarado Depo at 8. |
| 11.   Benavente's car continued backwards and struck a second patrol care almost simultaneously. | 11.   Alvarado Depo at 27, 63; Lopez Depo at 7, 19; see *Exhibits* "H", "I", and "J". |
| 12.   At this point, Benavente appeared hurt and slumped forwards toward the steering wheel. | 12.   Alvarado Depo at 15. |
| 13.   Benavente's car, however, was still operation, was placed in drive, and began to roll forward before coming to rest against a sidewalk curb and tree. | 13.   Vasquez Lopez Depo at 23; *Exhibit* "G-2" at 0:14-0:21; *Exhibit* "G-3" at 1:08-1:15. |
| 14.   After clearing Benavente's car of a passenger and securing the scene, Officers made repeated calls for Benavente to exit the vehicle. | 14.   *Exhibit* "G-3" at 2:04-6:04. |
| 15.   After approximately four minutes and seeing no response from Benavente, the officers approached and observed that Benavente had been shot through the neck. | 15.   Vasquez Lopez Depo at 28-30; *Exhibit* "G-3" at 7:37-8:29. |

| 16. Benavente was removed from the car, handcuffed, and searched for weapons. | 16. Lopez Depo at 31; Varela Depo at 69; *Exhibit* "G-3" at 8:40-9:29. |
|---|---|
| 17. Benavente was subsequently pronounced dead at the scene by responding paramedics. | 17. Alvarado Depo at 49-50; *Exhibit* "G-3" at 11:46-17:08. |

## **CONCLUSIONS OF LAW**

1. A Motion for Summary Judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986).

2. It is the moving party's burden to show it is entitled to summary judgment — that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511; see also *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir. 1983).

3. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Anderson,* 477 U.S. at 252.

5. Even though evidence on summary judgment must be viewed in light most favorable to the non-moving party, plaintiffs must do more than simply make allegations that defendants acted improperly in order to survive summary judgment. Fed. R. Civ. P. 56(e)(2); *Jeffers v. Gomez,* 267 F.3d 895, 907 (9th Cir. 2001). The non-moving party must make this showing with admissible evidence.

1. *See Celotex,* 477 U.S. at 324.

2.     6.    In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that an excessive force claim is properly analyzed under the Fourth Amendment's objective reasonableness standard. *Id*. at 388. The Graham court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape. *Id*. at 394-395. The test is an objective one, viewed from the vantage of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others. *Id*. at 396-397.

    7.    Probable cause exists where the facts and circumstances within an officer's knowledge of which they had reasonably trustworthy information are sufficient in themselves to warrant a mean of reasonable caution in the belie3e that an offense has been or is being committed. *Carrol v. United States,* 267 U.S. 132, 162 (1925). Probable cause means less than evidence that would justify a conviction. *Brinegar v. United States,* 338 U.S. 160, 175 (1949). Even an acquittal would not be evidence of a lack of probable cause. *Id.* Thus, the mere fact that a prosecution was unsuccessful does not mean that it was not supported by probable cause. *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995).

    8.    Allegations of denial of medical care immediately following arrest are also analyzed under the Fourth Amendment's reasonableness standard. See *Tatum v. City and Cnty. of S.F.*, 441 F.3d 1090, 1098 (9th Cir. 2006). The reasonableness inquiry in this context is whether the officer's actions with regard to medical care were "'objectively reasonable' in light of the facts and circumstances confronting" the officer. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). "Just as the Fourth Amendment does not require a police officer to use the least intrusive

method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098. An officer satisfies the Fourth Amendment reasonableness standard by summoning the necessary medical assistance for an injured arrestee. *Tatum*, 441 F.3d at 1099; see also *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986).

9. Qualified immunity protects government officials from suit under federal law claims if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. at 230.

10. To evaluate qualified immunity, a court must first decide whether the facts show that the governmental official's conduct violated a constitutional right. *Jackson v. County of Bremerton*, 268 F.3d 646 (9th Cir 2001). Second, a court decides whether the governmental official could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established right. *Id*. However, the court may skip the first step and proceed to the second. *Pearson v. Callahan*, 555 U.S. at 227.

11. The U.S. Supreme Court has recently clarified that a governmental official is entitled to qualified immunity from suit/liability where, at the time of the conduct, there was no prior precedent or case law with facts specifically and substantially identical to the facts of the incident at issue which would have put the defendant on notice that his or her conduct was unconstitutional. *White v. Pauly*, 580 U.S. 73, 79 (2017) ("clearly established law" should not be defined "at a high

level of generality" but must be "particularized" to the facts of the case).

12. Under the doctrine of qualified immunity, if a government official's mistake as to what the law requires is reasonable, the government official is entitled to qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 205 (1984). Moreover, this doctrine is sweeping in scope and designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Dated: March 29, 2024                     JONES MAYER

                                          */s/ Scott Wm. Davenport*
                                          By: _____
                                          JAMES R. TOUCHSTONE
                                          DENISE L. ROCAWICH
                                          SCOTT WM. DAVENPORT

                                          Attorneys for Defendants,
                                          CITY OF ONTARIO and ALBERT
                                          ALVARADO