**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
*dalekgalipo@yahoo.com*
Eugenia Bagdassarian (SBN 334898)
*ebagdassarian@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

**RODRIGUEZ APODACA LAW FIRM, LLP**
Richard A. Apodaca (SBN 292294)
*richarda@ralawllp.com*
Elissa K. Buenrostro (SBN 303299)
*elyb@ralawllp.com*
Empire Towers I
3633 Inland Empire Blvd., Suite 575
Ontario, CA 91764
Tel:   (909) 944-3777
Fax:   (909) 944-5777

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS, | Case No.: 5:23-cv-00266 |
| Plaintiffs, | **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES** |
| v. | 1.  42 U.S.C. § 1983 (Fourth Amendment – Detention and Arrest) |
| ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1-10, inclusive, | 2.  42 U.S.C. § 1983 (Fourth Amendment – Excessive Force) |
| Defendants. | 3.  42 U.S.C. § 1983 (Fourth Amendment – Denial of Medical Care) |
| | 4.  42 U.S.C. § 1983 (Fourteenth Amendment – Denial of Familial Relationship) |
| | 5.  42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy) |
| | 6.  42 U.S.C. § 1983 (Municipal Liability – Failure to Train) |
| | 7.  42 U.S.C. § 1983 (Municipal Liability – Ratification) |
| | **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES**

2    COME NOW, Plaintiffs FRANK BENAVENTE and NICOLE VENTRESS

3    for their First Amended Complaint against ALBERT ALVARADO; CITY OF

4    ONTARIO; and DOES 1-10, inclusive and hereby allege as follows:

5

**INTRODUCTION**

6    1.    This civil rights action seeks compensatory and punitive damages

7    from Defendants for violating various rights under the United States

8    Constitution in connection with the shooting of Decedent, JOSEPH

9    BENAVENTE, on or about February 22, 2021.  The Defendants are liable

10    under the Constitution of the United States pursuant to the Fourth and

11    Fourteenth Amendments brought under 42 U.S.C. § 1983.

12    2.    Defendants ALBERT ALVARADO ("ALVARADO") and Does

13    1-6, inclusive ("DOE OFFICERS") caused Plaintiffs' and JOSEPH

14    BENAVENTE'S various injuries herein by integrally participating or failing

15    to intervene in the incident, and by engaging in other acts and/ or omissions

16    around the time of the incident.

17    3.    Defendants CITY OF ONTARIO and DOES 7-10, inclusive, also

18    caused various injuries and are liable under federal law and under the

19    principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658

20    (1978).

21    4.    This action is in the public interest as PLAINTIFFS seek by

22    means of this civil rights action to hold accountable those responsible for the

23    shooting, and CITY OF ONTARIO'S ratification, failure to train, and policy

24    of inaction in the face of serious constitutional violations.

25

**THE PARTIES**

26    5.    At all relevant times, Decedent, JOSEPH BENAVENTE

27    ("DECEDENT"), was an individual residing in the CITY OF ONTARIO,

28    California.

1

6.     At all relevant times, Plaintiff FRANK BENAVENTE ("BENAVENTE") was and is an individual residing in San Bernardino County, California. BENAVENTE is the father of DECEDENT and brings this action both in his individual capacity for wrongful death damages as the father of DECEDENT and in a representative capacity as DECEDENT'S successor in interest pursuant to California Code of Civil Procedure § 377.60.  BENAVENTE seeks both survival and wrongful death damages under federal law.

7.     At all relevant times, Plaintiff NICOLE VENTRESS ("VENTRESS") is an individual residing in the CITY OF ONTARIO, California. VENTRESS is the mother of DECEDENT. VENTRESS brings this action both in her individual capacity for wrongful death damages as the mother of DECEDENT and in a representative capacity as DECEDENT'S successor-in-interest pursuant to California Code of Civil Procedure § 377.60.  VENTRESS seeks both survival and wrongful death damages under federal.

8.     At all relevant times, Defendant CITY OF ONTARIO ("CITY") is and was a municipal corporation existing under the laws of the State of California.  CITY is a chartered political subdivision of the State of California with the capacity to be sued.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Ontario Police Department ("OPD") and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, CITY was the employer of DOES 1-10, inclusive.

9.     At all relevant times, Defendant ALBERT ALVARADO was an officer working for the OPD.  ALVARADO was acting under color of law and within the course and scope of his duties as officers for the OPD.

2

FIRST AMENDED COMPLAINT FOR DAMAGES

1   ALVARADO was acting with the complete authority and ratification of his
2   principal, Defendant CITY.

3       10.   At all relevant times, Defendant Officers DOES 1-6 ("DOE
4   OFFICERS"), inclusive, were officers working for the OPD.  DOE
5   OFFICERS were acting under color of law and within the course and scope
6   of their duties as officers for the OPD. DOE OFFICERS were acting with the
7   complete authority and ratification of their principal, Defendant CITY.

8       11.   Defendants DOES 7-8, inclusive, are supervisory officers for the
9   OPD who were acting under color of law within the course and scope of their
10  duties as officers for the OPD.  DOES 7-8 were acting with the complete
11  authority and ratification of their principal, Defendant CITY.

12      12.   Defendant DOES 9-10 are managerial, supervisorial, or
13  policymaking employees of the CITY OF ONTARIO Police Department who
14  were acting under color of law within the course and scope of their duties as
15  supervisorial officers for the CITY OF ONTARIO Police Department.
16  DOES 9-10, inclusive, were acting with the complete authority of their
17  principal, CITY.

18      13.   On information and belief, ALVARADO and DOES 1-10 were
19  residents of the CITY OF ONTARIO.

20      14.   In doing the acts and failing and omitting to act as hereinafter
21  described, Defendants ALVARADO and DOE OFFICERS were acting on the
22  implied and actual permission and consent of Defendants OPD and DOES 7-
23  10.

24      15.   In doing the acts and failing and omitting to act as hereinafter
25  described, Defendants ALVARADO and DOES 1-10 were acting on the
26  implied and actual permission and consent of the CITY.

27      16.   The true names and capacities, whether individual, corporate,
28  association or otherwise of Defendants DOES 1-10, inclusive, are unknown

3

1    to Plaintiffs, who otherwise sues these Defendants by such fictitious names.

2    Plaintiffs will seek leave to amend this complaint to show the true names and

3    capacity of these Defendants when they have been ascertained.  Each of the

4    fictitiously-named Defendants is responsible in some manner for the conduct

5    or liabilities alleged herein.

6         17.    At all times mentioned herein, each and every defendant was the

7    agent of each and every other defendant and had the legal duty to oversee

8    and supervise the hiring, conduct, and employment of each and every

9    defendant.

10        18.    AN of the acts complained of herein by Plaintiffs against

11   Defendants were done and performed by said Defendants by and through

12   their authorized agents, servants, and/or employees, all of whom at all

13   relevant times herein were acting within the course, purpose, and scope of

14   said agency, service, and/or employment capacity.  Moreover, Defendants

15   and their agents ratified all of the acts complained of herein.

16        19.    All DEFENDANTS who are natural persons, including

17   ALVARADO and DOES 1-10, inclusive, are sued individually and/or in

18   his/her capacity as officers, deputies, investigators, sergeants, captains,

19   commanders, supervisors, and/ or civilian employees, agents, policy makers,

20   and representatives of the CITY and the OPD.

21        20.    DECEDENT suffered serious bodily injury and death as a direct

22   and proximate result of the actions and inactions of Defendants

23   ALVARADO and DOES 1-10, inclusive.  Defendant Officers are directly

24   liable for DECEDENT'S injuries under federal law pursuant to 42 U.S.C. §

25   1983.

26        21.    Plaintiff BENAVENTE suffered the loss of his son as a direct

27   and proximate result of the actions and inactions of Defendant Officers.

28   Defendant Officers are directly liable for BENAVENTE'S injuries under

4

FIRST AMENDED COMPLAINT FOR DAMAGES

1    federal law.

2        22.    Plaintiff VENTRESS suffered the loss of her son as a direct and

3    proximate result of the actions and inactions of Defendant Officers.

4    Defendant Officers are directly liable for VENTRESS'S injuries under

5    federal law.

6                    **JURISDICTION AND VENUE**

7        23.    The Court has jurisdiction over PLAINTIFFS' federal law claims

8    pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS

9    assert claims arising under the laws of the United States including 42 U.S.C.

10   § 1983, and the Fourth and Fourteenth Amendments of the United States

11   Constitution.

12       24.    Venue in this judicial district is proper pursuant to 28 U.S.C. §

13   1391(b), because all incidents, events, and occurrences giving rise to this

14   action occurred within this district.

15              **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16       25.    PLAINTIFFS repeat and re-allege each and every allegation of

17   paragraphs 1 through 24, inclusive, as if fully set forth herein.

18       26.    On or about February 22, 2021, at or around approximately

19   11:56 p.m., ALVARADO and DOE OFFICERS encountered DECEDENT in

20   Ontario, California. ALVARADO and DOE OFFICERS did not have

21   reasonable suspicion to detain, or probable cause to arrest, DECEDENT.

22   Nevertheless, DOE OFFICERS fatally shot DECEDENT while he was in a

23   moving vehicle.

24       27.    At the time of the shooting and other undiscovered uses of force,

25   DECEDENT did not pose an immediate risk of death or serious bodily injury

26   to any person and ALVARADO and DOE OFFICERS had other reasonable

27   options available to them.

28   / / /

28.     Prior to shooting, ALVARADO and DOE OFFICERS failed to give adequate commands to DECEDENT, and failed to give DECEDENT an opportunity to comply with commands prior to their use of excessive and unreasonable force.

29.     Moreover, ALVARADO and DOE OFFICERS failed to give DECEDENT a verbal warning that deadly force would be used prior to the use of deadly force, and failed to give DECEDENT an opportunity to heed any warning prior to their use of excessive and unreasonable force.

30.     When ALVARADO and DOE OFFICERS arrived on scene, they had no information that DECEDENT had committed any crime and no information that DECEDENT had injured or threatened to harm anyone. ALVARADO and DOE OFFICERS failed to employ tactics to de-escalate the situation, failed to give DECEDENT commands and instructions, and failed to give DECEDENT the opportunity to comply with commands and instructions.

31.     After being shot, DECEDENT was immobile, bleeding, and in obvious and critical need of emergency medical care and treatment. Nevertheless, ALVARADO and DOE OFFICERS failed to timely summon medical attention and failed to provide medical aid to DECEDENT, thereby further contributing to DECEDENT'S injuries and death.

32.     As a result of the shooting and other undiscovered uses of force, DECEDENT endured severe pain and suffering and later lost his life and earning capacity.

33.     Plaintiff BENAVENTE is DECEDENT'S successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as DECEDENT'S father.

34.     Plaintiff VENTRESS is DECEDENT'S successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and

FIRST AMENDED COMPLAINT FOR DAMAGES

1   succeeds to DECEDENT'S interest in this action as DECEDENT's mother.

2   **FIRST CLAIM FOR RELIEF**

3   **Fourth Amendment – Detention and Arrest (42 U.S.C. § 1983)**

4   (By Plaintiffs against Defendants ALVARADO and DOE OFFICERS)

5   35.   Plaintiffs repeat and re-allege each and every allegation in paragraphs

6   1 through 34 of this Complaint with the same force and effect as if fully set forth

7   herein.

8   36.   The Fourth Amendment of the United States Constitution guarantees

9   all persons the right to be free from unreasonable detention in violation of their

10   right to privacy.  42 U.S.C. § 1983 provides a private right of action for conduct

11   which violates this right.  ALVARADO and DOE OFFICERS violated

12   DECEDENT's right to be free from unreasonable search and seizures, which is

13   guaranteed to him by the Fourth Amendment to the United States Constitution and

14   applied to state actors by the Fourteenth Amendment.

15   37.   At all relevant times, ALVARADO and DOE OFFICERS acted

16   under color of state law.  ALVARADO and DOE OFFICERS had no reasonable

17   suspicion to approach DECEDENT and detain him.  In addition to the detention

18   itself being unreasonable, the scope and manner of the detention was

19   unreasonable.  It was not necessary to detain DECEDENT as, at all relevant times,

20   DECEDENT did not make any verbal or physical threats towards anyone

21   including ALVARADO and DOE OFFICERS, had not committed a crime, and

22   was not, at that time, committing a crime.

23   38.   The conduct of the ALVARADO and DOE OFFICERS was willful,

24   wanton, malicious, and done with an evil motive and intent and a reckless

25   disregard for the rights and safety of DECEDENT and therefore warrants the

26   imposition of exemplary and punitive damages as to the ALVARADO and DOE

27   OFFICERS.  As a direct result of the unreasonable detention, DECEDENT

28   experienced severe pain, suffering and the loss of life and enjoyment of life, for

7

1   which he, through his successor in interest, is entitled to recover damages.

2     39. PLAINTIFFS bring this claim as a successors-in-interest to

3   DECEDENT.  PLAINTIFFS seek survival damages on this claim, including for

4   DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of

5   enjoyment of life.  PLAINTIFFS also seek attorney's fees under this claim.

6   **SECOND CLAIM FOR RELIEF**

7   **Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

8   (By Plaintiffs Against Defendants ALVARADO and DOE OFFICERS)

9     40. PLAINTIFFS repeat and re-allege each and every allegation in

10  paragraphs 1 through 39 of this Complaint with the same force and effect as if

11  fully set forth herein.

12    41. The Fourth Amendment of the United States Constitution, as applied

13  to State Actors by the Fourteenth Amendment, provides the right of every person

14  to be free from the use of excessive force by police officers.

15    42. While acting under color of state law and in the course and scope of

16  their duties as law enforcement officers for OPD, ALVARADO and DOE

17  OFFICERS fired lethal rounds at DECEDENT while he was in a moving vehicle,

18  which struck and ultimately killed him.

19    43. At all relevant times, DECEDENT did not pose an immediate threat

20  of death or serious bodily injury to anyone at any time immediately prior to or

21  during the use of force and ALVARADO and DOE OFFICERS had other

22  reasonable options available to them. When ALVARADO and DOE OFFICERS

23  arrived on scene, they had no information that DECEDENT had any outstanding

24  wants or warrants, had committed any crime and no information that DECEDENT

25  had injured or threatened to harm anyone. ALVARADO and DOE OFFICERS

26  failed to employ tactics to de-escalate the situation, failed to give DECEDENT

27  commands and instructions, and failed to give DECEDENT the opportunity to

28  comply with commands and instructions.

8

1    44.    On information and belief, ALVARADO and DOE OFFICERS were

2    integral participants in the use of force and failed to give DECEDENT a warning

3    that deadly force would be used prior to shooting. The shooting violated

4    ALVARADO and DOE OFFICERS' training and standard police officer training.

5    45.    Defendants ALVARADO'S and DOE OFFICERS' unjustified

6    shooting and other uses of force against DECEDENT deprived DECEDENT of

7    his right to be secure in his person against unreasonable searches and seizures as

8    guaranteed to him under the Fourth Amendment to the United States Constitution

9    and applied to state actors by the Fourteenth Amendment.

10    46.    As a result of the foregoing, DECEDENT suffered great physical

11    pain and suffering up to the time of his death, loss of enjoyment of life, loss of

12    life, and lost earning capacity.

13    47.    The conduct of Defendants ALVARADO and DOE OFFICERS was

14    willful, wanton, malicious, and done with reckless disregard for the rights and

15    safety of DECEDENT, and therefore warrants the imposition of exemplary and

16    punitive damages as to Defendants ALVARADO and DOE OFFICERS.

17    48.    PLAINTIFFS bring this claim as successors-in-interest to

18    DECEDENT and seek survival damages, including but not limited to pre-death

19    pain and suffering, loss of life, and loss of enjoyment of life, under this claim.

20    PLAINTIFFS also seek attorneys' fees and costs under this claim.

21                              **THIRD CLAIM FOR RELIEF**

22          **Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)**

23          (By Plaintiffs against Defendants ALVARADO and DOE OFFICERS)

24    49.    PLAINTIFFS repeat and reallege each and every allegation of

25    paragraphs 1 through 48, inclusive, as if fully set forth herein.

26    50.    On information and belief, after being shot with a lethal firearm,

27    DECEDENT was immobile, bleeding profusely, and in obvious and critical

28    need of emergency medical care and treatment. Defendants did not timely

1 summon medical care or permit medical personnel to treat DECEDENT. The

2 delay of medical care caused DECEDENT extreme physical and emotional

3 pain and suffering and was a contributing cause of DECEDENT'S death.

4      51.    The denial of medical care by ALVARADO and DOE

5 OFFICERS deprived DECEDENT of his right to be secure in his person

6 against unreasonable searches and seizures as guaranteed to him under the

7 Fourth Amendment to the United States Constitution and applied to state

8 actors by the Fourteenth Amendment.

9      52.    As a result of the foregoing, DECEDENT suffered great physical

10 pain and emotional distress up to the time of his death, loss of enjoyment of

11 life, loss of life, and loss of earning capacity.

12      53.    ALVARADO and DOE OFFICERS knew that failure to provide

13 timely medical treatment to DECEDENT could result in further significant

14 injury or the unnecessary and wanton infliction of pain, but disregarded

15 DECEDENT'S serious medical needs, causing DECEDENT great bodily

16 harm and death.

17      54.    DECEDENT survived for a period of time after the incident.

18 DECEDENT was transported from the scene of the shooting to the hospital,

19 where he died on the date of the shooting.

20      55.    ALVARADO'S and DOE OFFICERS' conduct was willful,

21 wanton, malicious, and done with reckless disregard for the rights and safety

22 of DECEDENT, and therefore warrants the imposition of exemplary and

23 punitive damages as to ALVARADO and DOE OFFICERS.

24      56.    PLAINTIFFS bring this claim as successors-in-interest to

25 DECEDENT. PLAINTIFFS seek survival damages on this claim, including

26 for DECEDENT'S injuries, pre-death pain and suffering, loss of life, and

27 loss of enjoyment of life. Plaintiffs also seek attorney's fees under this

28 claim.

FIRST AMENDED COMPLAINT FOR DAMAGES

1

**FOURTH CLAIM FOR RELIEF**

2

**Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

3

(By Plaintiffs against ALVARADO and DOE OFFICERS)

4

57.    PLAINTIFFS repeat and re-allege each and every allegation of

5

paragraphs 1 through 56, inclusive, as if fully set forth herein.

6

58.    PLAINTIFFS had a cognizable interest under the Due Process

7

Clause of the Fourteenth Amendment of the United States Constitution to be

8

free from state actions that deprive them of life, liberty, or property in such a

9

manner as to shock the conscience, including but not limited to unwarranted

10

state interference in PLAINTIFFS' familial relationship with their son,

11

DECEDENT.

12

59.    By engaging in the foregoing conduct, ALVARADO and DOE

13

OFFICERS deprived PLAINTIFFS of their rights to a familial relationship

14

with DECEDENT in such a manner as to shock the conscience, including by

15

using excessive and unreasonable deadly force against him and by denying

16

him medical care, all of which caused injuries that resulted in DECEDENT'S

17

death.

18

60.    ALVARADO and DOE OFFICERS were integral participants in

19

the use of unreasonable force and acted with deliberate indifference to the

20

constitutional rights of DECEDENT and PLAINTIFFS, and with a purpose

21

to harm unrelated to any legitimate law enforcement objective.

22

61.    As a direct and proximate cause of the acts of ALVARADO and

23

DOE OFFICERS, PLAINTIFFS suffered emotional distress, mental anguish,

24

and pain. Plaintiffs have also been deprived of the life-long love,

25

companionship, comfort, support, society, care, and sustenance of

26

DECEDENT, and will continue to be so deprived for the remainder of their

27

natural lives.

28

/ / /

11

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 13 of 26   Page ID
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 13 of 26   Page ID #:45
#:202

1      62.    The conduct of ALVARADO and DOE OFFICERS was willful,

2    wanton, malicious, and done with reckless disregard for the rights and safety

3    of DECEDENT and PLAINTIFFS and therefore warrants the imposition of

4    exemplary and punitive damages as to ALVARADO and DOE OFFICERS.

5      63.    PLAINTIFFS bring this claim individually and seek wrongful

6    death damages under this claim. Plaintiffs also seek attorney's fees under

7    this claim.

8            **FIFTH CLAIM FOR RELIEF**

9            **Municipal Liability –**

10   **Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

11        (By Plaintiffs against CITY and DOES 7-10)

12      64.    PLAINTIFFS repeat and re-allege each and every allegation of

13   paragraphs 1 through 63, inclusive, as if fully set forth herein.

14      65.    ALVARADO and DOE OFFICERS acted under color of state

15   law and in the course and scope of their employment as law enforcement

16   officers for the CITY.

17      66.    The acts of ALVARADO and DOE OFFICERS deprived

18   DECEDENT and PLAINTIFFS of their particular rights under the United

19   States Constitution.

20      67.    ALVARADO and DOE OFFICERS acted pursuant to an

21   expressly adopted official policy or longstanding practice or custom of the

22   CITY, and DOES 7-10, inclusive.

23      68.    On information and belief, ALVARADO and DOE OFFICERS

24   were not disciplined, reprimanded, retrained, suspended, or otherwise

25   penalized in connection with deprivation of DECEDENT'S rights.

26      69.    When ALVARADO and DOE OFFICERS shot and fatally

27   wounded DECEDENT, they acted pursuant to an expressly adopted official

28   policy or a longstanding practice or custom of Defendant CITY.

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 14 of 26   Page ID
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 14 of 26   Page ID #:46
#:205

70.     ALVARADO and DOE OFFICERS together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive and unreasonable force, including deadly force on persons who do not pose a risk of imminent death or serious bodily injury to others.

(b)     Failing to use and exhaust reasonable alternatives to the use of deadly force.

(c)     Failing to give adequate commands and time to comply with those commands.

(d)     Failing to give adequate verbal warning that the use of deadly force will be used and time to heed such a warning.

(e)     Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force.

(f)     The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

(g)     Providing inadequate training and policies, including sustainment training, enforcement of the training when it does exist, and re-training, regarding the use of force, the use of deadly force, shooting at moving vehicles, handling situations involving persons suffering from mental crisis, and de-escalation.

(h)     Permitting CITY OFFICERS to engage in dangerous police pursuits of individuals who are suspected of committing traffic infractions or misdemeanors.

(i)     Employing and retaining as law enforcement officers, individuals such as ALVARADO and DOE OFFICERS at all times material herein, knew or reasonably should have known had dangerous

13

1    propensities for abusing their authority and for using excessive force.

2         (j)    Inadequately supervising, training, controlling, assigning,

3    and disciplining CITY officers, and other personnel, including

4    ALVARADO and DOE OFFICERS who CITY knew or in the exercise

5    of reasonable care should have known, had the aforementioned

6    propensities or character traits.

7         (k)    Maintaining grossly inadequate procedures for reporting,

8    supervising, investigating, reviewing, disciplining and controlling

9    misconduct by officers of the CITY.

10        (l)    Ratifying unconstitutional conduct and failing to

11   adequately discipline CITY officers for the above-mentioned

12   categories of misconduct, including inadequate discipline and "slaps

13   on the wrist," discipline that is so slight as to be out of proportion with

14   the magnitude of the misconduct, and other inadequate discipline that

15   is tantamount to encouraging misconduct.

16        (m)    Announcing that unjustified shootings are "within policy"

17   even when they are later determined in court to be unconstitutional and

18   refusing to discipline, terminate and retrain officers involved in

19   unconstitutional conduct.

20        (n)    Encouraging, accommodating, or facilitating a "blue code

21   of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or

22   simply "code of silence," pursuant to which officers do not report

23   other officers' errors, misconduct, or crimes.  Pursuant to this code of

24   silence, if questioned about an incident of misconduct involving

25   another officer, while following the code, the officer being questioned

26   will claim ignorance of the other officer's wrongdoing.

27        (o)    Maintaining a policy of inaction and an attitude of

28   indifference towards police shootings, including by failing to

14

FIRST AMENDED COMPLAINT FOR DAMAGES

1   discipline, retrain, investigate, terminate, and recommend officers for

2   criminal prosecution who participate in shootings.

3   (p)   Upon information and belief, CITY has an unofficial

4   policy, practice and/or custom of finding almost all—if not all—of its

5   officer involved shootings to be within policy, of not disciplining its

6   officers involved in shootings, or not retraining or firing officers

7   involved in shootings, and of not recommending criminal charges

8   against their officers involved in excessive and unreasonable officer-

9   involved shootings.  As a result, officers involved in excessive uses of

10   deadly force are allowed back to patrol the streets even though CITY

11   knew, or should have known, that these officers have a propensity for

12   using excessive deadly force against the citizens that the officers are

13   supposed to protect and serve, especially against minorities and those

14   in a mental crisis.

15   (q)   Upon information and belief, as a result of CITY policy,

16   custom and/or practices, officers know that if they use deadly

17   excessive force against someone, they will not be disciplined and their

18   use of force will be found within policy, which results in a significant

19   number of CITY officers being involved in numerous shootings.  This

20   policy, custom and/or practice was established by supervising and

21   managerial employees of CITY, specifically, those employees tasked

22   with determining whether officer-involved shootings fall within policy,

23   those employees responsible for disciplining, retraining, and firing

24   employees who use excessive force, and for those employees

25   responsible for making recommendations of criminal charges being

26   filed against officers who use excessive deadly force.

27   (r)   Upon information and belief, this policy, custom and/or

28   practice long lasting and persistent, and existed well before

1    ALVARADO and DOE OFFICERS killed DECEDENT.  This policy,

2    custom and/or practice was established so that CITY officers do not

3    bear the responsibility for the people that they use excessive deadly

4    force against.  This policy, custom and/or practice exists so that the

5    public does not have such a negative perception of CITY and its law

6    enforcement departments and so that CITY can avoid the repercussions

7    associated with its officers' use of excessive deadly force against

8    citizens, including negative publicity, avoiding criminal prosecution

9    and avoiding civil liability.  A significant reason that this policy,

10    custom and/or practice was established was to avoid CITY being held

11    liable, under a theory of vicarious liability, for the uses of excessive

12    and unreasonable deadly force by its employees.  In other words, there

13    is a large financial incentive for CITY to erroneously determine that

14    most, if not all, of its officers' uses of deadly force are within policy.

15    If CITY, through its policymakers and supervisors, would admit that

16    their officers were at fault for using excessive and unreasonable deadly

17    force, then CITY is well aware of how much they would have to pay

18    for any associated litigation.

19        71.    By reason of the aforementioned acts and omissions,

20  PLAINTIFFS have suffered loss of love, companionship, affection, comfort,

21  care, society, training, guidance, and past and future support of DECEDENT,

22  and DECEDENT endured substantial pain and suffering, loss of enjoyment

23  of life, and death.

24        72.    CITY and DOES 7-10, inclusive, together with various other

25  officials, whether named or unnamed, had either actual or constructive

26  knowledge of the deficient policies, practices and customs alleged herein.

27  Despite having knowledge as stated above, these Defendants condoned,

28  tolerated and through actions and inactions thereby ratified such policies.

FIRST AMENDED COMPLAINT FOR DAMAGES

1   Said Defendants also acted with deliberate indifference to the foreseeable

2   effects and consequences of these policies with respect to the constitutional

3   rights of DECEDENT and other individuals similarly situated.

4       73.   By perpetrating, sanctioning, tolerating and ratifying the

5   outrageous conduct and other wrongful acts, CITY and DOES 7-10,

6   inclusive, acted with intentional, reckless, and callous disregard for

7   DECEDENT'S Constitutional rights.  Furthermore, the policies, practices,

8   and customs implemented, maintained, and tolerated by DEFENDANTS

9   CITY and DOES 7-10, inclusive, were affirmatively linked to and were a

10   significantly influential force behind DECEDENT'S injuries.

11       74.   The following are a few examples of DEFENDANT CITY'S

12   unconstitutional customs, practices and policies, and continued misconduct:

13       (a)   In *Herrera v. City of Ontario, et al.*, case no. 5:15-cv-

14       1370-JGB-SPx a federal jury found Ontario police department officers

15       used excessive force when they tased and shot a 56-year-old father of

16       two after they had been summoned to help provide medical assistance

17       to the man. The City eventually settled the case post trial for

18       approximately $550,000. No officers were retrained as a result of the

19       incident that gave rise to this lawsuit.

20       (b)   In *Briones, et al. v. City of Ontario, et al.*, case no. 5:17-

21       cv-00590-DMG-JPR the City of Ontario agreed to pay $2,750,000 to

22       Cynthia and Maurice Briones to settle the Briones' claims arising out

23       of the October 5, 2016 death of their son Kyle James Briones. No

24       officers were retrained as a result of the incident that gave rise to this

25       lawsuit.

26       (c)   In *Donastorg v. City of Ontario, et al.*, case no. 5:18-cv-

27       00992-JGB (SPx), a federal jury unanimously found the City and

28       Ontario Police Department Officers used excessive force against

17

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 19 of 26   Page ID
#:270
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 19 of 26   Page ID #:51

1    Plaintiff Richard Donastorg in violation of his constitutional rights.

2    The parties agreed to a post-verdict settlement in the amount of

3    $500,000. No officers were retrained as a result of the incident that

4    gave rise to this lawsuit.

5        (d)    In *Martinez v. City of Ontario, et al.,* case no. 5:21-cv-

6    01099-JGB-SP, Ontario Police Department Officers shot and struck

7    Plaintiff Martinez while he was driving his car on his driveway.

8    Plaintiff became permanently paralyzed as a result of the gunshot

9    wounds he sustained. This case remains ongoing. No officers were

10   retrained as a result of the incident that gave rise to this lawsuit.

11       75.   Accordingly, DEFENDANTS CITY and DOES 7-10, inclusive,

12   each are liable for compensatory damages under 42 U.S.C. § 1983.

13       76.   PLAINTIFFS bring this claim individually and as successors in

14   interest to DECEDENT, and seek damages as permitted under federal law

15   under this claim.  Plaintiffs also seek attorneys' fees and costs under this

16   claim.

17                    **SIXTH CLAIM FOR RELIEF**

18       **Municipal Liability for Failure to Train (42 U.S.C. §1983)**

19       (By Plaintiffs against Defendants CITY and DOES 7-10, inclusive)

20       77.   PLAINTIFFS repeat and re-allege each and every allegation in

21   paragraphs 1 through 76 of this Complaint with the same force and effect as

22   if fully set forth herein.

23       78.   ALVARADO and DOE OFFICERS acted under color of law at

24   all relevant times, including the time leading up to the shooting.

25       79.   When ALVARADO and DOE OFFICERS approached

26   DECEDENT, detained him, escalated the situation, and unjustifiably shot

27   DECEDENT, ALVARADO'S and DOE OFFICERS' actions directly and

28   substantially contributed to DECEDENT'S death.

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 20 of 26   Page ID
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 20 of 26   Page ID #:52
#:873

1    80.    On information and belief, ALVARADO and DOE OFFICERS

2    were not disciplined, reprimanded, retrained, suspended, or otherwise

3    penalized in connection with DECEDENT'S death.

4    81.    The training policies of Defendant CITY were not adequate to

5    train its officers to handle the usual and recurring situation with which they

6    must deal, including but not limited to, with regard to the use of physical

7    force, less than lethal force, and lethal force; the use of reasonable

8    alternatives to the use of deadly force; proper communication, proper

9    warning; utilizing time, space, distance, cover and concealment; pre-shooting

10   tactics, techniques, and procedures; de-escalation; not waiting for sufficient

11   assets, equipment and personnel, including mental health crisis teams to

12   arrive before engaging in situations; controlling officer emotions and fears

13   including inadequate "warrior training" that imbues officers with irrational

14   fears about every situation and encourages excessive and unreasonable force

15   and overreacting to a situation; inappropriate "shoot/don't shoot" scenarios

16   in training that promote the use of unreasonable force; continually assessing

17   a situation to justify every shot fired; and providing medical care to person

18   officers have injured.

19   82.    DEFENDANTS CITY and DOES 7-10 have numerous officer-

20   involved shootings annually.  DEFENDANTS CITY and DOES 7-10,

21   inclusive, were aware that there was a reoccurring problem with their police

22   officers shooting individuals, instead of employing proper de-escalation

23   techniques.  In other words, DEFENDANTS CITY and DOES 7-10,

24   inclusive, were aware that there was a problem involving numerous officer-

25   involved shootings which could have been reasonably avoided had the

26   officers employed well-known and accepted law enforcement tactics and

27   techniques to avoid using unnecessarily and excessive deadly force against

28   these individuals by CITY employees.

1    83.    Defendants CITY and DOES 7-10, inclusive, were deliberately

2  indifferent to the obvious consequences of its failure to train its officers

3  adequately.

4    84.    The failure of Defendant CITY to provide adequate training

5  caused the deprivation of PLAINTIFFS' rights by ALVARADO and DOE

6  OFFICERS; that is, the Defendants' failure to train is so closely related to

7  the deprivation of the PLAINTIFFS' rights as to be the moving force that

8  caused the ultimate injury.

9    85.    The following are only a few examples of cases where the

10 involved officers were not disciplined, reprimanded, retrained, suspended, or

11 otherwise penalized in connection with the underlying acts giving rise to the

12 below lawsuits, which indicates that Defendant CITY failed to adequately

13 train its officers, more specifically the failure to train with regard to the use

14 of force:

15         (a)    In *Herrera v. City of Ontario, et al.*, case no. 5:15-cv-

16         1370-JGB-SPx a federal jury found Ontario police department officers

17         used excessive force when they tased and shot a 56-year-old father of

18         two after they had been summoned to help provide medical assistance

19         to the man. The City eventually settled the case post trial for

20         approximately $550,000. No officers were retrained as a result of the

21         incident that gave rise to this lawsuit.

22         (b)    In *Briones, et al. v. City of Ontario, et al.*, case no. 5:17-

23         cv-00590-DMG-JPR the City of Ontario agreed to pay $2,750,000 to

24         Cynthia and Maurice Briones to settle the Briones' claims arising out

25         of the October 5, 2016 death of their son Kyle James Briones. No

26         officers were retrained as a result of the incident that gave rise to this

27         lawsuit.

28         (c)    In *Donastorg v. City of Ontario, et al.*, case no. 5:18-cv-

20

FIRST AMENDED COMPLAINT FOR DAMAGES

1   00992-JGB (SPx), a federal jury unanimously found the City and

2   Ontario Police Department Officers used excessive force against

3   Plaintiff Richard Donastorg in violation of his constitutional rights.

4   The parties agreed to a post-verdict settlement in the amount of

5   $500,000. No officers were retrained as a result of the incident that

6   gave rise to this lawsuit.

7          (d)    In *Martinez v. City of Ontario, et al.,* case no. 5:21-cv-

8   01099-JGB-SP, Ontario Police Department Officers shot and struck

9   Plaintiff Martinez while he was driving his car on his driveway.

10   Plaintiff became permanently paralyzed as a result of the gunshot

11   wounds he sustained. This case remains ongoing. No officers were

12   retrained as a result of the incident that gave rise to this lawsuit.

13          86.    By reason of the aforementioned acts and omissions,

14   PLAINTIFFS have suffered loss of the love, companionship, affection,

15   comfort, care, society, training, guidance, and past and future support of

16   DECEDENT.  The aforementioned acts and omissions also caused

17   DECEDENT'S pain and suffering, loss of enjoyment of life, and death.

18          87.    PLAINTIFFS bring this claim individually and as successors in

19   interest to DECEDENT, and seek damages as permitted under federal law

20   under this claim.  PLAINTIFFS also seek attorneys' fees and costs under this

21   claim.

22          **SEVENTH CLAIM FOR RELIEF**

23   **Municipal Liability – Ratification (42 U.S.C. § 1983)**

24          (By Plaintiffs against CITY and DOES 7-10, inclusive)

25          88.    PLAINTIFFS repeat and re-allege each and every allegation in

26   paragraphs 1 through 87 of this Complaint with the same force and effect as

27   if fully set forth herein.

28   / / /

21

1   89. ALVARADO and DOE OFFICERS, inclusive, were acting under

2 color of state law and in the course and scope of their employment as law

3 enforcement officers for the CITY.

4   90. When ALVARADO and DOE OFFICERS approached

5 DECEDENT, detained him, escalated the situation, and unjustifiably shot

6 DECEDENT, ALVARADO'S and DOE OFFICERS' actions directly and

7 substantially contributed to DECEDENT'S death. The aforementioned acts

8 of ALVARADO and DOE OFFICERS deprived DECEDENT of his

9 particular rights under the United States Constitution.

10   91. Upon information and belief, a final policymaker, acting under

11 color of law, has a history of ratifying unreasonable uses of force, including

12 deadly force.

13   92. Upon information and belief, a final policymaker, acting under

14 color of law, who had final policymaking authority concerning the acts of

15 ALVARADO and DOE OFFICERS, inclusive ratified the acts and bases for

16 ALVARADO's and DOE OFFICERS' acts.  Upon information and belief,

17 the final policymaker knew of and specifically approved of ALVARADO'S

18 and DOE OFFICERS' acts.

19   93. On information and belief, CITY final policymakers, including

20 DOES 7-10, inclusive, knew that DECEDENT was not an immediate threat

21 of death or serious bodily injury to any person at the time of the

22 ALVARADO'S and DOE OFFICERS' use of deadly force.

23   94. On information and belief, the official policies with respect to

24 the incident are that officers are not to use deadly force against an individual

25 unless the individual poses an immediate risk of death or serious bodily

26 injury to the officers or others, or if the individual has inflicted death or

27 serious bodily injury against someone or threatened to do so, the officers

28 may use deadly force to prevent the individual's escape.  The officers'

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 24 of 26   Page ID
#:275
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 24 of 26   Page ID #:56

1   actions deviated from these official policies because DECEDENT did not

2   pose an immediate threat of death or serious bodily injury to the involved

3   officers or anyone.

4        95.   On information and belief, the CITY approved of the officers'

5   actions after a hearing presented by the officers' legal counsel to DOES 7-

6   10, inclusive, after which DOES 7-10, inclusive, found the officers' actions

7   to be within the official policies of the CITY.  On information and belief, the

8   basis for such approval was based on the officers' self-serving statements

9   that they feared they would be killed or seriously injured, despite evidence to

10  the contrary, including evidence that the involved officers were never

11  physically injured.

12       96.   Upon information and belief, a final policymaker has determined

13  (or will determine) that the acts of ALVARADO and DOE OFFICERS were

14  "within policy."

15       97.   As a direct and proximate result of the aforementioned acts and

16  omissions, DECEDENT suffered past and future pain and suffering, loss of

17  enjoyment of life, and loss of life.

18       98.   Accordingly, DEFENDANT CITY and DOES 7-10, inclusive,

19  are liable to PLAINTIFFS as successors in interest to DECEDENT for

20  compensatory damages under 42 U.S.C. § 1983.

21       99.   PLAINTIFFS bring this claim individually and as successors in

22  interest to DECEDENT, and seek damages as permitted under federal law

23  under this claim. PLAINTIFFS also seek attorneys' fees and costs under this

24  claim.

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs FRANK BENAVENTE and NICOLE VENTRESS request entry of judgment in their favor against Defendants ALBERT ALVARADO; DOES 1-10; and CITY OF ONTARIO, inclusive, as follows:

A.     For compensatory damages in whatever other amount may be proven at trial, including survival damages, which include pre-death physical and mental pain and suffering, loss of life, and loss of enjoyment of life, as well as wrongful death damages under federal law;

B.     For funeral and burial expenses, and loss of financial support;

C.     For punitive damages against the individual defendants in an amount to be proven at trial;

D.     For statutory damages;

E.     For interest;

F.     For reasonable attorneys' fees;

G.     For costs of suit; and

H.     For such further other relief as the Court may deem just, proper, and appropriate.


DATED: February 21, 2023          LAW OFFICES OF DALE K. GALIPO


                                  By:  _____
                                              */s/ Dale K. Galipo*
                                       Dale K. Galipo
                                       Eugenia Bagdassarian
                                       Attorneys for Plaintiffs

24

Case 5:23-cv-00266-SSS-DTB   Document 31-3   Filed 03/29/24   Page 26 of 26   Page ID
#:277
Case 5:23-cv-00266   Document 5   Filed 02/21/23   Page 26 of 26   Page ID #:58

1

**DEMAND FOR JURY TRIAL**

2       PLAINTIFFS hereby submit this demand that this action be tried in front of

3    a jury.

4

5    DATED:  February 21, 2023          LAW OFFICES OF DALE K. GALIPO

6

7                                    By: _____ */s/ Dale K. Galipo*_____

8                                        Dale K. Galipo
                                         Eugenia Bagdassarian
9                                        Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES