**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 5:23-cv-00266-SSS-DTBx<br><br>[*Honorable Sunshine S. Sykes*]<br>*Magistrate Judge David T. Bristow*<br><br>**PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently:* Plaintiffs' Statement of Genuine Disputes of Material Fact; Plaintiffs' Statement of Evidentiary Objections, *and Proposed Order thereto*; Plaintiffs' Additional Material Facts; Declaration of Marcel F. Sincich *and exhibits thereto*; Declaration of Roger Clark *and exhibits thereto*]<br><br>MSJ Date:   May 17, 2024<br>Time:        2:00 p.m.<br>Dept.:       2, 2nd Floor |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      INTRODUCTION .......................................................................1

II.     MATERIAL FACTS ....................................................................2

III.    STANDARD UNDER RULE 56 ......................................................4

IV.     ALVARADO'S USE OF DEADLY FORCE AGAINST A STOPPED
        VEHICLE DRIVER IS OBVIOUSLY UNREASONABLE ...........................6

        A.      Nature of the Harm—Death—Is Unparalleled ......................6

        B.      Government Interests Do Not Justify Deadly Force..............6

V.      ALVARADO DELAYED MEDICAL CARE ........................................11

VI.     PLAINTIFFS' FAMILIAL RELATIONSHIP CLAIMS SURVIVE .............12

VII.    ALVARADO IS NOT ENTITLED TO QUALIFIED IMMUNITY..............13

VIII.   *MONELL* SURVIVES ..................................................................19

IX.     CONCLUSION .........................................................................19

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                   Page(s)

*A.D. v. California Highway Patrol,*
    712 F.3d 446 (9th Cir. 2013)...................................................................15, 18

*A.K.H. ex rel. Landeros v. City of Tustin,*
    837 F.3d 1005 (9th Cir. 2016)...................................................................6, 7

*Acosta v. City & Cnty. of San Francisco,*
    83 F.3d 1143 (9th Cir. 1996)...................................................................15, 18

*Adams v. Speers,*
    473 F.3d 989 (9th Cir. 2007).............................................................14, 15, 18

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) .................................................................................5

*Anderson v. Creighton,*
    483 U.S. 635 (1987) .............................................................................5, 13

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .............................................................................4, 5

*Andrews v. City of Henderson,*
    35 F.4th 710 (9th Cir. 2022).....................................................................8

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ...............................................................................15

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007).....................................................................6

*Boyd v. Benton Cnty.,*
    374 F.3d 773 (9th Cir. 2004).....................................................................13

*Brandon v. Holt,*
    469 U.S. 464 (1985) ...............................................................................19

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) .............................................................................5, 13

*Bryan v. MacPherson,*
    630 F.3d 805 (9th Cir. 2010).....................................................................6, 8

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...............................................................................4

*City of Revere v. Massachusetts Gen. Hosp.,*
    463 U.S. 239 (1983) ...............................................................................12

*Cunningham v. City of Wenatchee,*
    345 F.3d 802 (9th Cir. 2003).....................................................................14

*Davis v. City of Las Vegas*,
  478 F.3d 1048 (9th Cir. 2007) ........................................................ 10

*Drummond v. City of Anaheim*,
  343 F.3d 1052 (9th Cir. 2003) .......................................................... 7

*Espinosa v. Cty. & Cnty of San Francisco*,
  598 F.3d 528 (9th Cir. 2010) .......................................................... 14

*Est. of Aguirre v. Cnty. of Riverside*,
  29 F.4th 624 (9th Cir. 2022) .......................................................... 10

*Est. of Cornejo ex rel. Solis v. City of Los Angeles*,
  618 F. App'x 917 (9th Cir. 2015) .................................................... 11

*Florek v. Village of Mundelein*,
  649 F.3d 594 (7th Cir. 2011) .......................................................... 11

*Flores v. Morgan Hill Unified Sch. Dist.*,
  324 F.3d 1130 (9th Cir. 2003) ........................................................ 13

*Gonzalez v. City of Anaheim*,
  747 F.3d 789 (9th Cir. 2014) ............................................................ 5

*Green v. City and Cty. of San Francisco*,
  751 F.3d 1039 (9th Cir. 2014) ........................................................ 10

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...................................................................... 13

*Haugen v. Brosseau*,
  339 F.3d 857 (9th Cir. 2003) .......................................................... 13

*Hayes v. Cty. of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) ........................................................ 12

*Henderson v. City of Torrance*,
  2020 WL 8024351 (C.D. Cal. Dec. 14, 2020) .................................... 11

*Hervey v. Estes*,
  65 F.3d 784 (9th Cir. 1995) ............................................................ 19

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ...................................................................... 13

*Hopkins v. Andaya*,
  958 F.2d 881 (9th Cir. 1992) ............................................................ 4

*Isayeva v. Sacramento Sheriff's Dep't*,
  872 F.3d 938 (9th Cir. 2017) ............................................................ 6

*Johnson v. Jones*,
  515 U.S. 304 (1995) ...................................................................... 14

*Kingsley v. Hendrickson*,
    576 U.S. 389 (2015) ....................................................................... 10

*Kirby v. Duva*,
    530 F.3d 475 (6th Cir. 2008) ................................................. 15, 18

*Knox v. Southwest Airlines*,
    124 F.3d 1103 (9th Cir. 1997) ...................................................... 14

*Kosakoff v. City of San Diego*,
    WL 1759455 (S.D. Cal. Apr. 29, 2010) ................................. 16, 18

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
    841 F.2d 872 (9th Cir. 1987) .......................................................... 5

*Lemire v. California Deartment of Correction and Rehabilitation*,
    726 F.3d 1062 (9th Cir.2013) ....................................................... 11

*Lolli v. County of Orange*,
    351 F.3d 410 (9th Cir. 2003) ........................................................ 11

*Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017) ................................................ passim

*Monell v. Dept. of Soc. Serv. of City of New York*,
    436 U.S. 658 (2018) ....................................................................... 19

*Monzon v. City of Murrieta*,
    978 F.3d 1150 (9th Cir. 2020) .............................................. 16, 18

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015) .................................................................... 16

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012) .......................................................... 7

*Orn v. City of Tacoma*,
    949 F.3d 1167 (9th Cir. 2020) ...................................................... 19

*Ostling v. City of Bainbridge Island*,
    872 F. Supp. 2d 1117 (W.D. Wash. 2012) ................................... 12

*People v. Hanes*,
    60 Cal. App. 4th Supp. 6 (Cal. App. Dep't Super. Ct. 1997) ........... 9

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ................................................................ 16, 17

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008) ...................................................... 12

*Regalado v. Riverside Cnty.*,
    2021 WL 945249 (C.D. Cal. Jan. 15, 2021) ................................. 11

*S.R. Nehad v. Browder*,
    929 F.3d 1125 (9th Cir. 2019) ......................................................5, 7

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) ............................................................6

*Scott v. Harris*,
    550 U.S. 372 (2007) ..........................................................................5

*Smith v. Cupp*,
    430 F.3d 766 (6th Cir. 2005) ....................................................15, 18

*Sorrels v. McKee*,
    290 F.3d 965 (9th Cir. 2002) ..........................................................13

*Tatum v. City and County of San Francisco*,
    441 F.3d 1090 (9th Cir. 2006) ........................................................11

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ......................................................................passim

*Tennison v. City and Cnty. of San Francisco*,
    570 F.3d 1078 (9th Cir. 2009) ........................................................12

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011) ..........................................................8

*United States v. Orozco*,
    858 F.3d 1204 (9th Cir. 2017) ..........................................................9

*Velazquez v. City of Long Beach*,
    793 F.3d 1010 (9th Cir. 2015) ..........................................................6

*Villanueva v. California*,
    986 F.3d 1158 (9th Cir. 2021) ..............................................15, 18, 19

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018) ..........................................................5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ........................................................13

*Wilkins v. City of Oakland*,
    350 F.3d 949 (9th Cir. 2003) ......................................................5, 14

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010) ..........................................................12

Statutes                                                                    Page(s)

42 U.S.C. §1983 ..............................................................................7

Cal. Pen. Code §835a ......................................................................7

Cal. Veh. Code §26708(d) ............................................................................... 9

<u>Rules</u>

Federal Rules of Civil Procedure, Rule 56 ............................................... 1, 4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Albert Alvarado unjustifiably shot and killed Joseph Benavente on February 21, 2021. This matter began with a questionable stop of Benavente's car, followed by a pursuit that was not high-speed, where there was no traffic or pedestrians on the road. The officers had no information about Benavente, whether he had ever committed a serious crime, was under the influence, or was armed. The pursuit stopped and Benavente reversed but was stopped by a patrol unit, followed by Alvarado shooting Benavente three times. Prior to and during the shots, the car was stopped, not revving, blocked to the rear, with no officer in the path or about to be harmed. Officers cannot shoot the driver of a stopped car and cannot shoot merely for fleeing. So, Alvarado created an inference that he was threatened by the car by stating that he was out of his unit, the car was moving directly towards him, he thought he was going to be crushed, then after the shooting the car continued to accelerate. Defendants' contentions are disputed and impossible by the objective evidence and their own experts' testimony. Alvarado's credibility must be evaluated by a jury.

Defendants' blatantly disregards their obligation under Rule 56 to prove that there are no genuine disputes of fact. When the record is properly viewed in the light most favorable to Plaintiffs, the Court must accept that this was not a high-speed pursuit, innocent persons where not being threatened, the car did not reverse at high-speeds, the car never drove directly towards Alvarado, prior to and at the time of the shots, the car was not moving; no one was in its potential path, no one was about to be crushed, Alvarado was seated in his unit not standing "sandwiched" by his opened door, Benavente was unarmed; Alvarado failed to give a warning; and Alvarado had reasonable alternatives. A jury could find that Benavente did not pose an immediate threat of death or serious bodily injury to anyone and find that this use of deadly force was obviously excessive, after a pretextual attempted stop, and followed by denial of medical care. Thus, Defendants' Motion should be denied in full.

## II.     MATERIAL FACTS

On February 22, 2022, at approximately 11:55 p.m., Officers Varela, Escobar and Corporal Alvarado initiated a traffic stop of a car driven by Joseph Benavente. (PAMF 18-21.) Each officer wore their body-worn-cameras videos but Alvarado and his trainee conveniently, in violation of policy, did not activate their videos until after Alvarado's use of excessive force. (PAMF 24-28.) The officers had never seen Benavente or his car before and had no information about Benavente including whether he had ever committed a crime, or whether he had ever verbally threatened or harmed anybody. (PAMF 30.)

North on Mountain at the 4th St. red light, the patrol vehicles and Benavente stopped followed by Benavente turning right onto 4th on a green light. (PAMF 31-32.) Alvarado instructed Varela to stop Benavente, then instructed Escobar to follow Varela—both officers complied making illegal right turns onto 4th and nearly causing a crash with a civilian vehicle. (PAMF 33-35.) Varela claimed that his intent was to initiate a traffic stop for the minor fix-it-ticket violation for tinted windows, yet Varela does not know the vehicle code or what the vehicle code says related to tinted windows. (PAMF 36-37.) Benavente turned onto Beverly, slowed down and stopped after what *was not* a high-speed or dangerous pursuit including because there was no traffic or pedestrians and no vehicle collisions. (PAMF 38-40.) The officers did not communicate with each other during the pursuit and had no plan. (PAMF 41-42.) No vehicle code violations were broadcast to dispatch and there is no video showing the car speeding or driving erratically. (PAMF 43.)

Varela stopped offset to Benavente's left and activated his spotlight, initially believing Benavente would make another U-turn until he saw the reverse lights. (PAMF 44-45.) Benavente reversed to the right, moving away from, and continued past Varela's unit while Alvarado maintained focus on Benavente's car. (PAMF 47-48.) Defendants admit that it would be inappropriate for Alvarado to get out of his unit while Benavente was reversing. (PAMF 49.) Alvarado had instructed Escobar to

speed up, to which Escobar complied, still approaching as Benavente was reversing past Varela's unit. (PAMF 50.) Benavente had begun making the "S" turn, as if to circle behind Varela's unit, and then turned and began to break to avoid a direct collision with Escabar's unit that was rapidly approaching then came to a stop. (PAMF 51-54.) Nevertheless, Vasquez-Lopez drove directly towards and into the decelerating car, immediately stopping and blocking it. (PAMF 55-56.)

With nobody in the car's path, Alvarado used deadly force firing 3 shots at Benavente in the stopped car, knowing it could kill Benavente. (PAMF 57-59.) To justify deadly force, Alvarado must show that (i) he had no other means to avert (ii) the threat of being crushed between his door and unit, and (iii) it was an immediate threat of death or serious bodily injury. (PAMF 61.) In other words, a reasonable threat here requires (1) that Alvarado was trapped in the "V" of his door, and (2) that the car was moving. (PAMF 62.) Defendants admit, if Alvarado was sitting in his unit, the car was not a risk of death of serious bodily injury, and if the car was not moving at the time of the shots, there was no risk of death or serious bodily injury. (PAMF 63-65.)

Alvarado was not about to be crushed because he was in his unit, not in the "V" of the door and was not standing outside his vehicle when he used deadly force. (PAMF 66.) Further, the car never struck Alvarado, he never fell to the ground, and was not injured in any way. (PAMF 67.) Even if Alvarado was out of his vehicle, central to the analysis is the speed of the car—importantly, "if the car is not moving, of course, it doesn't" cause death or serious bodily injury. (PAMF 68.) Undisputed – Benavente's car immediately was stopped and blocked by Vasquez-Lopez's unit. (PAMF 69.) Alvarado then waited 1.1 seconds after the car stopped before firing his first shot, followed by two shots each 0.4 seconds apart. (PAMF 70.) There were 4 officers on scene and only Alvarado used deadly force. (PAMF 71.)

In using deadly force, Alvarado failed to consider the houses in his backdrop and innocent lives before firing. (PAMF 72-73.) Alvarado failed to de-escalate the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

situation and made no effort to avert any risk (which is disputed) according to his training (i.e., to move) instead of discharging his firearm. (PAMF 74-78.) Even assuming Alvarado was out of his unit at the time of the shots (which is disputed), if Alvarado was able to move, it would be inappropriate to use deadly force. (PAMF 80.) However, no reasonable officer would attempt to get out of the patrol vehicle under these circumstances. (PAMF 81.) Alvarado also failed to give any commands or verbal warnings, despite being feasible, and failed to employ obvious reasonable alternatives to the use of deadly force. (PAMF 82-86.)

Alvarado knew his 3 shots struck Benavente, saw the injuries on Benavente's body, and knew Benavente needed immediate medical help. (PAMF 87.) But instructed officers to wait, failing to promptly summon medical care and monitor Benavente. (PAMF 88.) After over 7 minutes of Benavente bleeding profusely, officers finally removed Benavente from the car, handcuffed and searched his limp and unresponsive body. (PAMF 89-90.) Then for 4 more minutes, denied paramedics access, gave no medical aid, no resuscitation efforts, and ignored Benavente in a pool of blood until he was cool to the touch and succumbed to his wounds. (PAMF 91-92.)

## III.   STANDARD UNDER RULE 56

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Defendants have failed to meet their burden. At summary judgment, a court's function is not to weigh the evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Even circumstantial evidence is sufficient to create a triable issue. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of

law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). Here, credibility determinations must be made at trial.

In ruling on summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). Defendants' Motion is based on an apparent skewing of the facts in their favor that belies the video and objective evidence to the contrary. Importantly, in a deadly force case such as this, where Benavente cannot testify, the Court must carefully examine all evidence to determine whether the officer's story is internally consistent and consistent with known facts. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014). The Court must examine circumstantial evidence that would tend to discredit the officer's story, all to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Id.*; *see Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "...is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law'..."); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956. Given that Alvarado presents a vague and skewed interpretation of facts contradicted by objective evidence, it is especially important for the Court to view all reasonable inferences in Plaintiffs' favor in its careful examination.

Where there is video, the Court must view the facts depicted by the video in the light most favorable to Plaintiffs. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). The factfinder may even draw divergent conclusions from the video. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019) (disputed issues preclude summary judgment in excessive force action even though the evidence included video).

## IV.    ALVARADO'S USE OF DEADLY FORCE AGAINST A STOPPED VEHICLE DRIVER IS OBVIOUSLY UNREASONABLE

Alvarado's use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Underlying the standard is the clear principle that the force used must be balanced against the need for it; "it is the need for force which is at the heart of the *Graham* factors." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). The Court must carefully balance "the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (*quoting Graham*, 490 U.S. at 396); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("Force is excessive when it is greater than is reasonable").

### A.    Nature of the Harm—Death—Is Unparalleled

The nature and quality of the intrusion cannot be understated—Alvarado used deadly force and killed Benavente. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (deadly force intrusiveness is unmatched). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a 'fundamental interest in his own life' and because such force 'frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.'" *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Garner*, 471 U.S. at 9). Alvarado's "extreme" use of force and should only be used in limited circumstances. *Id.* at 1011.

### B.    Government Interests Do Not Justify Deadly Force

The use of deadly force must be balanced against the purported need for it. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017).

Government interest factors include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternatives to effectuate an arrest, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012); *see Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

The Ninth Circuit has cautioned that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [it has] held on many occasions that summary judgment…in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). Further, it reaffirmed that "summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133 (noting genuine doubts about officer credibility regarding perceptions as compared to other evidence). Here, Alvarado's credibility regarding his perceptions raises serious doubts and no government interests under *Graham* and its progeny support the use of such extreme force.

**No immediate threat of death to Alvarado**: Starting with the most important *Graham* factor—whether the subject posed an immediate threat to the safety of Alvarado. *Smith*, 394 F.3d at 702. "Deadly force is permissible only 'if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm.'" *Landeros*, 837 F.3d at 1011 (quoting *Garner*, 471 U.S. at 11). In other words, the use of deadly force is only permissible in the most limited circumstances—when **necessary** to prevent death or serious bodily injury. *Garner*, 471 U.S. at 3; Cal. Pen. Code §835a. Here, it requires that Alvarado be trapped in the "V" of his door and the car must be moving. (PAMF 62.) Both Defense experts admit, if Alvarado was not

trapped in the "V", *or* if the car was not moving at the time of the shots, then there was not risk of death or serious bodily injury. (PAMF 63-64.) Alvarado was not about to be crushed because he was in his unit, not in the threshold or "V" of his door and was not standing outside his unit when he used deadly force. (PAMF 66.) Regardless of Alvarado's position, if the car is not moving, it obviously does not risk death or serious bodily injury. (PAMF 68.) Here it is undisputable—the car was stopped and blocked when Alvarado used deadly force. (PAMF 69-70.)

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiffs, Benavente obviously did not pose an immediate threat of death or serious bodily injury to anybody at the time of the shooting. The stopped car was incapable of pushing Alvarado's door closed because it was blocked and under Defendants' facts, in drive. An officers' actions are not judged with the 20/20 vision of hindsight; nevertheless, not all errors in perception or judgment are reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Here, Alvarado clearly overreacted to an imaginary situation that did not occur stated attempting to justify his unreasonable force. "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Bryan*, 630 F.3d at 826. It was incumbent on Alvarado to control his emotions not to use deadly force unnecessarily. Out of four officers, only Alvarado used deadly force. There is ample support in the record to find these facts. *See Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017).

Further, this is clearly not a fleeing felon situation. (PAMF 60.) "[A] suspect's previous violent conduct does not justify non-trivial force where the suspect poses no immediate safety threat." *Andrews v. City of Henderson*, 35 F.4th 710, 719 (9th Cir. 2022). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so…. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11.

Viewing the video evidence in the light most favorable to Plaintiffs, Alvarado was in his unit and the car was stopped with no officers in its path or about to be crushed. There are no objective factors to justify Defendants' claim that Benavente was an immediate threat of death or serious bodily injury. *See Deorle*, 272 F.3d at 1281 ("a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."); *Lopez*, 871 F.3d at 1008-10 (finding the armed subject's position and movement immediately prior to the shooting did not support a reasonable belief of a threat). Thus, Benavente did not present an immediate threat of death or serious bodily harm.

**Seriousness of crime and whether there was evading**: Defendants were not responding to a call for service, this was not a serious crime. This pretextual stop even under Defendants' facts was for a mere tinted windows violation unreasonably escalated by Alvarado into a deadly force encounter. A vehicle-stop to investigate the legality of tinted windows is lawful only if the officer has articulable facts suggesting that tinted glass is illegal. *People v. Hanes*, 60 Cal. App. 4th Supp. 6, 9 (Cal. App. Dep't Super. Ct. 1997); *United States v. Orozco*, 858 F.3d 1204, 1213 (9th Cir. 2017). Here, Varela does not even know the vehicle code nor what it says. (PAMF 37); Cal. Veh. Code §26708(d). Despite the later pursuit, flight does not justify deadly force. This factor does not support the use of deadly force. For example, in *Deorle*, the plaintiff "brandish[ed] a hatchet" and a crossbow and was verbally abusive to officers, threatening to "kick [their] ass," and refused to comply with commands. 272 F.3d at 1276-77. Nevertheless, the Ninth Circuit did not consider this sufficient active resistance to warrant force, noting that "the crime being committed, if any, was minor." *Id.* at 1282-85. Nevertheless, here, the car was stopped at the time of the shots—not attempting to evade. Thus, this factor weighs in favor of finding that Defendants' use of deadly force was excessive. *Id.* at 1283 (govt. interest in using deadly force is diminished when a person was not committing a serious crime).

**No effort to limit the force despite available alternatives**: An important factor is "any effort made by the officer to tempter or limit the amount of force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Alvarado ignored numerous less-intrusive alternatives, such maintaining cover, providing verbal commands, de-escalation, and maneuvering (if necessary) to gain more distance and time. If Alvarado actually thought he was about to be crushed by a stopped car (not) pushing on his door, all he had to do was take a small step to the side. Alvarado did not have to because he was not in a position to be threatened. Alvarado also knew that additional officers were arriving, including support from a negotiator, K9, air unit, BearCat tactical vehicle, and less-lethal weapons including a Taser, baton, pepperball gun, and 40mm launcher. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (quoting *Smith*, 394 F.3d at 701) ("[c]ourts may also consider 'the availability of alternative methods of capturing or subduing a suspect.'"). Use of deadly force could have been avoided had Alvarado allowed the utilization of appropriate tactics and less-intrusive alternatives prior to using deadly force. Nevertheless, the car was not moving. No force was necessary. Alvarado ignored the obvious less-intrusive options and escalated the situation by resorting to deadly force. *See Glenn*, 673 F.3d at 872; *Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). This factor also weighs heavily in Plaintiffs' favor.

**No warning given**: Before using deadly force, officers must issue a warning, when feasible. *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). Here it is undisputed that Alvarado failed to give a warning despite it being feasible. *See Lopez*, 871 F.3d at 1007. With a stopped vehicle, there is no excuse to not take the time to provide commands/warnings prior to resorting to *any* form of force. Alvarado had time to warn and chose not to – using deadly force in haste.

A jury could easily find that Alvarado's use of deadly force was objectively unreasonable under these circumstances in violation of the Fourth Amendment. Accordingly, Defendants are not entitled to summary judgment as a matter of law.

## V.   ALVARADO DELAYED MEDICAL CARE

The failure to render post-arrest medical treatment is analyzed under the Fourth Amendment's objective reasonableness standard. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). Four factors assist in evaluating the claim: (1) observing symptoms of medical need; (2) seriousness of medical need; (3) scope of needed treatment; and (4) police investigatory concerns. *Florek v. Village of Mundelein*, 649 F.3d 594, 600 (7th Cir. 2011). The Ninth Circuit has not had the occasions to define the contours of this right beyond imposing a duty to "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital," and by monitoring the subject. *Tatum*, 441 F.3d at 1098-99. It cannot be credibly denied, however, that Fourth Amendment "reasonableness" requires at least as much attention to medical needs as Eighth Amendment "deliberate indifference." Officials are deliberately indifferent if they know of and disregard a serious medical need. *See Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003); *see Lemire v. California Department of Correction and Rehabilitation*, 726 F.3d 1062, 1083 (9th Cir. 2013) ("a trier of fact could conclude that…officers trained to administer CPR who nonetheless did not do so despite an obvious need demonstrated [] deliberate indifference").

Integral to *Tatum* was that the officers monitored the decedent. 441 F.3d at 1098-99. The Court instructed; it would be a constitutional violation if "the officers ignored [the subject's] deteriorating medical condition." *Id*. at 1098; *see Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 921 (9th Cir. 2015) (with clear injuries, ignoring medical needs violates constitutional rights, even under a deliberate indifference standard); *Regalado v. Riverside Cnty.*, No. ED-cv-201578-JGB-KKX, 2021 WL 945249, at *4 (C.D. Cal. Jan. 15, 2021) (depends on the length of delay and seriousness of the need); *Henderson v. City of Torrance*, No. CV-18-3918-MWF (EX), 2020 WL 8024351, at *9 (C.D. Cal. Dec. 14, 2020) (officers

1  "prevented medical personnel from providing immediate treatment"). The Supreme

2  Court also requires the police "to provide medical care to persons, such as

3  [Benavente], who have been injured while being apprehended by the police." *City of*

4  *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

5      Here, officers never provided any medical care to Benavente; delayed his

6  medical evaluation for over 11 minutes; during which time officers ignored

7  Benavente's immediate medical needs. (PAMF 87-92.) *See Ostling v. City of*

8  *Bainbridge Island*, 872 F. Supp. 2d 1117, 1129-30 (W.D. Wash. 2012) (holding that

9  reasonable factfinder could conclude it was objectively unreasonable for officers to

10  restrict medical access to a man who had been shot but could be safely evaluated).

11      A jury could conclude that Defendants knew and ignored Benavente's serious

12  deteriorating condition, caused it to exacerbate and delayed his necessary care.

13  **VI.   PLAINTIFFS' FAMILIAL RELATIONSHIP CLAIMS SURVIVE**

14      Defendants' scant argument that "Alvarado did not have sufficient time to

15  deliberate before shooting Benavente" fails. (Mot., 19:27-28.) Due process violations

16  occur when official conduct "shocks the conscience." *Wilkinson v. Torres*, 610 F.3d

17  546, 554 (9th Cir. 2010). But the meaning "depends on the context." *Tennison v. City*

18  *and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). The deliberate

19  indifference standard applies when the officer has time to deliberate. *Id.* The higher

20  standard only applies in situations "that escalate so quickly that the officer must make

21  a snap judgment." *Porter v. Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008)

22  (collecting cases). However, the "snap judgment" to use deadly force must be a

23  reaction to an unforeseen escalation by the subject, which is not the case here. *Hayes*

24  *v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). Alvarado had time to

25  perceive and react to his perceptions, but instead used deadly force from his unit,

26  over a second after the car stopped. An officer's unreasonable haste does not

27  logically mean no time existed. Then after knowing Benavente needed immediate

28  medical care, officers delayed that care and ignored Benavente until he succumbed to

his wounds, all after Alvarado instructed Varela to stop Benavente without cause. Alvarado's conduct clearly shocks the conscience.

## VII.   ALVARADO IS NOT ENTITLED TO QUALIFIED IMMUNITY

To determine that the law was clearly established, the Court need not look to a case with identical or even "materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 739-41, 754 (2002); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003); *see also Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). Further, the Supreme Court "has firmly rejected the notion that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Lopez*, 871 F.3d at 1018; *Brosseau*, 543 U.S. at 206 (Stevens, J., dissenting) ("The Court's search for relevant case law applying the *Garner* standard to materially similar facts is both unnecessary and ill advised.") (quoting *Anderson*, 483 U.S. at 640). In fact, even "[c]losely analogous preexisting case law is not required to show that a right was clearly established." *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000). "Otherwise, [officials] would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle*, 272 F.3d at 1285. In other words, there may be no published cases with facts exactly like these because of the obvious illegality. *See Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990). Accordingly, the standard is one of fair warning, where the right has been sufficiently defined that an officer had warning his conduct would deprive a victim of his rights, thus not entitled to qualified immunity. *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003); *see also Hope*, 536 U.S. at 740 n.10.

The Court "provides no license to lawless conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Alvarado is expected to know his conduct would violate Benevente's rights; thus, must hesitate before killing a man. *Id*. Alvarado is expected to know that shooting the driver of a stationary vehicle is excessive,

especially when no person is about to be harmed by it. The contours of Benavente's rights were clearly established such that Alvarado understood that what he is doing violates those rights. *See Anderson*, 483 U.S. at 640. Alvarado is not entitled to qualified immunity because there are disputed issues of material fact, it is obviously unreasonable for officers to use deadly force against an unarmed subject in a stopped car, blocked to the rear, with no person in the path or about to be crushed.

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (citing *Espinosa v. Cty. & Cnty of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010)); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003); *Santos*, 287 F.3d at 855, n.12 ("whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact); *Brosseau*, 543 U.S. at 206, (Stevens J., dissenting) (whether an officer's belief is reasonable is a quintessential jury question); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956 ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate). Here, the key material factual disputes bearing on the reasonableness of Defendants' use of deadly force are whether it was feasible for Defendants to give a warning; whether the alternative less-intrusive options available; and whether Benavente was an immediate threat of death or serious bodily injury when Alvarado used deadly force. There are numerous others.

On Plaintiffs' facts, the car was stopped at the time of the shooting, and no person was in the path of the car or about to be struck, run over, or crushed by the car, placing this case "within the obvious." *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007). Further, the law was clearly established that it is unconstitutional to

shoot the driver of a stopped or slow-moving vehicle without warning when there is no immediate threat of death or serious bodily injury. "There need not be a prior case 'directly on point,' so long as there is precedent 'plac[ing] the statutory or constitutional question beyond debate.'" *Lopez*, 871 F.3d at 1017. A reasonable jury can find that Benavente was *obviously* not an immediate risk of death or serious bodily injury. *Aguirre*, 29 F.4th at 629 (where the subject posed no immediate threat to the officers or others, the "'general constitutional rule' applies 'with obvious clarity'" rendering the officer's decision to shoot objectively unreasonable).

Nonetheless, Plaintiffs provide specific cases of similarly situated decedents that "place the…constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). Plaintiffs' case is even stronger than the most factually analogous cases because Benavente did not engage in a dangerous high-speed pursuit, the car was stopped at the time of the shooting, no person was in the potential path of the car, and the officers were not responding to a serious crime. It was clearly established that this shooting of a vehicle driver who posed no immediate threat of death or serious bodily injury, constitutes excessive force. *See*, *e.g.*, *Villanueva v. California*, 986 F.3d 1158, 1172 (9th Cir. 2021) ("In light of [the 1996 case] *Acosta*, all reasonable officers [in 2016 at the time of the *Villanueva* shooting] would know it is impermissible to shoot at a slow-moving [or stopped] car when he could 'simply step[] to the side' to avoid danger."); *A.D. v. California Highway Patrol*, 712 F.3d 446, 458 (9th Cir. 2013); *Adams*, 473 at 994 (shooting driver of slow moving car not reasonable where driver posed no threat); *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1146-47 (9th Cir. 1996) (shooting at slow moving car not reasonable where officer could move out of car's path); *Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008) (deny qualified immunity as a reasonable officer would not have believed that a vehicle moving slowly in a non-aggressive manner could have posed a threat of serious harm); *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005) (deny qualified immunity even if defendant officer was in the path of

1   the vehicle, as the defendant was not in any danger when he shot four times at the

2   moving vehicle); *Kosakoff v. City of San Diego*, No. 08-CV-1819, 2010 WL

3   1759455, at *6 (S.D. Cal. Apr. 29, 2010) (denying qualified immunity in part

4   because the car was moving slowly and the shots took place after the officer was

5   already in a position of safety); *see also Garner*, 471 U.S. 1 (deadly force only

6   reasonable to prevent escape where officer has probable cause to believe suspect

7   poses threat of serious physical harm); *cf. Mullenix v. Luna*, 136 S. Ct. 305, 312

8   (2015) (granting qualified immunity to officer who shot vehicle in high speed chase

9   and distinguishing from cases that "involve suspects who may have done little more

10  than flee at relatively low speeds"). The instant case is even stronger than the

11  foregoing cases because the car was stopped at the time of the shooting with no

12  officer in its path, making Alvarado's use of force obviously excessive.

13      Defendants' reliance on *Plumhoff* and *Monzon* is misplaced. The chaotic

14  situations in *Plumhoff v. Rickard*, 572 U.S. 765 (2014) and *Monzon v. City of*

15  *Murrieta*, 978 F.3d 1150, 1153 (9th Cir. 2020) are inapposite.

16      In *Plumhoff*, the driver had already pulled over and spoke with the officer;

17  there were signs that the driver struck a pedestrian; the officer saw beer in the

18  vehicle; and then after being asked to step out, he fled. *Id*. at 768-70. Officers

19  attempted to stop the driver during the pursuit; the subject swerving through traffic

20  passing over two-dozen vehicles; attained speeds over 100 mph; before colliding

21  with a police unit and spinning out into a parking lot. *Id*. at 769, 776. There, as the

22  driver put the car in reverse, officers got out of their cruisers, approached the vehicle

23  and pounded on the window. *Id*. at 769-70. The vehicle contacted another cruiser

24  then its tires started spinning and the car was rocking back and forth—indicating the

25  driver was accelerating—even though the bumper was flush with a cruiser, then one

26  officer shot the driver followed by the vehicle fleeing down the street and several

27  other officers firing their weapons. *Id*. at 770. The *Plumhoff* Court relied on the

28  holding in *Scott*, 550 U.S. at 386, that "A police officer's attempt to terminate a

dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Plumhoff*, 572 U.S. at 776. Necessary to the *Plumhoff* decision was that the fleeing motorist was a risk of death or serious bodily injury to others—prior to the and during the shots, the vehicle was accelerating, wheels spinning; thus, a reasonable police officer would conclude that the subject was intent on resuming flight, and *if allowed*, would *once again* pose a deadly threat for others. *Id.* at 776-77.

However, here, there was no pullover conversation; no suspicion that the subject struck a pedestrian or was under the influence; no swerving through dozens of vehicles going over 100 mph; and no spinning out in a parking lot. Here no officers attempted to stop the pursuit with vehicle intervention techniques; no officer approached the window attempting to communicate; and no officer gave a warning. Most importantly, <u>Benavente's car was not spinning out</u>; <u>not rocking back and forth</u>; <u>not accelerating</u>; and <u>did not continue to flee—it stopped</u>. Here there was no threat to innocent bystanders. The only imaginary threat was to Alvarado whose story lacks credibility and presents the impossible. *Plumhoff* is not controlling.

In *Monzon* the driver led officers on "a high-speed chase"; after stopping at a dead-end street, multiple "officers parked and exited their cruisers behind him"; "the van accelerated in an arc toward and eventually between the officers"; officers "commanded Monzon to stop"; officers fired "when the van was moved in their direction and in the direction of their fellow officers"; then "Monzon crashed into a police cruiser, pushing that cruiser into one of the officers." *Monzon*, 978 F.3d at 1153. The Ninth Circuit was quite clear as to what the dispositive facts in *Monzon*. However, here, the <u>pursuit was not high-speed</u>; <u>all officers were in their units</u>, including Alvarado; <u>the car was stopped</u>; <u>the car did not drive toward any officer</u>; did not drive between any officers; no officer gave Benavente any commands or warnings; Alvarado fired in the stopped car from his unit; and Benavente did not

push a police vehicle into an officer. Furthermore, in *Monzon*, officers knew the van was stolen and events starting with a felony stop; officers did not know there was a passenger in the van; the van drove up to 100 miles per hour; the dead-end street had no lights; "Monzon engaged in a multi-point turn" pointing the van at officers who were all on foot; and "the van's engine revved and its tires spun" during the shots. *Id.* at 1154-55. Continuing to be distinguishable, here the car was not stolen, and events started with a mere tinted windows citation; Alvarado knew there was a female passenger; Benavente drove the around the speed limit stopping several times; Beverly was well lit; the car did not turn around pointing at officers; and when the shots were fired the car was not revving and the tires were not spinning.

Because of the facts above, the Ninth Circuit would not have found that "Monzon posed an immediate threat to the safety of the officers" in a dark, "very dynamic and chaotic environment." *Id.* at 1158. Most important to the Court's analysis was that "[t]here is no genuine dispute…that Monzon *was* driving toward one of more of the five officers when the shots were fired." *Id.* at 1159. Here, it is *undisputed* that the car *was not* driving toward any officers when the shots were fired; the car was stopped; with no officers in its potential path.

In what started as an unreasonable pretextual stop—turned minor traffic violation, Alvarado unreasonably used deadly force against Benavente in the stopped car. This was not a dangerous high-speed pursuit. No officer was threatened with immediate death or serious bodily injury. Alvarado's unreasonable subjective belief that he *may* be crushed by a stopped car that was blocked from the rear is fiction, contradicted by objective evidence, and a jury question. Ninth Circuit precedent makes evident, Alvarado is not entitled to qualified immunity under the circumstances of this case. The material factual disputes preclude granting qualified immunity as they directly relate to the reasonableness of Alvarado's use of deadly force. The Ninth Circuit precedent in *Villanueva*, *Acosta*, *A.D.*, *Adams*, *Kirby*, *Smith*, and *Kosakoff*, clearly establish that officers may not use deadly force against

stopped or slow-moving vehicle, where no officers are in its path, especially without warning and where there are reasonable alternatives.

Even under Defendants' facts, this is not an open question, the Court has "consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger." *Villanueva*, 986 F.3d at 1170 (citing *Orn v. City of Tacoma*, 949 F.3d 1167, 1175 (9th Cir. 2020). The *Villanueva* Court also clarified that the *Monzon* exception is "only when the driver was trying to evade arrest in an aggressive manner involving attempted or actual accelerating of the vehicle." *Villanueva*, 986 F.3d at 1170. "The key question, then, is whether [the driver] accelerated or attempted to accelerate toward the officers before the Officers shot [the driver]." *Id*. Here, it is undisputed that the car was previously slowing down, moving away from Escobar's unit prior to stopping, then had been stopped prior to and during the shots, and never accelerated toward Alvarado.

## VIII. *MONELL* SURVIVES

Despite general assertions, Defendants sole argument is that if there is no constitutional violation, there is no municipal liability. (Mot., 23:1-24:14.) For the same reasons the unarmed killing of a person in a stopped car with no officers in the path or about to be crushed, without warning and while less-intrusive means were available, is excessive force, followed by an unreasonable denial of medical care—a jury could find that <u>Alvarado's actions shocks the conscience and acted with reckless disregard</u> (*see, supra*, Sections IV-VI.). Furthermore, qualified immunity does not apply to municipalities. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995). Thus, Plaintiffs' *Monell* claims must survive.

## IX. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motions for Summary Judgment in full.

1  DATED:  April 12, 2024          **LAW OFFICES OF DALE K. GALIPO**

2                                   By:_____*Marcel F. Sincich*_____
3                                   Dale K. Galipo, Esq.
                                    Marcel F. Sincich, Esq.
4                                   *Attorney for Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned, counsel of record for Plaintiffs FRANK BENAVENTE; and NICOLE VENTRESS certifies that this brief contains 6,917 words, which complies with the word limit of L.R. 11-6.1.


DATED:  April 12, 2024               **LAW OFFICES OF DALE K. GALIPO**

                                     By:        *Marcel F. Sincich*
                                     Dale K. Galipo, Esq.
                                     Marcel F. Sincich, Esq.
                                     *Attorney for Plaintiffs*