**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 5:23-cv-00266-SSS-DTBx<br><br>[*Honorable Sunshine S. Sykes*]<br>*Magistrate Judge David T. Bristow*<br><br>**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>[*Filed concurrently:* Plaintiffs' Opposition to Defendants' Motions for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiffs' Statement of Genuine Disputes of Material Fact; Plaintiffs' Statement of Evidentiary Objections, *and Proposed Order thereto*; Plaintiffs' Additional Material Facts; Declaration of Marcel F. Sincich *and exhibits thereto*; Declaration of Roger Clark *and exhibits thereto*]<br><br>MSJ Date:  May 17, 2024<br>Time:        2:00 p.m.<br>Dept.:       2, 2nd Floor |

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Local Rule 56-2 and this Court's Civil Standing Order (Doc. 10), Plaintiffs FRANK BENAVENTE and NICOLE VENTRESS respectfully submit Plaintiffs' Statement of Additional Material Facts.


Please take notice that, where page numbers exist in the original documents, the citations to page numbers to Plaintiffs' Supporting Evidence below references to the page of the original document prior to being cut down to the cited pages only (i.e., not the pdf page number). If the BATES number is utilized to pin-cite in the record, it will specifically be annotated as such.


DATED:  April 12, 2024        **LAW OFFICES OF DALE K. GALIPO**


By:_____*Marcel F. Sincich*_____
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

## I.      THE INITIAL PULLOVER AND PURSUIT

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **THE INITIAL PULLOVER AND PURSUIT** | |
| **18.** On February 22, 2022, at approximately 11:55 p.m., four officers from three patrol vehicles initiated a traffic stop of a red car driven by Joseph Benavente ("Benavente"). | **Exh 1, Alvarado Depo** at 6:3-14, 7:25-8:1, 30:21-23, to Sincich Decl. ¶1.<br><br>**Exh 3, Varela Depo** at 20:10-18, 21:8-14, to Sincich Decl. ¶3. |
| **19.** Officer Andres Varela ("Varela") was the driver of the primary unit in this incident. | **Exh 3, Varela Depo** at 15:13-17, 30:19-21, to Sincich Decl. ¶3. |
| **20.** A trainee, Officer Alex Escobar ("Escobar"), was the driver of the secondary unit along with his passenger and trainer Defendant Corporal Albert Alvarado ("Alvarado"). | **Exh 1, Alvarado Depo** at 36:20-21, 44:6, to Sincich Decl. ¶1.<br><br>**Exh 3, Varela Depo** at 20:19-21, to Sincich Decl. ¶3. |
| **21.** Alvarado was the supervisor during this incident. | **Exh 3, Varela Depo** at 19:22-20:3, to Sincich Decl. ¶3. |
| **22.** Officer Kevin Vasquez-Lopez ("Vasquez-Lopez") was the driver of the third unit. | **Exh 2, Vasquez-Lopez Depo** at 11:13-18, to Sincich Decl. ¶2. |
| **23.** The 3 patrol vehicles were Ford Explorer SUVs. | **Exh 2, Vasquez-Lopez Depo** at 42:15-18, to Sincich Decl. ¶2.<br><br>**Exh 8, Varela Interview** at BATES 108:52-54, to Sincich Decl. ¶8.<br><br>**Exh 9, Escobar Interview** at BATES 136:34-39, to Sincich Decl. ¶9. |
| **24.** However, each officer wore and activated their body-worn cameras during the incident. | **Exh 6, Alvarado Interview** at BATES 214:19-27, to Sincich Decl. ¶6.<br><br>**Exh 7, Vasquez-Lopez** Interview at BATES 1876:222-224, to Sincich Decl. ¶7. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **THE INITIAL PULLOVER AND PURSUIT** | |
| | **Exh 8, Varela Interview** at BATES 109:13-14, to Sincich Decl. ¶8. |
| | **Exh 9, Escobar Interview** at BATES 137:3-8, to Sincich Decl. ¶9. |
| | **Exh 11, Vasquez-Lopez Video**, to Sincich Decl. ¶11. |
| | **Exh 27, Alvarado Video**, to Sincich Decl. ¶27. |
| | **Exh 25, Escobar Video**, to Sincich Decl. ¶25. |
| | **Exh 26 Varela Video**, to Sincich Decl. ¶26. |
| **25.** The body-worn camera must be mounted on the officer's body facing forward according to policy. | **Exh 3, Varela Depo** at 19:9-13, to Sincich Decl. ¶3. |
| **26.** To activate it, all that must be done is to press the button twice. | **Exh 6, Alvarado Interview** at BATES 214:19-27, to Sincich Decl. ¶6. |
| **27.** Yet, Alvarado conveniently, in violation of policy, did not activate his BWC until after his use of excessive force. | **Exh 27, Alvarado Video** at 00:00-00:31, to Sincich Decl. ¶27. |
| | **Exh 23, Body Worn Video Policy** at 1-2, to Sincich Decl ¶23. |
| **28.** And his trainee failed to activate his BWC until after the use of excessive force as well. | **Exh 25, Escobar Video** at 00:00-00:31, to Sincich Decl. ¶25. |
| **29.** Two people can view the same video and interpret it differently. | **Exh 5, Callahan Depo** at 15:10-12, to Sincich Decl. ¶5. |
| **30.** The officers had never seen Benavente or his car before and had no information about Benavente including: no information about his criminal history; no information about whether he ever committed a crime or had been arrested; no information about whether | **Exh 1, Alvarado Depo** at 31:13-15 (no information he committed a serious crime), 34:17-35:9 (no information about driver, criminal history, drugs or alcohol, or ever harmed anyone), to Sincich Decl. ¶1. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| THE INITIAL PULLOVER AND PURSUIT | |
| Benavente had a history with drugs or alcohol or under the influence at the time; no information about whether Benavente had ever verbally threatened or ever harmed anybody; and received no updates about Benavente during the pursuit. | **Exh 2, Lopez Depo** at 12:12-14, 12:18-13:1, to Sincich Decl. ¶2.<br><br>**Exh 3, Varela Depo** at 20:25-21:2, 21:15-22:17, 24:3-5, 25:20-26:2, to Sincich Decl. ¶3.<br><br>**Exh 6, Alvarado Interview** at BATES 229:22-28 (no encounters with driver or passenger, does not know who they are, never saw car before), to Sincich Decl. ¶6. |
| **31.** North on Mountain Ave. ("Mountain") at the 4th St. ("4th") red light, Varela stopped in the center lane, Escobar stopped in the left lane, and Benavente stopped in the right lane. | **Exh 3, Varela Depo** at 26:22-24, 27:3-12, to Sincich Decl. ¶3.<br><br>**Exh 6, Alvarado Interview** at BATES 214:33-44, 218:14-16, 218:33-44, to Sincich Decl. ¶6.<br><br>**Exh 8, Varela Interview** at BATES 109:24-29, to Sincich Decl. ¶8.<br><br>**Exh 9, Escobar Interview** at BATES 137:23-30, to Sincich Decl. ¶9. |
| **32.** On a green light, Benavente turned right onto 4th. | **Exh 3, Varela Depo** at 27:22-24, to Sincich Decl. ¶3.<br><br>**Exh 4, Handy Depo** at 89:17-19, to Sincich Decl. ¶4.<br><br>**Exh 8, Varela Interview** at BATES 111:13-14, to Sincich Decl. ¶8.<br><br>**Exh 9, Escobar Interview** at BATES 137:28-31, to Sincich Decl. ¶9. |
| **33.** Alvarado instructed Varela to stop Benavente, then instructed Escobar to follow Varela. | **Exh 6, Alvarado Interview** at BATES 214:46-54, to Sincich Decl. ¶6. |
| **34.** Varela and Escobar made illegal right turns onto 4th. | **Exh 6, Alvarado Interview** at BATES 214:44-54, 218:26-29, to Sincich Decl. ¶6. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| THE INITIAL PULLOVER AND PURSUIT ||
|  | **Exh 9, Escobar Interview** at BATES 137:29-31, to Sincich Decl. ¶9. |
| **35.** Doing so, Varela nearly crashed into a civilian vehicle, causing the civilian to honk and Alvarado to yell, "Hey, stop," alerting Varela. | **Exh 6, Alvarado Interview** at BATES 214:51-52, to Sincich Decl. ¶6. |
| **36.** Varela claimed that his intent was to initiate a traffic stop for the minor fix-it-ticket violation for tinted windows. | **Exh 3, Varela Depo** at 24:11-19, 26:13-17, 28:14-15, 28:25-29:9, to Sincich Decl. ¶3. |
| **37.** However, Varela does not know the vehicle code or what the vehicle code says related to tinted windows. | **Exh 3, Varela Depo** at 28:19-24, 29:10-17, to Sincich Decl. ¶3. |
| **38.** Benavente turned onto Beverly, slowed down and again pulled over and came to a stop. | **Exh 1, Alvarado Depo** at 37:9-15 (stopped on Beverly), 41:7-10 (stopped near curb facing north), to Sincich Decl. ¶1.<br><br>**Exh 3, Varela Depo** at 59:22-24 (stopped on Beverly), to Sincich Decl. ¶3.<br><br>**Exh 8, Varela Interview** at BATES 113:18-19 (stopped on Beverly thinking he would make another U-turn), to Sincich Decl. ¶8. |
| **39.** This was not a high-speed or dangerous pursuit, instead several times the car slowed down and stopped. | **Defendants' Statement of Undisputed Material Fact ("DUMF") Nos 3-4**, undisputed that the "pursuit" lasted between 5-7 minutes and ended when Benavente pulled into the Beverly cul-de-sac.<br><br>**Exh 1, Alvarado Depo** at 32:19-22 (on 4th, Benavente "was not driving at a high rate of speed"), 34:2-3 (pulled over on bridge), 35:15-16 ("acceleration and the sudden |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| THE INITIAL PULLOVER AND PURSUIT | |
| | stopping"), 36:6-8, to Sincich Decl. ¶1. |
| | **Exh 3, Varela Depo** at 25:6-9 (the pursuit began after the car turned left on San Antonio), 34:1-3 (stopped on bridge), 36:13-25 (bridge is overpass on San Antonio), 37:7-11 (in middle of bridge), 39:18-20 (stopped for 2 seconds), to Sincich Decl. ¶3. |
| | **Exh 3, Varela Depo** at 44:18-45:3, 46:14-20, to Sincich Decl. ¶3 – If the vehicle pursuit was getting too dangerous, that as the primary unit can cancel the pursuit and Varela did not cancel the pursuit or call air support and then back off to allow air support to follow the subject vehicle to get the subject vehicle to slow down. |
| | **Exh 4, Handy Depo** at 96:21-97:1, to Sincich Decl. ¶4 –no video showing the car speeding or driving erratically. |
| | **Exh 6, Alvarado Interview** at BATES 215:17-20 ("wasn't until San Antonio that, that's when I turn on the Code Three lights on … the stop sign at 4th Street to go north bound to San Antionio and that's when, okay we're, we're going to be in pursuit"), 215:32 (stop on bridge), 215:46-49 (stops several times), 215:51-52 (stops on 6th), 221:17-19 (stops on 6th), to Sincich Decl. ¶6. |
| | **Exh 8, Varela Interview** at BATES 109:31, to Sincich Decl. ¶8 – "car was driving normal speed." |
| | **Exh 9, Escobar Interview** at BATES 139:11-12 (saw break lights |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| THE INITIAL PULLOVER AND PURSUIT | |
| | occasionally), 141:36-38 (no violation broadcasted to dispatch), to Sincich Decl. ¶9.<br><br>**Exh 21, Audio Video Report** at 4, 15, to Sincich Dec ¶21.<br><br>**Clark Decl**. ¶¶15-17. |
| **40.** During the entirety of the pursuit, there was little-to-no traffic and no pedestrians, nobody was injured and there were no traffic collisions. | **Exh 3, Varela Depo** at 47:19-25, 48:19-49:2, to Sincich Decl. ¶3.<br><br>**Exh 4, Handy Depo** at 65:4-6, 68:9-16, 98:20-23, to Sincich Decl. ¶4.<br><br>**Exh 6, Alvarado Interview** at BATES 220:33-36, 220:42-43, 220:46-50, 225:18-19, to Sincich Decl. ¶6.<br><br>**Exh 7, Lopez Interview** at BATES 1896:931-933, 1896:936-1897:937, 1897:938-941, to Sincich Decl. ¶7.<br><br>**Exh 9, Escobar Interview** at BATES 139:15, to Sincich Decl. ¶9. |
| **41.** Varela was in the best position to view the car yet did not put out any radio traffic during the pursuit and had no communication with other units. | **Exh 3, Varela Depo** at 31:9-11, 31:22-25, 47:9-18, to Sincich Decl. ¶3.<br><br>**Exh 8, Varela Interview** at BATES 114:5-8, 114:29-30, to Sincich Decl. ¶8. |
| **42.** There was no communication (besides "Go get him, catch up") or planning amongst the officers during the pursuit. | **Exh 7, Vasquez-Lopez Interview** at BATES 1891:739-742, to Sincich Decl. ¶7.<br><br>**Exh 9, Escobar Interview** at BATES 142:24-28, 159:33-34, 160:37-41, to Sincich Decl. ¶9. |
| **43.** No vehicle code violations were broadcast to dispatch and there is no video showing the car speeding or driving erratically. | **Exh 4, Handy Depo** at 96:21-97:1, to Sincich Decl. ¶4. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| THE INITIAL PULLOVER AND PURSUIT | |
| | Exh 9, Escobar Interview at BATES 114:5-8, 114:29-30, to Sincich Decl. ¶9. |

## II.   ALVARADO'S UNREASONABLE USE OF DEADLY FORCE

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | ALVARADO'S UNREASONABLE USE OF DEADLY FORCE | |
| **44.** | Varela stopped offset to Benavente's left and again activated his spotlight. | **Exh 3, Varela Depo** at 34:8-12; 40:5-7, 53:12-14, to Sincich Decl. ¶3.<br><br>**Exh 10, Surveillance Video** at 00:00-00:03, to Sincich Decl. ¶10.<br><br>**Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18.<br><br>**Exh 19, Callahan Slides** at 2, to Sincich Decl ¶19. |
| **45.** | Varela thought Benavente would make another U-turn and saw the reverse lights, so he did not get out of his vehicle. | **Exh 3, Varela Depo** at 53:20-22, at 54:20-55:2, 55:7-9, to Sincich Decl. ¶3.<br><br>**Exh 8, Varela Interview** at BATES 113:18-19, to Sincich Decl. ¶8. |
| **46.** | Up to the car reversing, even Defendants' police expert admits, it would be inappropriate to use deadly force against Benavente. | **Exh 4, Handy Depo** at 65:14-66:7, to Sincich Decl. ¶4. |
| **47.** | Benavente reversed to the right, moving away from, and continued past Varela's unit. | **Exh 3, Varela Depo** at 63:14-17, to Sincich Decl. ¶3.<br><br>**Exh 5, Callahan Depo** at 51:19-24, 52:2-4, 53:16-24, to Sincich Decl. ¶5.<br><br>**Exh 10, Surveillance Video** at 00:00-00:05, to Sincich Decl. ¶10.<br><br>**Exh 17, EDR** at 11, to Sincich Decl. ¶17.<br><br>**Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
|  | **Exh 19, Callahan Slides** at 1-2, to Sincich Decl ¶19. |
| **48.** Alvarado's sole focus was on the car and saw Benavente stop and start reversing. | **Exh 1, Alvarado Depo** at 38:3-5, 40:19-21, 47:23-25, to Sincich Decl. ¶1. |
|  | **Exh 4, Handy Depo** at 34:11-18, 73:5-8, 109:12-16, 109:20-22, to Sincich Decl. ¶4. |
|  | **Exh 6, Alvarado Interview** at BATES 216:6-9, 222:43-44, to Sincich Decl. ¶6. |
| **49.** Defendants admit that it would be inappropriate for a reasonable officer to get out of his unit on the passenger side while a subject car is reversing as here. | **Exh 1, Alvarado Depo** at 39:20-40:1, to Sincich Decl. ¶1. |
|  | **Exh 4, Handy Depo** at 117:2-118:5, to Sincich Decl ¶4. |
| **50.** Alvarado instructed Escobar to speed up, to which Escobar complied still approaching as Benavente was reversing past Varela's unit. | **Exh 4, Handy Depo** at 150:20-151:7 (surveillance video at 1 second, car is side-by-side with Varela's unit), to Sincich Decl. ¶4. |
|  | **Exh 6, Alvarado Interview** at BATES 215:35-40, 216:19, 221:1-6, to Sincich Decl. ¶6. |
|  | **Exh 10, Surveillance Video** at 00:00-00:04, to Sincich Decl. ¶10. |
|  | **Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |
| **51.** Benavente had begun making the "S" turn, as if to circle behind Varela's unit, and then turned to avoid a direct collision with Escabar's unit that was rapidly approaching. | **Exh 4, Handy Depo** at 77:12-21, 151:8-13 (video at 2 seconds is beginning of S-turn), to Sincich Decl. ¶4. |
|  | **Exh 5, Callahan Depo** at 58:20-59:19, 65:18-25, to Sincich Decl. ¶5. |
|  | **Exh 10, Surveillance Video** at 00:00-00:04, to Sincich Decl. ¶10. |

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

| | | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|---|
| | | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | | **Exh 17, EDR** at 5, 6, 10, 11, to Sincich Decl. ¶17. |
| | | | **Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |
| | | | **Exh 19, Callahan Slides** at 1-2, to Sincich Decl ¶19. |
| | **52.** | As Benavente continued in reverse, Escobar swerved to the left as he came to a stop after Benavente passed Varela's unit. | **Exh 1, Alvarado Depo** at 41:14-18, to Sincich Decl. ¶1. |
| | | | **Exh 4, Handy Depo** at 151:14-22, 153:14-17, to Sincich Decl. ¶4. |
| | | | **Exh 5, Callahan Depo** at 43:9-13, to Sincich Decl. ¶5. |
| | | | **Exh 9, Escobar Interview** at BATES 139:34-35, 139:42, 139:53, 144:10-12, 144:27-29, 145:50-51, to Sincich Decl. ¶9. |
| | | | **Exh 10, Surveillance Video** at 00:00-00:04, to Sincich Decl. ¶10. |
| | | | **Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |
| | **53.** | Alvarado did not know why Escobar stopped their unit as he should have pulled up next to Varela's unit but failed to correct his trainee. | **Exh 1, Alvarado Depo** at 44:12-15, 44:17-24, 45:6-14, to Sincich Decl. ¶1. |
| | **54.** | When avoiding a direct impact with Escobar's unit, Benavente began to break. | **Exh 5, Callahan Depo** at 59:4-19, 65:18-25, to Sincich Decl. ¶5. |
| | | | **Exh. 15, Incident Photos** at 1, 6, to Sincich Decl ¶15. |
| | | | **Exh 17, EDR** at 5, 6 (speed), 10 (brakes), 11 (steering), to Sincich Decl. ¶17. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** ||
| | **Exh 19, Callahan Slides** at 1-2, to Sincich Decl ¶19. |
| **55.** Vasquez-Lopez drove directly towards and into the decelerating car as it was trying to avoid Escobar's unit. | **Exh 2, Vasquez-Lopez Depo** at 10:18-20, 11:8-10, 16:3-8, 16:12-14, 17:24-18:4, 18:9-14, to Sincich Decl. ¶2. |
| | **Exh 5, Callahan Depo** at 33:3-10, 61:8-11 (14-16 mph at impact with Escobar unit), 62:1-4 (8-10 mph at impact with Vasquez-Lopez unit), to Sincich Decl. ¶5. |
| | **Exh 7, Vasquez-Lopez Interview** at BATES 1877:280-282, 1877:285, to Sincich Decl. ¶7. |
| | **Exh 16, Screenshots from Vasquez-Lopez Video** at 1, to Sincich Decl ¶16 – showing approximate time when collision occurred. |
| | **Exh 20, Callahan Stills** at 1-21, to Sincich Decl ¶20. |
| **56.** Vasquez-Lopez's unit immediately stopped and blocked the car. | **Exh 2, Vasquez-Lopez Depo** at 22:4-8, to Sincich Decl. ¶2. |
| | **Exh 5, Callahan Depo** at 50:14-51:2; (the EDR data shows the car coming to a stop for about 1 second from -0.5 to -0.4, then reversing at a slow speed at -0.4 while turning slightly to the right, then turn left, then turn right and engage the brakes for approximately 1 seconds prior to stopping), 64:1-13, to Sincich Decl. ¶5. |
| | **Exh 16, Screenshots from Vasquez-Lopez Video** at 1, to Sincich Decl ¶16 – showing approximate time when collision occurred. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | **Exh 17, EDR** at 5, 6 (speed), 10 (brakes), 11 (steering), to Sincich Decl. ¶17. |
| | **Exh 19, Callahan Slides** at 1-2, to Sincich Decl ¶19. |
| | **Exh 20, Callahan Stills** at 1-21, to Sincich Decl ¶20. |
| | **Exh 21, Audio Video Report** at 4 (Alvarado stating shots fired, vehicle stopped), 15 (three distinct shots at 00:59-01:00), to Sincich Dec ¶21. |
| **57.** Alvarado was not in the path of the car when Alvarado used deadly force firing 3 shots at Benavente in the stopped car. | **Exh 1, Alvarado Depo** at 7:1-2, 48:25-49:2, 55:20-24, 56:7-9, 56:18-20 (depo Exh 3) (yellow marking identifies the three bullets that went through the driver's window of the red car), 56:21-23, 62:21-63:9, to Sincich Decl. ¶1. |
| | **Exh 4, Handy Depo** at 83:7-13, 121:7-11, to Sincich Decl. ¶4. |
| | **Exh 5, Callahan Depo** at 65:3-5, to Sincich Decl. ¶5. |
| | **Exh 16, Screenshots from Vasquez-Lopez Video** at 2 (approximate time when shots occurred), 12 (windows side-by-side), to Sincich Decl ¶16. |
| | **Exh 20, Callahan Stills** at 18, to Sincich Decl ¶20. |
| **58.** Alvarado had time to perceive whether there was a potential threat and then react to his perceptions. | **Exh 4, Handy Depo** at 34:11-18, 109:12-16, 109:20-22, 132:13-19, to Sincich Decl. ¶4. |
| | **Exh 10, Surveillance Video** at 00:00-00:05, to Sincich Decl ¶10. |
| | **Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| **59.** | Alvarado knew his conduct may cause death or serious bodily injury as he aimed at and tried to shoot Benavente. | **Exh 1, Alvarado Depo** at 7:21-24, 8:18-20, 50:15-18, to Sincich Decl ¶1.<br><br>**Exh 6, Alvarado Interview** at BATES 226:2-3, to Sincich Decl ¶6. |
| **60.** | This is not a fleeing felon case; Alvarado did not use deadly force out of fear of anyone else's safety but his own or the future threat of death or serious bodily injury to anyone. | **PAMF 67** – Alvarado was not about to be crushed by the car because he was in his unit, and was not in the threshold of the door, was not in the "V" of the door and was not standing outside his vehicle when he used deadly force.<br><br>**PAMF 70** – After the impact, the car immediately stopped while Vasquez-Lopez's unit blocked the car from any further rearward movement.<br><br>**Exh 4, Handy Depo** at 126:24-127:6, to Sincich Decl. ¶4. After review of all the material in this case, even Defendants police expert does not opine that this is a fleeing felon case because there is nothing in the record articulated regarding the use of deadly force against a fleeing felon.<br><br>**Exh 4, Handy Depo** at 127:15-20, to Sincich Decl. ¶4. In order for an officer to use deadly force in a fleeing felon situation, the officer must have reasonably perceived that the subject would cause death or serious bodily injury if not immediately apprehended by the use of deadly force.<br><br>**Exh 4, Handy Depo** at 129:5-11, to Sincich Decl. ¶4. Alvarado was specifically asked in the deposition why he used deadly force and Alvarado did not testify as to anything regarding the |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** ||
|  | criteria that would qualify this as a fleeing felon case.<br><br>**Exh 6, Alvarado Interview** at BATES 226:51-52 (during the incident, Alvarado "wasn't" fearful for anyone else's safety), to Sincich Decl ¶6.<br><br>**Exh 15, Incident Photos** at 1-15, to Sincich Decl ¶15.<br><br>**Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22 – "An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person **will cause death or serious bodily injury to another unless immediately apprehended**. Where feasible, the officer shall, prior to the use of force, make reasonable efforts to…warn that deadly force may be used." |
| **61.** Here, Alvarado should only discharge his firearm at Benavente if (i) Alvarado had no other means to avert (ii) the threat of being crushed between his unit and door, and (iii) it was an immediate threat of death or serious bodily injury. | **Exh 4, Handy Depo** at 140:8-17, to Sincich Decl ¶4. |
| **62.** In other words, the two primary components for here requires (1) that Alvarado was trapped in the "V" of his door, and (2) that the car was moving. | **Exh 4, Handy Depo** at 41:23-42:7 (in order for a low speed vehicle to potentially cause death or serious bodily injury "depends on the position of the person"), 43:16-44:10 (to be crushed depends on a part of the body between two things), 130:11-25 (the red car was not a threat of crushing if Alvarado was sitting in the unit), 132:21-133:1 (to be |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| ALVARADO'S UNREASONABLE USE OF DEADLY FORCE | |
| | a threat requires the car moving), to Sincich Decl ¶4.<br><br>**Exh 5, Callahan Depo** at 74:7-13, to Sincich Decl ¶5. |
| **63.** Both defense experts admit, if Alvarado was sitting in his unit, the car was not threatening to crush him and was not a risk of death of serious bodily injury. | **Exh 4, Handy Depo** at 130:11-15, to Sincich Decl ¶4.<br><br>**Exh 5, Callahan Depo** at 75:14-22, to Sincich Decl ¶5. |
| **64.** Both defense experts admit, if the car was not moving at the time of the shots, Alvarado would not be at any risk of death or serious bodily injury. | **Exh 4, Handy Depo** at 41:13-22, to Sincich Decl ¶4.<br><br>**Exh 5, Callahan Depo** at 75:25-76:9, to Sincich Decl ¶5. |
| **65.** By reasonable inference, even Alvarado admitted it was inappropriate to shoot Benavente after the car stopped because Alvarado could not be hurt by it. | **Exh 6, Alvarado Interview** at BATES 226:19-21 (stopped shooting because the vehicle was stopped because it could not harm him), to Sincich Decl ¶6. |
| **66.** Alvarado was not about to be crushed by the car because he was in his unit, and was not in the threshold of the door, was not in the "V" of the door and was not standing outside his vehicle when he used deadly force. | **Exh 1, Alvarado Depo** at 49:4-7 (Alvarado "was not crushed" by the car), to Sincich Decl ¶1.<br><br>**Exh 2, Vasquez-Lopez Depo** at 9:17-19 (Vasquez-Lopez did not see Alvarado prior to or during the shots), 24:12-22 (Vasquez-Lopez did not see anyone in front of the car, behind the car, **or to the side of the car** when it was reversing up to and past Escobar's unit), 25:11-15, 35:22-24 (Vasquez-Lopez did not see Alvarado between his door and unit prior to the shots), 42:8-11 (Vasquez-Lopez did not see Alvarado outside the patrol vehicle prior to the shooting), to Sincich Decl ¶2. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| ALVARADO'S UNREASONABLE USE OF DEADLY FORCE | |
| | **Exh 4, Handy Depo** at 138:21-24, to Sincich Decl ¶4 – based on his review of the record, Defendants' expert admits Alvarado could have been sitting in his unit at the time of the shots. |
| | **Exh 4, Handy Depo** at 155:18-20 (a second or two after the shots, Vasquez-Lopez exits his vehicle), 156:1-4, 156:9-10, 158:7-15 (the first time Alvarado is seen, only his hand protruding from the unit, then at 01:04 of Vasquez-Lopez's Video, Alvarado is seen for the first time out of his vehicle in the "V"), to Sincich Decl ¶4. |
| | **Exh 6, Alvarado Interview** at BATES 217:37-39, to Sincich Decl ¶6 – checked his body and clothes and did not see any signs of being crushed or harmed. |
| | **Exh 7, Vasquez-Lopez Interview** at BATES 1878:309-310 (Vasquez-Lopez was surprised that the gunshots were not as loud as he thought they would be because Alvarado fired from inside his vehicle), to Sincich Decl ¶7. |
| | **Exh 7, Vasquez-Lopez Interview** at BATES 1878:319-320) (Vasquez-Lopez was concerned with "the officers that were **inside** [the] vehicle right next to" him - i.e., Alvarado was inside the vehicle) (emphasis added), to Sincich Decl ¶7. |
| | **Exh 11, Vasquez-Lopez Video** at 00:58-01:05, to Sincich Decl ¶11. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | **Exh. 15, Incident Photos** at 10-15, to Sincich Decl ¶15 – Alvarado had no signs of being crushed or run over.<br><br>**Exh 16, Screenshots from Vasquez-Lopez Video** at 1-28, to Sincich Decl ¶16 – first time Alvarado is seen on camera, he is exiting his unit.<br><br>**Exh 20, Callahan Stills** at 1-21, to Sincich Decl ¶20. |
| **67.** | The car never struck Alvarado, never hit Alvarado's gun in his outstretched right hand, Alvarado never fell to the ground, and was not injured in any way as a result of the incident. | **Exh 1, Alvarado Depo** at 8:5-6, 10:12-14, 12:19-21, 16:17-18, 30:5-17, 64:18-22, to Sincich Decl ¶1.<br><br>**Exh 5, Callahan Depo** at 76:15-17, to Sincich Decl ¶5.<br><br>**Exh 6, Alvarado Interview** at BATES 217:37-39, 227:4-5, to Sincich Decl ¶6.<br><br>**Exh 16, Screenshots from Vasquez-Lopez Video** at 2-28, to Sincich Decl ¶16. |
| **68.** | Even if Alvarado was out of his vehicle, central to the analysis is the speed of the car—importantly, **"if the car is not moving, *of course*, it doesn't"** cause death or serious bodily injury. | **Exh 4, Handy Depo** at 41:13-22, to Sincich Decl ¶4 - **"if the car is not moving, *of course*, it doesn't"** (emphasis added).<br><br>**Exh 5, Callahan Depo** at 74:14-23, to Sincich Decl ¶5. Whether Alvarado was at risk of any injury is dependent on whether the car was moving such that it was pushing on the passenger door.<br><br>**Exh 5, Callahan Depo** at 66:16-67:1, to Sincich Decl ¶5. Defendants' expert opines that at the moment of impact with Vasquez-Lopez's vehicle, the car was not a significant risk of death or serious bodily injury. |

| | | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|---|
| | | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | | **Exh 16, Screenshots from Vasquez-Lopez Video** at 4-28, to Sincich Decl ¶16. |
| | | | **Exh 20, Callahan Stills** at 1-21, to Sincich Decl ¶20. |
| | | | **Clark Decl** ¶¶9-10. |
| | 69. | After the impact, the car immediately stopped with Vasquez-Lopez's unit blocking the car from any further rearward movement. | **Exh 2, Vasquez-Lopez Depo** at 22:4-8, 36:12-15 (after the shots, the red car was still touching Vasquez-Lopez's unit), to Sincich Decl ¶2. |
| | | | **Exh 2, Vasquez-Lopez Depo** at 8:8-10, 43:2-5 (was stopped immediately after the impact), to Sincich Decl ¶2. After the impact with Vasquez-Lopez's unit both cars stopped. |
| | | | **Exh 4, Handy Depo** at 155:21-23 (the first time the car and Vasquez-Lopez's vehicle is shown in the video shows that the vehicles are stopped and still touching), to Sincich Decl ¶4. |
| | | | **Exh 5, Callahan Depo** at 50:14-51:2, 64:1-13, to Sincich Decl ¶5. |
| | | | **Exh 7, Vasquez-Lopez Interview** at BATES 1894:864-867 (the back bumper of the red car struck the front bumper of Vasquez-Lopez's vehicle), to Sincich Decl ¶7. |
| | | | **Exh 16, Screenshots from Vasquez-Lopez Video** at 1, 28, to Sincich Decl ¶16. |
| | | | **Exh 10, Surveillance Video** at 00:00-00:05, to Sincich Decl ¶10. |
| | | | **Exh 17, EDR** at 5 (The EDR data shows the car coming to a stop for approximately 1 second from -0.5 to - |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | 0.4, then reversing at a slow speed at -0.4 while turning slightly to the right, then turn left, then turn right and engage the brakes for approximately 1 seconds prior to stopping), 6, 10, 11, to Sincich Decl ¶17. |
| | | **Exh 18, Callahan Overlay** at 1-15, to Sincich Decl ¶18. |
| | | **Exh 19, Callahan Slides** at 1-2, to Sincich Decl ¶19. |
| | | **Exh 20, Callahan Stills** at 1-21, to Sincich Decl ¶20. |
| **70.** | Alvarado waited 1.1 seconds after the car stopped before firing his first shot, followed by two additional shots each 0.4 seconds after the prior. | **Exh 1, Alvarado Depo** at 27:5-9 (There was approximately 3 seconds from Alvarado seeing the car backing up to firing his first shot), to Sincich Decl ¶1. |
| | | **Exh 2, Vasquez-Lopez Depo** at 7:11-21, to Sincich Decl ¶2. |
| | | **Exh 4, Handy Depo** at 80:3-6, 80:12-21 (shots fired 1-2 seconds after collision), 155:16-17 (After the collision, the 3 gunshots are heard from Vasquez-Lopez's video), to Sincich Decl ¶4. |
| | | **Exh 5, Callahan Depo** at 44:6-14, 65:3-13, to Sincich Decl ¶5. The final shot was fired about 2 seconds after the car stopped. |
| | | **Exh 10, Surveillance Video** at 00:00-00:10 (3 seconds after beginning to reverse, the car is stopped), to Sincich Decl ¶10. |
| | | **Exh 16, Screenshots from Vasquez-Lopez Video** at 2, to Sincich Decl ¶16 – showing approximate time when shots were fired. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** ||
| | Exh 18, Callahan Overlay at 1-15, to Sincich Decl ¶18. |
| **71.** There were 4 officers on scene and only Alvarado used deadly force. | Exh 1, Alvarado Depo at 17:5-6, to Sincich Decl ¶1. |
| | Exh 2, Vasquez-Lopez Depo at 14:7-8, 26:18-23, to Sincich Decl ¶2. |
| | Exh 3, Varela Depo at 9:14-15, 9:21-10:11, to Sincich Decl ¶3. |
| | Exh 4, Handy Depo at 82:22-24, 83:4-6, to Sincich Decl ¶4. |
| | Exh 9, Escobar Interview at BATES 150:45-46, to Sincich Decl ¶9. |
| **72.** Officers are trained to consider their background/backdrop including innocent civilians and the lives of passengers in the subject car before firing. | Exh 1, Alvarado Depo at 51:20-22, to Sincich Decl ¶1. |
| | Exh 4, Handy Depo at 29:10-24, to Sincich Decl ¶4. |
| **73.** Alvarado knew there were houses in his backdrop, knew there was a female passenger in the car, and knew if he missed, she could have been struck. | Exh 1, Alvarado Depo at 49:8-19, to Sincich Decl ¶1. |
| | Exh 6, Alvarado Interview at BATES 226:4-6, to Sincich Decl ¶6. |
| **74.** Officers are trained to de-escalate the situation when feasible, including the use of effective communication and proper tactics. | Exh 4, Handy Depo at 31:3-14, to Sincich Decl ¶4. |
| **75.** Officers are trained to consider less intrusive force opinions and attempt to generate voluntary compliance without resorting to physical force when feasible. | Exh 4, Handy Depo at 30:16-31:2, to Sincich Decl ¶4. |
| | Clark Decl ¶14. |
| **76.** As it applies here, assuming arguendo that Alvarado was out of his unit, Alvarado should have taken reasonable steps to move out | Exh 4, Handy Depo at 138:6-11, to Sincich Decl ¶4. |
| | Clark Decl ¶14. |

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | of the area that he thought was going to crush him instead of discharging his firearm if feasible. | |
| **77.** | Even assuming Alvarado was out of his unit at the time of the shots (which is disputed), Alvarado made no effort to move to avert any risk, including taking a step back to create distance or reentering his unit. | **Exh 1, Alvarado Depo** at 16:19-20, to Sincich Decl ¶1. Alvarado never dove out of the way. |
| | | **Exh 1, Alvarado Depo** at 16:21-23, to Sincich Decl ¶1. Assuming Alvarado was out of his vehicle, Alvarado never took a step back to create more distance between himself and the car. |
| | | **Exh 1, Alvarado Depo** at 47:15-20, to Sincich Decl ¶1. Assuming Alvarado was out of his vehicle, Alvarado never considered getting back in the vehicle. |
| | | **Exh 1, Alvarado Depo** at 8:2-4.) ("I was stationary"), to Sincich Decl ¶1. Alvarado was not moving when Alvarado fired his weapon. |
| | | **Exh 6, Alvarado Interview** at BATES 226:22-23, to Sincich Decl ¶6. Alvarado knew that his other option was to move away. |
| | | **Exh 6, Alvarado Interview** at BATES 224:16-21, to Sincich Decl ¶6. When the car struck Escobar's vehicle, Alvarado froze and waited, but was not harmed. |
| | | **Clark Decl** ¶14. |
| **78.** | Officers are trained to avoid putting themselves in peril and to not place themselves in an inappropriate position that could leave them vulnerable. | **Exh 4, Handy Depo** at 33:13-17, 147:17-148:6, to Sincich Decl. ¶4. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| **79.** Benavente did not cause death or serious bodily injury and never verbally threatened any officer or person during this incident. | **Exh 4, Handy Depo** at 26:24-27:7, to Sincich Decl ¶4. |
| **80.** Even assuming Alvarado was out of his unit at the time of the shots (which is disputed), if Alvarado was able to move out of the "V" of his vehicle and not about to be crushed by the door, it would be inappropriate to use deadly force. | **Exh 4, Handy Depo** at 142:10-20, to Sincich Decl ¶4. |
| **81.** If an officer sees a car stop at the end of a pursuit, then the car goes rapidly in reverse, collides with a patrol vehicle, then continues to reverse towards a second patrol vehicle, according to Defendants' own police expert, it would be inappropriate for the passenger officer in the second vehicle to open the door and attempt to get out of the patrol vehicle because the officers would not be engaging in a felony stop or foot pursuit given that the subject car was still moving and it would be unsafe for an officer to attempt to get out of the vehicle under those circumstances. | **Exh 4, Handy Depo** at 113:13-114:20, to Sincich Decl ¶4.<br><br>**Clark Decl** ¶8. |
| **82.** Officers are trained to give commands and verbal warnings and trained to give the subject time to comply with commands and warnings before using deadly force when feasible. | **Exh 1, Alvarado Depo** at 51:14-1, to Sincich Decl ¶1.<br><br>**Exh 4, Handy Depo** at 30:4-15, to Sincich Decl ¶4.<br><br>**Clark Decl** ¶13. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| **83.** | No officer gave any commands or warnings to Benavente prior to the shots, despite it being feasible. | **Exh 1, Alvarado Depo** at 11:1-16, to Sincich Decl ¶1. |
| | | **Exh 2, Vasquez-Lopez Depo** at 8:24-9:4, to Sincich Decl ¶2. |
| | | **Exh 3, Varela Depo** at 33:23-25, 66:6-11, to Sincich Decl ¶3. |
| | | **Exh 6, Alvarado Interview** at BATES 225:1-3, to Sincich Decl ¶6. |
| | | **Exh 7, Vasquez-Lopez Interview** at BATES 1899:1013-1016, to Sincich Decl ¶7. |
| | | **Exh 8, Varela Interview** at BATES 118:22-24, to Sincich Decl ¶8. |
| | | **Exh 4, Handy Depo** at 122:11-16, 122:21-25, 124:4-6, to Sincich Decl ¶4. Alvarado stated that he did not issue a verbal warning because (i) the sirens were on, (ii) Benavente's engine was revving, and (iii) that the car windows were up. |
| | | **Exh 4, Handy Depo** at 122:17-19 (officers controlled their sirens), 123:23-25 (no officer stated that Benavente's engine was revving at the time the shots were fired), 124:12-18 (after the shooting the windows were still up, and officers yelled commands to Benavente and the passenger), 125:7-19 (a warning was feasible prior to the use of deadly force because the car was stopped), to Sincich Decl ¶4. However, the. |
| | | **Exh. 11, Vasquez-Lopez Video** at 00:55-01:05, to Sincich Decl ¶11. Cannot hear any sirens when the shots were fired. Vasquez-Lopez and Escobar |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | did not have their sirens on and cannot hear the engine revving at the time of the shots. **Clark Decl** ¶13. |
| **84.** | Alvarado also had alternatives to the use of deadly force including a collapsible baton, pepper spray, a Taser, gaining voluntary compliance, giving the occupants commands, calling for additional officers, use of less lethal weapons including the 40mm and pepperball gun, calling trained negotiators, calling for a K9, air support, and brining in additional resources such as the BearCat tactical vehicle. | **Exh 1, Alvarado Depo** at 20:13-21, 42:4-25, to Sincich Decl ¶1. **Exh 3, Varela Depo** at 44:8-11, to Sincich Decl ¶3. **Exh 9, Escobar Interview** at BATES 153:26, to Sincich Decl ¶9. **Clark Decl** ¶14. |
| **85.** | Officers knew based on their training that additional officers were joining the pursuit as backup. | **Exh 2, Vasquez-Lopez Depo** at 28:8-10, to Sincich Decl ¶2. **Exh 3, Varela Depo** at 43:5-10, to Sincich Decl ¶3. **Exh 8, Varela Interview** at BATES 110:20 (after the shooting, additional officers arrived), 115:23 ("I just know a lot of people were trying to or coming to back us"), to Sincich Decl ¶8. During the pursuit, Varela knew "a lot" of officers were "coming to back" the officers. |
| **86.** | Only after the shooting the officers created a plan, got less-lethal, and gave commands. | **Exh 8, Varela Interview** at BATES 122:13-19, to Sincich Decl ¶8. **Exh 3, Varela Depo** at 53:25-54:4, to Sincich Decl ¶3. Varela did not have a plan. **Exh 8, Varela Interview** at BATES 110:20-23, to Sincich Decl ¶8. After the |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** ||
| | shooting and before pulling Benavente out of the red car, officers got less-lethal options out and Escobar communicate with Benavente over the PA. |
| **87.** Alvarado knew his 3 shots struck Benavente, saw the injuries on Benavente's body, and knew Benavente needed medical help. | **Exh 1, Alvarado Depo** at 15:6-13, 56:24-57:3 65:15-19, to Sincich Decl ¶1. **Exh 2, Vasquez-Lopez Depo** at 28:11-20, to Sincich Decl ¶2. **Exh 8, Varela Interview** at BATES 110:11-12, 110:20, to Sincich Decl ¶8. |
| **88.** After the shooting, officers waited to approach and pull Benavente out, failing to promptly summon medical care and monitored Benavente. | **Exh 8, Varela Interview** at BATES 110:28, to Sincich Decl ¶8. Varela described the situation as "a waiting game." **Exh. 11, Vasquez-Lopez Video**, to Sincich Decl ¶11. - The shooting occurred approximately at 00:59-01:00. - Officer approached and opened Benavente's door at 08:13. - Officers remove Benavente from the car by pulling his limp body by the left arm causing his head to hit the ground, then dragging his body across the ground at 08:42-08:45. - Officers put Benavente's hands behind his back and handcuffed Benavente at 08:50-08:55. - Officers searched Benavente at 09:03. - Alvarado instructed his subordinate to "just leave him there, ok" at 09:05-09:09. - Officer finished searching the car and announced it was clear at 09:10-09:11. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **ALVARADO'S UNREASONABLE USE OF DEADLY FORCE** | |
| | | - Officers turned Benavente over and continued to search him at 09:15.<br>- After searching Benavente, the officer stood by and ignored Benavente, never taking his vital signs or monitoring him, never attempting to slow or stop his bleeding, and removed gloves with no intention of attempting medical aid or monitoring him at 09:30-12:10.<br>- Fire allowed to approach at 12:10 (over eleven minutes after shooting). |
| **89.** | Seeing a gunshot wound to the neck and blood around Benavente, knowing he needed medical attention, officers removed Benavente's limp and unresponsive body from the car. | **Exh 2, Vasquez-Lopez Depo** at 30:12-31:8, 31:12-16, to Sincich Decl ¶2.<br><br>**Exh 7, Vasquez-Lopez Interview** at BATES 1880:405-411, 1881:416-419, to Sincich Decl ¶7.<br><br>**Exh. 11, Vasquez-Lopez Video** at 08:40-08:45, to Sincich Decl ¶11. |
| **90.** | Despite not being responsive and bleeding everywhere from the shots, officers put Benavente face down, handcuffed and searched Benavente. | **Exh 3, Varela Depo** at 69:22-24, to Sincich Decl ¶3.<br><br>**Exh 7, Lopez Interview** at BATES 1881:420-421, to Sincich Decl ¶7.<br><br>**Exh 9, Escobar Interview** at BATES 154:7-16, to Sincich Decl ¶9.<br><br>**Exh. 11, Vasquez-Lopez Video** at 08:50-09:10, to Sincich Decl ¶11.<br><br>**Exh 24, Medical Aid and Response Policy** at 1, to Sincich Decl ¶24. |
| **91.** | No officer gave Benavente medical aid, no resuscitation efforts were made and Benavente was cold to the touch in a pool of blood by the time paramedics were permitted to treat him. | **Exh 3, Varela Depo** at 69:19-21, to Sincich Decl ¶3.<br><br>**Exh. 11, Vasquez-Lopez Video** at 01:00-12:10, to Sincich Decl ¶11. |

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| ALVARADO'S UNREASONABLE USE OF DEADLY FORCE | |
| | **Exh 12, OFD Report** at 1, to Sincich Decl ¶12. |
| **92.** In this case, the only person catastrophically injured was Benavente, who died as a result of this incident. | **Exh 1, Alvarado Depo** at 49:24-50:1, to Sincich Decl ¶1. <br><br> **Exh 5, Callahan Depo** at 76:11-14, to Sincich Decl ¶5. |

## III.   OFFICER TRAINING AND STANDARDS

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| OFFICER TRAINING AND STANDARDS | |
| **93.** Officers are trained to have reverence for human life, especially when using deadly force. | **Exh 1, Alvarado Depo** at 51:23-25, to Sincich Decl. ¶1. <br><br> **Exh 4, Handy Depo** at 28:20-29:6, to Sincich Decl. ¶4. <br><br> **Exh 22, Use of Force Policy** at 1, to Sincich Decl ¶22. |
| **94.** Officers are trained that they are responsible to justify every shot fired. | **Exh 1, Alvarado Depo** at 51:17-19, to Sincich Decl. ¶1. <br><br> **Exh 4, Handy Depo** at 25:19-25, 29:7-9, to Sincich Decl. ¶4. |
| **95.** Officers are trained that they may only use the amount of force necessary to stop a threat or take a person into custody and may only use deadly force when necessary to prevent an immediate threat of death or serious bodily injury. | **Exh 4, Handy Depo** at 26:1-23, 38:16-19, 39:15-21,140:1-7, to Sincich Decl. ¶4. <br><br> **Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22. <br><br> **Clark Decl** ¶9. |
| **96.** Officers are trained that if there is no immediate threat of death or serious bodily injury, that they should not use deadly force. | **Exh 1, Alvarado Depo** at 52:1-4, to Sincich Decl. ¶1. <br><br> **Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22. |
| **97.** If Alvarado's perception of an immediate threat of death or serious | **Exh 4, Handy Depo** at 28:10-16, to Sincich Decl. ¶4. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **OFFICER TRAINING AND STANDARDS** | |
| | bodily injury is not objectively reasonable then it would be inappropriate for Alvarado to use deadly force. | **Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22. |
| 98. | Officers are trained that subjective fear alone is insufficient to use deadly force. | **Exh 4, Handy Depo** at 27:13-15, to Sincich Decl. ¶4.<br><br>**Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22. |
| 99. | Officers are trained that they may not use deadly force for flight alone. | **Exh 4, Handy Depo** at 40:12-24, to Sincich Decl. ¶4.<br><br>**Clark Decl** ¶12. |
| 100. | Officers should exhaust all reasonable alternatives prior to using deadly force. | **Exh 1, Alvarado Depo** at 51:11-13, to Sincich Decl. ¶1.<br><br>**Exh 4, Handy Depo** at 140:20-24, to Sincich Decl. ¶4.<br><br>**Clark Decl** ¶¶9, 14. |
| 101. | An officer should "consider their position and move or adjust if feasible" and that tactical repositioning is not retreat. | **Exh 3, Varela Depo** at 70:10-21, to Sincich Decl. ¶3.<br><br>**Exh 4, Handy Depo** at 36:7-14, 37:7-8, 141:1-3, to Sincich Decl. ¶4. |
| 102. | Officers are trained to de-escalate by maintaining cover and a position of advantage. | **Exh 3, Varela Depo** at 70:12-18, to Sincich Decl. ¶3.<br><br>**Exh 4, Handy Depo** at 33:24-34:3, 37:23-25, to Sincich Decl. ¶4.<br><br>**Exh 22, Use of Force Policy** at 1, to Sincich Decl ¶22. |
| 103. | Officers are trained that proper tactics could be to create and control distance, utilize cover, and give commands where appropriate. | **Exh 4, Handy Depo** at 34:8-10, 36:15-22, to Sincich Decl. ¶4. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **OFFICER TRAINING AND STANDARDS** | |
| 104 | Officers are trained that DISTANCE + COVER = TIME and TIME = OPTIONS. | **Exh 3, Varela Depo** at 70:6-11, to Sincich Decl. ¶3.<br><br>**Exh 4, Handy Depo** at 38:4-8, to Sincich Decl. ¶4. |
| 105 | Officers are trained to not be overly confident but to confine their conduct to the level of proficiency according to training. | **Exh 4, Handy Depo** at 31:17-32:14, to Sincich Decl. ¶4. |
| 106 | Given the lack of a specific policy, the shooting at a moving vehicle policy and the general use of force policy would apply here. | **Exh 4, Handy Depo** at 134:23-135:15, to Sincich Decl. ¶4.<br><br>**Exh 4, Handy Depo** at 125:24-136:18, to Sincich Decl. ¶4. |
| 107 | Alvarado does not know whether the policy states anything about not shooting, just to attempt to get out of the way unless it is an immediate threat to the officer. | **Exh 1, Alvarado Depo** at 26:5-8, to Sincich Decl. ¶1. |
| 108 | Ontario Police Department Use of Force policy states the following: (i) "Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks"; (ii) "When feasible, officers should take reasonable steps to move out of the path of the approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants"; (iii) "An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle or if deadly force other than | **Exh 1, Alvarado Depo** at 57:18-59:12 (depo Exh 5), to Sincich Decl. ¶1.<br><br>**Exh 1, Alvarado Depo** at 25:20-23, to Sincich Decl. ¶1. Alvarado understood that City policy suggests that shooting at a moving vehicle does not work.<br><br>**Exh 1, Alvarado Depo** at 26:2-4, to Sincich Decl. ¶1. Alvarado understood that City policy states that officers should try to avert the vehicle/get out of the way.<br><br>**Exh 2, Vasquez-Lopez Depo** at 39:13-19, to Sincich Decl. ¶2. OPD policy regarding shooting to motor vehicles states that it is rarely effective, and officers should consider alternatives.<br><br>**Exh 2, Vasquez-Lopez Depo** at 39:20-40:4, to Sincich Decl. ¶2. OPD policy |

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

| Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| **OFFICER TRAINING AND STANDARDS** | |
| the vehicle is directed at the officer or others." | states that officers should take action to move away from the threat instead of discharging their weapon when feasible. <br><br> **Exh 4, Handy Depo** at 138:1-5, to Sincich Decl. ¶4. When feasible, officers should take reasonable steps to move out of the area of threatening the officer instead of discharging their firearm at the occupant of the car. <br><br> **Exh 22, Use of Force Policy** at 2, to Sincich Decl ¶22. |
| **109.** According to policy, shooting at the driver of a vehicle is rarely effective and may involve additional considerations and risks including missing the shot, not stopping the conduct, causing a ricochet, hitting the passenger, or causing the driver to lose control of the car and unintentionally crash. | **Exh 4, Handy Depo** at 136:19-22, 137:7-25, to Sincich Decl. ¶4. |
| **110.** If an officer does not reasonably perceive that a person is in the direct path of a vehicle, then that officer should not use deadly force against the driver of that vehicle. | **Exh 4, Handy Depo** at 43:1-10, to Sincich Decl. ¶4. |
| **111.** There was no tactical debrief related to this incident. | **Exh 3, Varela Depo** at 12:2-4, 12:17-20, to Sincich Decl. ¶3. |
| **112.** No reasonable officer would have attempted to get out of his patrol unit under when presented with the uncontroverted facts of this case nor would any reasonable officer believe it was about to be a foot pursuit. | **Exh 4, Handy Depo** at 72:15-17 (officers are not trained to exit their vehicle while the vehicle is still moving), to Sincich Decl. ¶4. <br><br> **Clark Decl.** ¶8. |

| | Plaintiffs' Material Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | **OFFICER TRAINING AND STANDARDS** | |
| **113** | Alvarado's use of deadly force was inappropriate and unnecessary under the totality of the circumstances, was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training. A reasonable officer under similar circumstances would not have used deadly force against Benavente as there was no immediate threat of death or serious bodily injury. | **Clark Decl. ¶¶9, 10, 11.** |