**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No.: 5:23-cv-00266-SSS-DTBx<br><br>[*Honorable Sunshine S. Sykes*]<br>*Magistrate Judge David T. Bristow*<br><br>**DECLARATION OF ROGER CLARK**<br><br>[*Filed concurrently:* Plaintiffs' Opposition to Defendants' Motions for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiffs' Statement of Genuine Disputes of Material Fact; Plaintiffs' Statement of Evidentiary Objections, *and Proposed Order thereto*; Plaintiffs' Additional Material Facts; Declaration of Marcel F. Sincich *and exhibits thereto*]<br><br>MSJ Date:   May 17, 2024<br>Time:         2:00 p.m.<br>Dept.:         2, 2nd Floor |

# DECLARATION OF ROGER CLARK

I, Roger A. Clark, hereby declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

## Qualifications

3. Attached hereto as "**Exhibit A**" is a true and correct copy of my Curriculum Vitae setting forth my qualifications to provide expert testimony in this matter, which I incorporate herein. A summary of those qualifications are also as follows:

   a. My opinions are based in part on my training, professional experience, and education. I am a twenty-seven-year veteran of the Los Angeles County Sheriff's Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I hold a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5).

   b. As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted investigation and apprehension methods.

   c. During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. I also lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

d. During the last five and one-half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe, and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993. The majority of our cases were homicide cases. Arrests frequently occurred in dynamic circumstances including crimes in progress.

e. As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer involved shootings.

f. Since my retirement, I have testified as an expert on jail procedures and jail administration, police procedures, police tactics, investigative procedures, shooting scene reconstruction, trajectory, bullet casings and police administration in Arizona State Courts, California Courts, Washington State Courts and Federal Courts in California, Texas, Colorado, Illinois, Indiana, Pennsylvania, and Washington.

g. I have consulted and/or testified as an expert in dozens of cases regarding law enforcement shootings and police practices and have been certified as an expert on these areas in both State and Federal Courts.

## Materials Reviewed

4. The materials I reviewed in this case include: the surveillance video of the incident; body-worn videos of the incident; deposition transcripts of Cpl. Alvarado and Officers Varela and Vasquez-Lopez, and Defense experts Robert Handy and Michael Callahan, the initial statements of the involved officers; City investigative records; photographs of the scene, and evidence; Autopsy Report; City Police Department policies and training documents; discovery responses; POST Learning Domains, including #15. "Laws of Arrest"; #20. "Use of Force"; #21: "Patrol Techniques"; #22: "Vehicle Pullovers"; #23: "Crimes in Progress"; #33.

"Arrest Methods/Defensive Tactics"; #34. "First Aid and CPR"; #35. "Firearms/Chemical Agents"; and the Protective Order.

5. Attached hereto as **"Exhibit B"** is a true and correct copy of my Rule 26 Expert Report in this case, which contains opinions I have formed regarding this matter after reviewing the listed materials therein.

## Methodology

6. I make this declaration and my opinions based on my review of the above materials, and also based on my experience and knowledge of law enforcement training, standards and policies.

7. My general method is to: (1) review all of the relevant available material involved in the case to determine a factual understanding of the circumstances for which I've been asked to consult; (2) review all relevant POST Learning Domains, recent publications, recent case-law on point, pertinent training bulletins, and manuals to ensure that I apply the most modern and accurate law enforcement policies, practices, procedures, and standards to the case at issue; (3) rely on decades of experience, knowledge and training when evaluating and analyzing how the law enforcement training will be applied to real-world scenarios along with the risk involved with them; and (4) apply the discoverable facts to the standards that the law enforcement officers did or should have employed.

## Opinions

8. It is my opinion that a reasonably trained officer would not have attempted to and would not have gotten out of his or her patrol unit when presented with the uncontroverted facts of this case. If a secondary officer sees the subject car from a vehicle pursuit stop at a dead-end street, the subject driver does not exit the car, the primary officer does not exit the vehicle, then the subject car drives in reverse while the secondary officer's vehicle is still approaching, then it would be inappropriate for the secondary officer to attempt to exit his or her patrol unit. Additionally, given the above, no reasonably trained officer would have believed it

1  was about to be a foot pursuit. Based on my review of the video, it appears that Cpl.
2  Alvarado was not out of his unit or in the "V" of the door at the time of the shots.
3      9.   Cpl. Alvarado's use of deadly force was inappropriate and unnecessary
4  under the totality of the circumstances, was inconsistent with basic law enforcement
5  training and violated basic POST standards and the standard of care pursuant to
6  POST and officer training. Officers in California (including Cpl. Alvarado) and
7  throughout the nation are trained that the right to life is a constitutional right.
8  Accordingly, Officers are to use lethal force always with a reverence for life and
9  only in the direst of circumstances and only absent an obvious reasonable
10 alternative. In the case of deadly force, an officer may not use deadly force if there
11 is not an imminent threat of great bodily harm or death against him or someone else.
12 Here, Mr. Benavente was not an immediate threat of death or great bodily injury to
13 Cpl. Alvarado, or any other officer or person at the time of the use of deadly force.
14 Based on my review of the materials, no reasonable officer would believe that they
15 were going to be hit, run over, or crushed by a car under these circumstances. No
16 person was in the path of the car. No person was hit, run over, or crushed by the car.
17 The shots came after the car stopped and was blocked from moving in reverse.
18 Given that the car is not moving at the time of the shots and Cpl. Alvarado not in the
19 path of the car, there is no credible threat sufficient to justify the use of deadly force.
20    10.   If an officer is confronting a person who is attempting to flee in a car,
21 who has collided with another officer patrol vehicle and is reversing in that officer's
22 patrol vehicle's direction on the passenger side, then the car collides with a portion
23 of that officer's patrol vehicle while it continues in reverse, and then collides with a
24 third patrol vehicle causing the car to came to a stop, then approximately 1 second
25 later, when the car is still stopped and no person is in the potential path of the
26 vehicle, it would be a clear violation of basic police training, violation of the POST
27 standards, and clearly inappropriate to thereafter use deadly force against the subject
28

-5-   Case No.: 5:23-cv-00266-SSS-DTBx
DECLARATION OF ROGER CLARK

car driver because the subject would not be an immediate risk of death or serious bodily injury to anyone at the time.

11. Cpl. Alvarado overreacted in using deadly force, and under basic officer training, an overreaction in using deadly force is a use of excessive force.

12. Officers, including Cpl. Alvarado, are trained and know that they cannot shoot a person merely for fleeing. To do so would constitute inappropriate, unnecessary, and unjustifiable force, which is what we have here.

13. A warning that deadly force will be used must be given when feasible. Cpl. Alvarado did not issue a verbal deadly force warning prior to his use of deadly force. Based on my review of the video evidence it was feasible for Cpl. Alvarado to issue a verbal deadly force warning prior to his use of deadly force.

14. Cpl. Alvarado had reasonable, less-intrusive, alternatives to the use of deadly force. There were obvious reasonable alternatives to the use of lethal force. Reasonable alternatives include but are not limited to maintaining cover, communicating, and planning with other officers, coordinating resources such as a helicopter, K9, or other support, communicating with the subject, reinforce containment, tactical repositioning, and less-lethal force options if necessary. Importantly, even assuming that Cpl. Alvarado was out of his vehicle at the time of his use of deadly force, there was ample room to tactically maneuver rather than to shoot at the driver of the vehicle. It is my opinion that it was feasible for Cpl. Alvarado to use less-intrusive means and chose not to.

15. Assuming the pursuit began on 4th St. and San Antonio Ave, (as stated by Cpl. Alvarado), continued to the freeway overpass, went south on San Antonio Ave., then east on 6th St., then north on Beverly Ct., the pursuit would be approximately 0.9 miles and expected to take approximately 4 minutes. Attached hereto as **"Exhibit C"** is a true and correct copy of the directions of the pursuit as described above from Google Maps.

16. Assuming the pursuit began on Mountain Ave. and 4th St., continued to the freeway overpass, went south on San Antonio Ave., then east on 6th St., then north on Beverly Ct., it is approximately 1.5 miles and expected to take approximately 5 minutes. Attached hereto as **"Exhibit D"** is a true and correct copy of the directions of the pursuit as described above from Google Maps.

17. The speed limits on 4th St., San Antonio Ave., and 6th St. are each 35 mph. Attached hereto as **"Exhibit E"** is a true and correct copy Google Maps images of the speed limit sighs on each street involved in this pursuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 12, 2024.

_____
Roger A. Clark