James R. Touchstone, SBN 184584
  jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
  dlr@jones-mayer.com
Scott Wm. Davenport, SBN 159432
  swd@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendants,
CITY OF ONTARIO and ALBERT ALVARADO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE and NICOLE VENTRESS,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:23-CV-00266-SSS<br><br>*Judge:* Hon. Sunshine S. Sykes<br><br>**REPLY IN SUPPORT OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 17, 2024<br>Time: 2:00 p.m.<br>Ctrm: 2 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants CITY OF ONTARIO and ALBERT ALVARADO hereby submit this Reply in Support of their Motion for Summary Judgment. As set forth herein, defendants submit that Plaintiff has failed to carry his burden of demonstrating a genuine issue of material fact and, therefore, the Motion for Summary Judgment should be **GRANTED.**

///

///

///

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CONTENTS | 2 |
| TABLE OF AUTHORITES | 3 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 4 |
| 1. INTRODUCTION | 4 |
| 2. STATUS OF THE FACTUAL RECORD | 7 |
| 3. NO GENUINE ISSUE OF FACT EXISTS WITH RESPECT TO PLAINTIFF'S CLAIMS FOR VIOLATIONS OF 42 U.S.C. § 1983 | 8 |
|     A. The Detention, Arrest, and Force Claims | 8 |
|     B. The Denial of Medical Care Claim | 11 |
|     C. The Denial of Familial Relationship Claim | 12 |
| 4. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY | 12 |
| 5. THJE CITY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INSTITUTIONAL CLAIMS | 13 |
| 6. CONCLUSION | 14 |
| CERTIFICATE OF COMPLIANCE | 15 |

# TABLE OF AUTHORITIES

**CASES**     **Page**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ...................................................... 4

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................... 4

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ...................................... 6, 13, 14

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) .................................. 11

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................ 4, 6, 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................... 6

*Lam v. City of Los Banos,* 976 F.3d 986 (9th Cir. 2020) ........................................ 12

*Matsushita Elec. v. Zenith Radio*, 475 U.S. 574 (1986) ............................................ 4

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) ............................ 10, 12

*Mullenix v. Luna*, 577 U.S. 7 (2015) ...................................................................... 11

*Nelson v. City of Davis,* 685 F.3d 867 (2012) ......................................................... 11

*Ochoa v. City of Mesa,* 26 F.4th 1050 (9th Cir. 2022) ............................................ 12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................. 13

*People v. Martinez,* 75 Cal.App.3d 859 (1977) ......................................................... 5

*Plumhoff v. Rickard,* 572 U.S. 765 (2014) ....................................................... passim

*Ryburn v. Huff*, 565 U.S. 469 (2012) ..................................................................... 6, 8

*Scott v. Harris,* 550 U.S. 372 (2007) .............................................................. 4, 9, 12

*Smith v. City of Hemet*, 394 F.3d 689 (9th 2005) ..................................................... 8

*Trevino v. Gates*, 99 F.3d. 911, 918 (9th Cir. 1996) ........................................... 7, 13

*United States v. Aceves-Rosales*, 832 F.2d 1155 (9th Cir. 1987) ........................... 10

*White v. Pauly*, 580 U.S. 73 (2017) .......................................................................... 6

**STATUTES**

California Vehicle Code § 2800.2 ............................................................................ 10

California *Penal Code* § 245 ................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

The fundamental question in any civil rights action is whether the force used was reasonable under the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 388 (1989). To that end, courts look at the conduct of the parties and determine whether a genuine issue of fact exists regarding the use of force. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Matsushita Elec. v. Zenith Radio*, 475 U.S. 574 (1986).

Applying these notions, a case such as this would not have been amenable to summary judgment sixteen years ago. The trial court would have analyzed the officers' declarations about how the use of force was necessary and proper, and contrasted that with a plaintiff's recitation of facts suggesting unconstitutional conduct. Faced with opposing versions, the court would have no choice but to deny summary judgment and allow the case to proceed to trial. So fundamentally ingrained was this rule that a denial would have been a foregone conclusion even if 100 witnesses contradicted plaintiff's version, the event was captured on video, or the plaintiff was determined to be a wholly unreliable narrator.

Against this backdrop the Supreme Court considered *Scott v. Harris,* 550 U.S. 372 (2007). In *Scott,* the plaintiff attempted to create an issue of fact regarding the facts of a police chase by implying "there was little, if any, actual threat to pedestrians or other motorists, as the roads were mostly empty." *Id.* at 378. In contrast, the video evidence showed Scott "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast. We see it swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit. We see multiple red lights and travel for considerable periods of time in the occasional left-turn-only lane, chased by numerous police cars forced to engage in some

hazardous maneuvers just to keep up.  Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort….” *Id.* at 379-380.

The Supreme Court, recognizing the importance of video evidence, modified the long-standing rules on summary judgment, concluding, "[Plaintiff's] version of events is so utterly discredited by the record that no reasonable jury could have believed him.  **The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape**." *Id.* at 380-381 (emphasis added).  Since that time, courts have analyzed summary judgment motions with an eye toward video evidence.

Fast forward sixteen years and the extensive adoption by law enforcement of dash cameras and body worn camera video has become the norm – as well as the ubiquitous presence of cell phone video.  Now, courts are not confined to self-serving accounts when analyzing dispositive motions.  Rather, courts have the ability to view the best evidence of events – i.e., the video evidence – and determine whether a genuine issue of fact truly does exist regarding an officer's use of force and warrants expenditure of judicial resources.

The issue in this case is simple.  Did Benavente lead the officers on a police chase, reverse his car toward, strike multiple police cruisers, and pin Corporal Alvardo between his car door and his car frame?  Or, alternatively, was Benavente a compliant motorist who did not lead the officers in chase, reverse his car toward the officers, and commit an assault with a deadly weapon[1] – to wit, his automobile – thereby necessitating the use of deadly force in response?

In an attempt to answer this question, Defendants have submitted three videos (see *Exhibits* G-1, G-2, and G-3) and terrifying still pictures (*Exhibit* "E")

---

[1] Under California law, the general intent necessary to commit assault with a deadly weapon can be inferred from conduct that constitutes a wanton and willful disregard for life.  *People v. Martinez,* 75 Cal.App.3d 859, 863-864 (1977).  Hence, Benavente could not have avoided criminal liability for ramming multiple officers' vehicles by claiming he was "only" attempting to escape.

which fully corroborate and mirror the testimony of the officers in this case. In contrast, plaintiff submits no affirmative contrary evidence other than a pre-trial expert who opines Corporal Alvarado had other available options rather than the use of deadly force. However, such after-the-fact opinions provided in the relative calm of one's office do *not* create a triable dispute of facts and is in direct contravention to *Graham*. Even further, it does not constitute a correct statement of the law, as it is well established that the Supreme Court has cautioned against "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff,* 565 U.S. 469, 477 (2012).

Despite Plaintiff's submission of voluminous exhibits and extraneous facts,[2] the proper resolution of this motion is clear: the court needs only view the videos and determine whether Corporal Alvarado's actions were reasonable under the totality of the circumstances (i.e., when apprehending a felon who has crashed his vehicle into multiple police vehicles and pinned an officer between the door and the frame of his car). *Graham,* 490 U.S. at 388. After doing so, defendants submit that only one result is possible: no reasonable jury could find for Plaintiff in this case. Summary judgment, therefore, is appropriate.

In addition, given that there is no clearly established law demonstrating the officers' actions were unconstitutional – and that, to the contrary, the established law is that their actions were constitutional – they are entitled to qualified immunity. *White v. Pauly*, 580 U.S. 73, 79 (2017); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Finally, with respect to the claims against the City, Plaintiff cannot establish the predicate actions were unconstitutional. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). And, even if he could, Plaintiff has presented no

---

[2] Plaintiff has submitted 113 Additional "Material" facts which he claims warrant a trial. But are they *really* material? Does it really matter who was driving the vehicles, that the patrol vehicles were Fords, the specifics of the pursuit, or any of the other inapposite representations which plaintiff claims are "material." What *truly* matters is that when cornered Benavente reversed toward officers, pinned Corporal Alvardo in a dangerous position, struck two police cruisers, and caused Corporal Alvardo to make the split second decision to fire to stop the deadly threat.

evidence of an unconstitutional policy, practice or custom which would give rise to such a claim. *Trevino v. Gates*, 99 F.3d. 911, 918 (9th Cir. 1996).

Accordingly, because Corporal Alvarado acted reasonably in self-defense and in defense of the lives of his fellow officers, and properly prevented a fleeing felon from escaping apprehension pursuant to *Plumhoff v. Rickard,* 572 U.S. 765 (2014), there can be no civil rights violation.

## 2. STATUS OF THE FACTUAL RECORD

The facts of this case are clear and straight-forward, so much so that Defendants submitted a mere 17 Undisputed Facts in support of their motion. In sum, these facts provide: (1) rather than yield to a traffic stop, Joseph Benavente led officers on a high-speed chase where he drove on the wrong side of the road and almost t-boned a civilian motorist, (2) once he was in a position where it was difficult to escape, Benavente came to an abrupt halt, reversed his car, striking multiple police vehicles; and (3) finding himself sandwiched between his open door and his car frame and in fear for his life, Corporal Alvarado fired three shots, fatally wounding Benavente. Plaintiff, however, lodges boilerplate objections to every fact which are so specious that they do not warrant comment. See Dkt. 32-2.

In addition to these bad-faith objections, Plaintiff engages in bizarre word play to try to gin up a triable issue of fact (see Dkt. 32-1) and attempt to bombard the Court with a staggering additional 113 additional facts (see Dkt. 32-4) which are minute, irrelevant, and do nothing to alter the straight forward nature of this case (i.e., that Benavente committed an assault with a deadly weapon and potentially attempted murder of a peace officer with his car, that Corporal Alvarado was in justified fear for his own life and the lives of the other officers, and that he fired in self-defense, in the defense of others, and to stop a fleeing felon who was about to kill him from escaping and causing more harm to society).

/ / /

/ / /

3.  **<u>NO GENUINE ISSUE OF FACT EXISTS WITH RESPECT TO PLAINTIFF'S CLAIMS FOR VIOLATIONS OF 42 U.S.C. § 1983</u>**

   **A. The Detention, Arrest, and Force Claims**

As stated in the motion, the fundamental question in this case is whether the force used was reasonable under the totality of the circumstances. *Graham v. Connor,* 490 U.S. at 388. This test is an objective one, viewed from the vantage point of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others. *Id*. at 396-397. The most important single element of the three specified factors is whether the suspect poses an immediate threat to the safety of the officers or others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th 2005). In undertaking such an analysis, "judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn*, 565 U.S. at 477.

In *Mullenix v. Luna,* 577 U.S. 7 (2015), the United States Supreme Court addressed a similar issuing holding that a police officer was entitled to qualified immunity for shooting and killing a fugitive who was fleeing and threatening to kill officers. In addition, in *Plumhoff*, a similar case involving more egregious facts, the United States Supreme Court concluded that the use of force did not violate the Fourth Amendment under the totality of the circumstances from the perspective of a reasonable officer on scene. *Plumhoff,* 572 at 766.

Notwithstanding these cases, the gravamen of Plaintiff's opposition is that despite the uncontroverted evidence, Benavente was *not* a threat and, in any event, Corporal Alvardo had other means to avert the threat of being crushed between his door and his car. Opposition at 9-11.[3] These assertions are contrary to both the law and the facts and ignore the honest reality of an officer being caught in a confined space of a few feet separating a patrol car and a suspect vehicle pushed to

---

[3] To avoid confusion, all citations to Plaintiff's documents refer to the ECF/PACER enumeration in the header of the document.

maximum acceleration.

As evidenced by *Exhibit* G-2, it cannot be disputed that when cornered, Benavente stopped abruptly, threw his car in reverse, and accelerated rapidly toward the officers. Indeed, at the 0:04 mark of this video, one can observe smoke coming from the front right tire just prior to impact. Moreover, the sound of the first collision can be heard on *Exhibit* G-3 at 0:57, the movement of the car associated with the second collision can be observed at 0:58, followed immediately by the gunshots from 0:59-1:00. See also *Exhibit* "K" at 6. Finally, the uncontroverted and definitive event recorder data, reconstruction analysis, and vehicle testing demonstrate that Benavente accelerated at "maximum acceleration" while reversing and impacted the police cruiser at a speed of approximately 14 to 16 miles per hour. *Id.* at 8-9. All of this occurred within a span of approximately five seconds. Plaintiff's suggestion to the contrary is belied by the video and scientific evidence and in violation of the Supreme Court's mandate in *Scott*.

Even a cursory review of these facts demonstrates that the danger to Corporal Alvarado and the other officers was even more immediate than the danger justifying deadly force in *Plumhoff*. In *Plumhoff*, in the seconds before the first shots were fired, Rickard was accelerating but pushed against a police cruiser. *Id.* Then, "at the moment [the second volley of] shots were fired….Rickard was [merely] intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." *Id*. at 777. However, Benavente was not simply resuming flight; rather, the threat he posed to Corporal Alvarado was concrete and immediate. In the seconds before the shots were fired and as the shots were fired, Benavente had reversed at maximum acceleration significantly turning his vehicle thus aiming directly at Corporal Alvarado's cruiser. Benavente then struck the door behind which Corporal Alvarado was standing, sandwiching him, then continuing on to strike another cruiser. Benavente constituted a clear and immediate threat to Corporal Alvarado

who was mere inches away from being crushed to death or at least seriously injured by Benavente's vehicle.  "***It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon***." *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) (per curiam).

Finally, even if this Court find that Corporal Alvarado was not in immediate danger, deadly force was nonetheless reasonable under *Plumhoff* as Benavente was a fleeing felon who posed a sufficient, imminent threat to the public at large. In this case, Benavente rammed multiple police vehicles and aimed performed an S-maneuver to direct his car directly at the officers.  See *Exhibit* G-2 at 0:02-0:04. Thus, in addition to felony evading in violation of California *Vehicle Code* § 2800.2, Benavente had committed assault with a deadly weapon – to wit, an automobile – in violation of California *Penal Code* § 245. Moreover, as noted in Defendants' moving papers, Benavente nearly crashed into a civilian vehicle in an intersection (t-bone collision) during the pursuit **before** he intentionally crashed his vehicle into the multiple police cars on Beverly Court.  Like the decedent in Plumhoff, these actions undeniably demonstrate that deadly force was appropriate to stop Benavente from "once again pos[ing] a deadly threat for others on the road." *Id*. at 777.

Plaintiff's assertion that the Motion should be denied is contrary to controlling caselaw.  In *Monzon v. City of Murrieta,* 978 F.3d 1150 (9th Cir 2020), officers fired at a suspect in a vehicle who refused to stop.  The Ninth Circuit concluded that the officers' use of force was objectively reasonable "in this dynamic and urgent situation, where officers were faced with the immediate threat of significant physical harm." *Id.* at 1154. This same rationale was applied to the officers who fired *after* Monzon's vehicle was no longer moving.  *Id.* at 1158. Moreover, it is undisputed in this case that Benavente's vehicle was driven forward into a tree **after** the use of deadly force by Corporal Alvarado.  In sum, Benavente's vehicle was still functional and was driven forward by Benavente

following the use of deadly force, thus unequivocally demonstrating that, had the threat he posed not been stopped, he could have resumed his dangerous flight from officers and endangered other innocent persons on the road.

Finally, contrary to the representations made in Plaintiff's Opposition, the fact that one might be able to contrive other possible alternatives which were not originally considered by the officers in the five second time frame in this case is immaterial. The law is clear that officers are not required to use the least intrusive degree of force possible. *Nelson v. City of Davis,* 685 F.3d 8678, 882 (2012), quoting *Forrester v. City of San Diego,* 25 C.3d 804, 807 (9th Cir. 1994). Additionally, as noted above, any other purported alternative would have resulted in subjecting the neighborhood and the officers on scene to Benavente's continued volatility and danger, an unacceptable community outcome. As the Supreme Court said in *Mullenix,* "The Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity. *Mullenix*, 577 U.S. at 15.

### B. The Denial of Medical Care Claim

Turing to the issue of the denial of medical care claims, Plaintiff asserts that officers delayed Benavente's medical evaluation for over 11 minutes. Opposition at 19. Again, this characterization of the events is belied by the video evidence.

The evidence demonstrates that the officers called for medical care shortly after the use of deadly force. The video evidence further demonstrates that officers immediately approached the vehicle after the shots were fired. *Exhibit* G-3 at 1:00-1:23. However, upon doing so, they observed that Benavente was not complying with requests to show his hands and was still moving, thereby causing the officers to retreat. *Id.* at 1:24-1:35. After retreating, the officers noticed that Benavente continued to move. *Id.* at 1:42. The officers then directed the female passenger to get out of the car, indicating that they wanted to help Benavente. *Id.* at 1:47-1:59. The female passenger ultimately exited the vehicle, was handcuffed,

and patted down for weapons. *Id*. at 2:04-2:37.  Thereafter, the officers made repeated orders for Benavente to show his hands so that they could help him and even indicated that they wanted to provide him medical assistance. *Id*. at 3:20, 3:33, 4:24, 4:38, 4:54, 5:09, 5:42, 6:04.  When Benavente did not respond, the officers performed a high-risk approach, deciding not to wait for the arrival of additional safety equipment. *Id*. at 7:37.  The officers then opened the door, extracted him from the vehicle, and searched him for weapons. *Id*. at 8:13-9:30. Paramedics then began their approach approximately two minutes later. *Id*. at 11:46.

Thus, Plaintiff's suggestion that officers never provided any medical care is contrary to the video evidence and in violation of *Scott v. Harris*.  Accordingly, defendants are entitled to summary judgment on the denial of medical care claim.

### C.    The Denial of Familial Relationship Claim

Finally, Plaintiff has presented no evidence which would establish a claim for the denial of familial relationship claim, which requires not only a sufficient period of time to deliberate but also the heightened "shock the conscience," deliberate indifference, or a "purpose to harm"   See *Lam v. City of Los Banos,* 976 F.3d 986, 1003 (9th Cir. 2020); *Ochoa v. City of Mesa,* 26 F.4th 1050 (9th Cir. 2022).  Given that these events all occurred within a matter of roughly five seconds, Plaintiff simply cannot carry his burden in this regard.

### 4.    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

Given the Ninth Circuit's opinions in *Plumhoff* and *Monzon,* the suggestion that the law was clearly established that an officer could not fire in self-defense and defense of others when a vehicle that had rammed two police cars and pinned an officer in a life-threatening position is meritless.  However, that is exactly the argument which Plaintiff is making.

Relying on non-binding Sixth Circuit opinions and factually distinguishable cases, all while attempting to distinguish *Plumhoff* and *Monzon*, Plaintiff argues

that the law is clearly established that officers cannot use deadly force *where the driver posed no threat*. This argument, however, is impossible to reconcile given that Corporal Alvarado was almost crushed to death by Benavente. See *Exhibit* E.

Moreover, even if this Court were to conclude that Corporal Alvarado was incorrect in his assessment of the risk posed to him, he would nonetheless be entitled to qualified immunity under Prong Two, as any mistake he made was reasonable and it was permissible for him to use deadly force to prevent Benavente from escaping apprehension. *Plumhoff*, *supra*; *Pearson v. Callahan*, 555 U.S. 223, 230 (2009). Stated another way, even if it was ultimately determined Corporal Alvardo was incorrect in his assessment that he was at great personal risk, given Benavente's actions displayed in the video, this perception would constitute, at a minimum, a reasonable mistake of fact which would not preclude a grant of summary judgment on qualified immunity grounds.

## 5. THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INSTITUTIONAL CLAIMS

As a prerequisite to establishing Section 1983 municipal liability, the plaintiff must satisfy one of three conditions: (1) a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a long-standing practice or custom which constitutes the standard operating procedure of the local governmental entity; (2) the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself this constituted an act of official governmental policy; or (3) an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. After proving that one of the three circumstances existed, a plaintiff also must show that the circumstance was: (1) the cause in fact; and (2) the proximate cause of the constitutional deprivation. *Trevino*, 99 F.3d at 918. Moreover, in the absence of an underlying constitutional violation, there can be no *Monell* claim. *City of Los Angeles v. Heller*, 475 U.S. at

799 (1986).

In response to this undisputed law, Plaintiff does not present any facts or argument that an underlying policy resulted in an unconstitutional loss. Rather, he attempts to flip *Heller* on its head and asserts that because Alvarado's actions were unconstitutional, his *Monell* claim necessarily survives. However, as it is clear that one *could* assert a viable underlying claim and not establish a *Monell* claim, Plaintiff's assertion – which is untethered to any applicable law – must be rejected.

## 6. CONCLUSION

Based on the forgoing, the Court should grant Defendants' Motion for Summary Judgment and/or Partial Summary Judgment and enter judgment in their favor and against Plaintiff.

Dated: April 19, 2024          JONES MAYER

By: */s/ Scott Wm. Davenport*
JAMES R. TOUCHSTONE
SCOTT WM. DAVENPORT

Attorneys for Defendants,
CITY OF ONTARIO and ALBERT ALVARADO

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for CITY OF ONTARIO and ALBERT ALVARADO, certifies that this brief contains 4,002 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 19, 2024              JONES MAYER

                                   */s/ Scott Wm. Davenport*
                                   By: _____
                                        SCOTT WM. DAVENPORT

                                   Attorneys for Defendants,
                                   CITY OF ONTARIO and ALBERT
                                   ALVARADO