James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
dlr@jones-mayer.com
JONES & MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendant CITY OF ONTARIO and ALBERT ALVARADO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION – RIVERSIDE

FRANK BENAVENTE; and NICOLE VENTRESS,

Plaintiffs,

vs.

ALBERT ALVARADO; CITY OF ONTARIO; and DOES 1 through 10 inclusive,

Defendants.

Case No.: CV23-00266 JGB (SP)
Judge: Hon. Sunshine S. Sykes

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE EVIDENCE OF OR REFERENCE TO PRIOR OFFICER INVOLVED SHOOTING; DECLARATION OF JAMES TOUCHSTONE**

**[Motion in Limine # 2]**

Date: July 26, 2024
Time: 2:00 p.m.
Ctrm: 2

PLEASE TAKE NOTICE that on July 26, 2024, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom "2" of the United States District Court, located at 3470 Twelfth Street, Riverside, California 92501-3801,

Defendants CITY OF ONTARIO and ALBERT ALVARADO, will and hereby do move this Court for an Order precluding Plaintiffs, their counsel or their witnesses from introducing any testimony, documents, evidence of damages or other evidence relating to a prior officer-involved shooting involving Defendant Corporal Alvarado. This Motion is made on the following grounds:

1. Such evidence is inadmissible character evidence under Federal Rule of Evidence 404(b);

2. Such evidence is irrelevant and therefore inadmissible under Federal Rule of Evidence 402;

3. Such evidence, even assuming some minimal relevance, is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue waste of time under Rule 403;

4. Such evidence constitutes inadmissible hearsay.

This Motion is based on the attached Memorandum of Points and Authorities, the Declaration of James Touchstone, and on any other matters properly before the Court. This motion is made following the conference of counsel pursuant to Local Rule 7-3.

Dated: June 21, 2024

Respectfully submitted,

JONES & MAYER

By: [signature]
JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for Defendants City of Ontario and Corporal Alvarado

# I. INTRODUCTION

Shortly before midnight on February 22, 2021, recent parolee Joseph Benavente led multiple members of the Ontario Police Department on a high-speed chase in which he drove on the wrong side of the road, almost t-boned a civilian motorist, stopped suddenly, and then performed a U-turn in order to attempt to escape.

After attempting to evade the officers for approximately five to seven minutes, Benavente pulled into a cul-de-sac, found himself trapped, and came to an abrupt halt. Believing that a foot pursuit was about to ensue, Corporal Albert Alvarado, an experienced field training officer, opened his car door and started to exit his vehicle. However, instead of surrendering himself, Benavente threw his car into reverse, revved his engine, and accelerated backwards at a high rate of speed, striking Corporal Alvarado's patrol vehicle at a speed estimated to be between 14 and 16 mph.

Finding himself in the terrifying position of being sandwiched between his open patrol car door and the frame of his vehicle – and believing he was about to be crushed to death – Corporal Alvarado fired three shots at Benavente's car from a distance of approximately one to four feet in an attempt to stop the threat. Benavente's car continued backwards striking another patrol. At this point, Benavente appeared hurt and slumped forwards towards the steering wheel. His car, however, was still operational, was placed into drive and began to roll forward slowly before coming to rest against a tree. The tires continued spinning while the vehicle was pinned against the tree.

After clearing Benavente's car of a passenger and securing the scene, Officers approached and observed that Benavente was slumped over and had been shot. Benavente was removed from the car, handcuffed, and searched for weapons. Medical care, which had been staged until Benavente was safely taken into custody evaluated Benavente and subsequently pronounced him dead at the

scene.

## II. IDENTIFICATION OF INADMISSIBLE MATERIAL

During the course of his deposition, Plaintiffs questioned Corporal Alvarado about a prior officer-involved shooting ("OIS") he had been involved in. See Exhibit "A" to Declaration of James Touchstone ("Decl. Touchstone") at pp. 21-25:13. Defendants did not object as such information is deemed not confidential pursuant to California Penal Code section 832.7.

Corporal Alvarado moves to exclude such evidence on the ground that it is inadmissible character evidence under Rule 404(b), and that it is irrelevant and therefore inadmissible under Rule 402. Moreover, assuming some minimal relevance, it is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue waste of time under Rule 403. Finally, any investigation reports, etc., regarding the OIS constitute inadmissible hearsay.

## III. THE EVIDENCE AT ISSUE IS INADMISSIBLE "BAD ACT" EVIDENCE PROHIBITED UNDER RULE 404(B)

Federal Rule of Evidence 404(b) states in pertinent part: "Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...". Thus, "Rule 404 generally prohibits the admission of evidence of a person's character for the purpose of proving that the individual acted in conformity with that character on a particular occasion. The rationale behind this rule is the notion that this evidence has slight probative value but has a tendency to be highly prejudicial or to confuse the issues." Cohn v. Papke, 655 F.2d 191, 193-194 (9th Cir. 1981) [citations omitted].

Accordingly, "[e]vidence of prior misconduct is generally inadmissible for purposes of showing that the plaintiff or defendant was more likely to have been at fault." Monger v. Cessna Aircraft Co., 812 F.2d 402, 406 (8th Cir. 1987) [citations omitted]. Furthermore, "[c]haracter evidence is normally not admissible in a civil rights case. ...The question to be resolved was whether, objectively, his use of force had been excessive. His past conduct did not bear on that issue." Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993) [citations omitted].

Similar to the case at hand, Berkovich v. Hicks, 922 F.2d 1018 (2d Cir. 1990) was a police excessive-force case where the plaintiff sought to introduce at trial evidence of prior citizen's complaints filed against the defendant officer. The Circuit Court upheld the District Court's order "excluding at trial all references to [the defendant officer's] history of prior civilian complaints." Id. at p. 1022; see also United States v. Bailey, 696 F.3d 794 (9th Cir. Cal. 2012). In so holding, the court found that the proffered evidence was exactly the type Rule 404(b) expressly prohibits. Hicks, supra 922 F.2d at 1023.

Here, reference, testimony, and evidence regarding other incidents – even comparable incidents (which this OIS is not as discussed below) – in which Corporal Alvardo was involved as well as evidence regarding any investigation or discipline related to that evidence, constitutes inadmissible character evidence for the exact same reasons as in Gates and Berkovich. Plaintiffs here cannot attempt to use Corporal Alvarado's prior OIS, or the lawsuit that followed, to convince the jury that he must have improperly used force against Decedent. Moreover, Plaintiffs cannot use Corporal Alvarado's prior OIS to establish a custom or practice under Monell. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918 [citations omitted]. The law does not permit the inference of a longstanding custom or practice from a single incident or

even sporadic incidents. See Christie, 176 F.3d at 1235.

Plaintiffs can articulate no other theory for the admissibility of this evidence other than it would tend to show that Corporal Alvarado used excessive force or otherwise acted inappropriately here because he was previously involved in another OIS and/or that there was a lawsuit filed regarding that OIS. Thus, Corporal Alvarado respectfully requests the Court exclude any evidence or argument regarding his prior OIS, including the lawsuit regarding it, as prohibited by Rule 404(b).

## IV. THE EVIDENCE AT ISSUE IS IRRELEVANT AND INTRODUCTION OF IT WOULD BE UNDULY PREJUDICIAL, WOULD CONFUSE THE ISSUES AND MISLEAD THE JURY AND WOULD CONSTITUTE AN UNDUE WASTE OF TIME

In addition to being inadmissible "bad act" evidence under Rule 404(b), evidence about Corporal Alvarado's prior OIS fails to meet the threshold requirement of relevance. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Allegations of past misconduct or discipline in no way make it more or less likely that the force used by Corporal Alvarado against Decedent February 22, 2021, under the particular circumstances of that evening, was objectively reasonable. This is particularly true when the circumstances of the prior OIS differ wildly from the OIS at hand. Specifically, the prior OIS occurred nearly 10 years ago in 2015, occurred during a domestic violence call for service, the suspect shot was armed with a very large pipe, and the suspect shot was not in a vehicle moving or otherwise. See Exhibit "A" to Decl. Touchstone at 21:25, 22:2, 22:17-19, 23:9-11, 23:15-25, 24:1-7, 24:15-17. Accordingly, such evidence is inadmissible under

Rule 402. Moreover, the prior OIS is irrelevant to the Monell claim as "[t]he law does not permit the inference of a longstanding custom or practice from a single incident or even sporadic incidents. See Christie, 176 F.3d at 1235.

Even assuming there was some minimal relevance to the prior OIS, any such value is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue waste of time. Introduction of the prior unrelated OIS into a trial about this OIS involving Plaintiffs' son runs a serious risk of the jury focusing on the constitutionality, or lack thereof, of that prior OIS. It also runs a significant risk of the jury falsely deducing that if Corporal Alvarado did in fact use excessive force during that prior OIS or is in fact guilty of other misconduct on prior occasions, perhaps he did so here as well.

Further, if the evidence of the prior OIS is introduced, Corporal Alvarado may be forced to rebut those allegations. There is simply not time to engage in side issues such as the constitutionality or unconstitutionality of a prior OIS, and such a "trial within a trial" will needlessly waste time and resources. Any hypothetical relevance of this prior incident is far outweighed here by the danger of unfair prejudice, confusion of the issues, misleading of the jury, and undue waste of precious trial time. Such evidence should also be excluded under Rule 403 on that basis.

## V. IF ANY EVIDENCE FROM THE INVESTIGATIVE FILES REGARDING THE OIS OR THE LAWSUIT THE FOLLOWED, ALL HEARSAY CONTAINED THEREIN MUST FIRST BE REDACTED

Finally, if the Court permits Plaintiffs to introduce evidence from the investigative files regarding the OIS or the lawsuit that followed, special care must be taken to redact any inadmissible hearsay and supervisory personnel conclusions concerning the incidents from such evidence. For example, as to the statements of witnesses to the prior OIS, those documents would be inadmissible hearsay if

offered for the truth of the statements written therein. Similarly, investigation reports and/or memoranda would largely be hearsay to the extent they report matters other than what the reporting party personally observed.

## VI. CONCLUSION

For the foregoing reasons, Defendant Corporal Alvarado respectfully requests the Court preclude Plaintiffs, their counsel or their witnesses from introducing any testimony, documents, evidence of damages or other evidence relating to a prior officer-involved shooting involving Defendant Corporal Alvarado including the lawsuit filed relating to it.

Dated: June 21, 2024

Respectfully submitted,

JONES & MAYER

By: [signature]

JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for Defendants City of Ontario and Corporal Alvarado

**DECLARATION OF JAMES TOUCHSTONE IN SUPPORT OF MOTION IN LIMINE TO EXLUDE EVIDENCE OF PRIOR OIS**

I, James Touchstone, declare:

1. I am an attorney licensed to practice law in the State of California and in this Court. I am a partner in the law firm of Jones & Mayer, counsel of record for Defendants, City of Ontario and Albert Alvarado. This Declaration is submitted in support of Defendants' Motion in Limine to Exclude Evidence of Prior Officer-Involved Shooting. I have personal knowledge of the following facts and, if called as a witness, I would and could competently testify thereto.

2. Attached hereto as Exhibit "A" are true and correct copies of relevant pages of the Deposition of Albert Alvarado which was taken on July 28, 2023 via Zoom in front of a certified court reporter. I appeared as counsel for Corporal Alvarado.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 20th day of June, 2024, at Fullerton, California.

James Touchstone, Esq.

# EXHIBIT "A"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FRANK BENAVENTE; and NICOLE VENTRESS, )
)
Plaintiffs, )
)
vs. ) Case No.
) 5:23-CV-00266-SSS-KK
ALBERT ALVARADO; CITY OF ONTARIO; )
and DOES 1 through 10, )
)
Defendants. )
______________________________________)

REMOTE VIDEOCONFERENCE DEPOSITION OF

ALBERT ALVARADO

FRIDAY, JULY 28, 2023

Reported Stenographically By:

Jinna Grace Kim, CSR No. 14151

Job No.: 459584

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FRANK BENAVENTE; and NICOLE VENTRESS, )
)
Plaintiffs, )
)
vs. ) Case No.
) 5:23-CV-00266-SSS-KK
ALBERT ALVARADO; CITY OF ONTARIO; )
and DOES 1 through 10, )
)
Defendants. )
______________________________________)

The remote videoconference deposition of ALBERT ALVARADO, taken on behalf of the Plaintiffs, beginning at 10:03 a.m., and ending at 11:56 a.m., on Friday, July 28, 2023, before Jinna Grace Kim, Certified Stenographic Shorthand Reporter No. 14151.

APPEARANCES OF COUNSEL:

For the Plaintiffs:

LAW OFFICES OF DALE K. GALIPO
BY: DALE K. GALIPO, ESQ.
BY: MARCEL F. SINCICH, ESQ.
BY: BENJAMIN S. LEVINE, ESQ.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: 818-347-3333
Fax: 818-347-4118
E-mail: dalekgalipo@yahoo.com
E-mail: msincich@galipolaw.com
E-mail: blevine@galipolaw.com

For the Defendants:

JONES MAYER
BY: JAMES R. TOUCHSTONE, ESQ.
3777 North Harbor Boulevard
Fullerton, California 92835
Tel: 714-446-1400
Fax: 714-446-1448
E-mail: jrt@jones-mayer.com

A. I just would not want to lie to you.
I just don't recall the model of it, sir.
**Q. That's fine. Had you ever used your Taser in the field before the day of the incident?**
A. I have.
**Q. How many occasions, approximately?**
A. I used my Taser approximately more than ten times.
**Q. How about pepper spray, had you used that in the field before?**
A. I have not.
**Q. How about your ASP as an impact weapon, had you ever used that in the field?**
A. I have not.
**Q. Each time you used the Taser in the field, did you write a report?**
A. Yes, I have.
**Q. And what would you do with those reports?**
A. Well, immediately a supervisor needs to be notified for those reports to be reviewed.
**Q. Do you know if those reports are kept somewhere?**
A. Yes.
**Q. Where are they kept?**
A. They're kept here with Ontario Police Department Records Division.
**Q. Have you ever fired your service weapon in the field**

other than in this incident?

A. I have.

Q. On how many occasions?

A. Just once.

Q. And when was that?

A. That was in 2015, sir.

Q. And do you know how many shots you fired in that incident?

A. Yes.

Q. How many?

A. Three.

Q. Same as this incident in terms of the number of shots?

A. Yes, sir.

Q. Was it the same weapon or a different weapon?

A. It was the same one.

Q. Were you firing at a person as opposed to an animal, for example?

A. Yes. It was a person.

Q. And how far away were you from the person when you fired your shots in that other shooting?

MR. TOUCHSTONE: Vague as to time and distance.

MR. GALIPO: Yeah. It might be different from one shot to the other. That's true.

BY MR. GALIPO:

Q. So how about your first shot, how far were you from the person?

A. The distance was approximately less than five feet.

Q. And how about your second and third shot, what was the distance?

A. The distance was closing. Everything was five feet or less.

Q. Was that person in a vehicle or out of the vehicle?

A. That person was outside of the vehicle.

Q. Were there other officers present besides you at that scene?

A. No.

Q. Why did you shoot that individuals?

A. This was in regards to a domestic violence call that I was responding to. I was by myself. I already had detained a male outside the house, and I was waiting for more backing officers to arrive to essentially contact the suspect of this domestic violence.

As I'm waiting for backing officers, the suspect -- he exited the house, but he didn't just walk out. He ran out of the house in a sprinting manner. He stopped along a wall, a small retaining wall which separated the grass and the sidewalk, stood up on top of the wall, and I could see that

he's holding onto a long blue metallic pipe.

And it was later learned it was a metal pipe to a car jack, a big one, and he put it over his left shoulder as if he was in a batter stance, and he ran at me while he was yelling, and I had to retreat into the street where there is traffic, and he was attempting to hit me with that long blue metallic metal pipe.

**Q. Did you ever swing it at you?**

A. He did not have the opportunity because I didn't allow him to close that distance.

**Q. Did you give him any verbal warning you were going to shoot him?**

A. At that time I don't recall giving him any verbal warnings, but witnesses stated I was telling him to stop.

**Q. Do you know if there was any litigation related to that case?**

A. I believe there was.

**Q. Did you give a deposition in that case?**

A. No, I did not.

**Q. Do you know if that case went to trial?**

A. No, I do not know.

**Q. Do you recall the name of the lawyer who represented you in that case?**

A. No, I do not.

**Q. Is part of your training on domestic violence calls**

CERTIFICATE

OF

CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

I, JINNA GRACE KIM, CSR No. 14151, a Certified Stenographic Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth;

That any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me, using machine shorthand, which was thereafter transcribed under my direction;

Further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action, nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have subscribed my name, this date: July 28, 2023.

Jinna Grace Kim, CSR No. 14151