**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118

**RODRIGUEZ APODACA LAW FIRM, LLP**
Richard A. Apodaca (SBN 292294)
richarda@ralawllp.com
Elissa K. Buenrostro (SBN 303299)
elyb@ralawllp.com
Empire Towers I
3633 Inland Empire Blvd., Suite 575
Ontario, CA 91764
Tel: (909) 944-3777 | Fax: (909) 944-5777

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ONTARIO; and ALBERT ALVARADO,<br><br>Defendants. | Case No. 5:23-cv-00266-SSS-KK<br>[*Honorable Sunshine S. Sykes*]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* No. 4 TO EXCLUDE OPINIONS OF DEFENSE EXPERT MICHAEL CALLAHAN**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**Hearing on Motions *in Limine***:<br>July 26, 2024 at 02:00 p.m.<br>**Final Pretrial Conference**:<br>August 2, 2024 at 02:00 p.m.<br>**Jury Trial**<br>August 19, 2024 at 08:30 a.m.<br>Ctrm: 2<br>3470 Twelfth Street,<br>Riverside, California 92501 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs FRANK BENAVENTE and NICOLE VENTRESS hereby move *in limine* for an order excluding the testimony of Defendants' retained accident reconstruction expert Michael Callahan on the following grounds:

1. Mr. Callahan failed to produce a reconstruction of the officer-involved shooting, which he was retained to do.

2. Any testimony or exhibits created that are inaccurate, not based on sufficient facts and data, and would be unreliable (e.g., Alvarado's position, partially knocked into vehicle, off-balance position, vehicle locations in images, door pushed into body), including (1) Callahan's Reconstruction Renders as inaccurate first-person recreation of incident; and (2) Callahan's 231164_3_PM_Rest_Stills as inaccurate overhead recreation of the incident.

3. Any speculative opinions outside of expertise (e.g., risk of catastrophic injury).

4. Opinion No. 1: "The extreme driver inputs of Mr. Benavente (maximum acceleration and steering while reversing) put all involved parties at significant risk of injury." Is outside of his expertise, not based on sufficient facts or data, and not helpful to the jury.

5. Opinion No. 4: "During impact Corporal Alvarado's door was pushed into his body and legs, knocking him partially back into the threshold of OPD Unit 1024 but preventing the door from closing. Approximately 1.8 seconds later the first shot is audible in BWV footage, with video showing Alvarado recovering from this off-balance position immediately after the shooting (as shown in Figure 5)."

6. All exhibits untimely produced after the mutual exchange of Rule 26 expert report, including rebuttal reports, and including documents that were not produced until the day prior to Mr. Callahan's deposition and an hour prior.

Plaintiffs make this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 702, 703, and 802.

Plaintiffs base this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiffs' Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiffs' [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

Cited herein includes the Defendants' Rule 26 Expert Report of Michael Callahan ("Callahan Report") produced by defendants on February 2, 2024, attached to the Sincich Decl ¶13 as Exhibit E; Mr. Callahan's "231164_3_PM_Rest_Stills" exhibit produced by Defendants on the eve of Mr. Callahan's deposition, attached to the Sincich Decl ¶14 as Exhibit F; relevant portions of Mr. Callahan's March 1, 2024 Deposition Transcript, attached to Sincich Decl ¶15 as Exhibit G.

**Statement of Local Rule 7-3 Compliance and pursuant to this Court's Civil Standing Order (Doc. 10 at 11:8-12:6)**: This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on Friday June 14, 2024, staring at 2:00 p.m., during no resolution was reached regarding the subject information of the present Motion. Present at the conference were Marcel F. Sincich for the Plaintiffs and James Touchstone for the Defendants. The conference took place over Zoom and lasted a total of approximately two hours, of which 29 minutes the specifics of this Motion was discussed. During the conference, the parties discussed the following:

- Whether Defendants intend to illicit testimony, admit exhibits, or include in argument inaccurate information.
- The failure to produce all of Mr. Callahan's exhibits.
- The inaccuracies of Mr. Callahan's exhibits.

1 • Speculative opinions outside of his expertise (e.g., risk of catastrophic injury, and significant risk of injury).

• Opinions about what would have as opposed to could have.

• Unreliable and speculative information as to Alvarado's location.

• Unreliable and speculative opinions about what the car/Benavente would have the capacity to do if the shots were never fired.

(Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶¶2, 6.)

Respectfully submitted,

Dated: June 21, 2024,   **LAW OFFICE OF DALE K. GALIPO**
　　　　　　　　　　　　**RODRIGUEZ APODACA LAW FIRM, LLP**

　　　　　　　　　　　　By _____/s/_____Marcel F. Sincich_____
　　　　　　　　　　　　Dale K. Galipo
　　　　　　　　　　　　Marcel F. Sincich
　　　　　　　　　　　　*Attorneys for Plaintiffs*, FRANK BENAVENTE and NICOLE VENTRESS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a §1983 civil rights and state tort case arising from the excessive use of deadly force against decedent Joseph Benavente by City of Ontario Police Department ("OPD") Corporal Albert Alvarado. In this matter a short pursuit stopped and Benavente reversed but was stopped by a patrol unit, followed by Alvarado shooting Benavente three times. Prior to and during the shots, the car was stopped, not revving, blocked to the rear, with no officer in the path or about to be harmed. Officers cannot shoot the driver of a stopped car and cannot shoot merely for fleeing. So, Alvarado attempts to create an inference that he was threatened by the car by stating that he was out of his unit when the car first started going in reverse, saw the car was moving directly towards him, he thought he was going to be crushed, shot Benavente as the car was still moving—first through the rear river's window then through the driver's window—then car continued in reverse and stopped. Defendants' contentions are disputed and impossible based on the objective evidence and their own experts' testimony.

By way of the instant Motion *in Limine*, Plaintiffs move to exclude the testimony and exhibits of Defendants' retained accident reconstruction expert Michael Callahan, on the grounds that his opinions and testimony are not helpful to the jury, usurp the province of the jury, are outside of his expertise, has an unsupported basis without sufficient facts and data, unreliable methodology, and based on speculative theory that requires credibility determinations. Thus, Plaintiffs seeks to exclude Mr. Callahan from testifying as to the following: (a) any exhibits, images, recreations, reconstructions, or demonstratives not timely produced with his report; (b) reconstruction rendering images that, both first person and overhead, that are clearly inaccurate and prejudicial; (c) opinions about whether there was a "significant risk of injury" to any person, including whether the speculative risk of injury would have been catastrophic; and (d) unhelpful opinion that do not require

expertise but require credibility determinations. *See* Fed. R. Evid. 403, 702, 703.

Plaintiffs respectfully request that these opinions and exhibits by Mr. Callahan be excluded from trial for the following reasons.

## II.  LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). To be admissible, expert testimony must generally satisfy a two-prong test, reliability, and relevance. *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended sub nom. *Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003) (footnote omitted). To establish relevance, the testimony must be helpful to the trier of fact and beyond the common knowledge of jurors. *Daubert*, 509 U.S. at 597. Rule 702 requires courts to assess the reliability of expert testimony based on scientific, technical, or "other specialized" knowledge before admitting it. *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending the Daubert gatekeeping requirement to "technical" and "other specialized" knowledge).

The proponent of the expert testimony bears the burden of proving admissibility. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("the party presenting the expert must show that the expert's findings are based on sound science"). Assessment of the expert's qualifications to testify is not answered in the abstract but based on whether the expert's "qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (internal quotations omitted). The court determines whether the expert's training and qualifications relate to the specific subject matter of his proposed testimony.

A court may satisfy its "gatekeeping" function by conducting a pretrial hearing, or by ruling on a Rule 702 objection at trial, "so long as the court has

sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). To establish reliability, the testimony must be derived from valid scientific knowledge, the witness must possess sufficient expertise, and the state of pertinent scientific knowledge must permit the assertion of a reasonable opinion. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Testimony is grounded in valid knowledge if it is "based on the methods and procedures of science [or other expertise] rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation*, 259 Fed.Appx. 499, 500, 2008 WL 84540, 1 (3rd Cir. 2008) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003), and *Daubert*, 509 U.S. at 590 (to qualify as scientific, "an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.").

Expert are only permissible if qualified by knowledge, skill, experience, training, or education and only if: (a) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

### III.   MR. CALLAHAN'S OPINIONS SHOULD BE EXCLUDED FROM TRIAL

#### A.   Mr. Callahan's Untimely Produced and Unproduced Exhibits Must be Excluded from Trial

With Mr. Callahan Report, Defendants only produced thumbnails of approximately 400 photographs, 15 Laser Scan Data images, and 10 pages of first-person "Reconstruction Renders" from the assumed perspective of Alvarado. Each

of these are either not helpful to the jury, cumulative, irrelevant, or inaccurate. However, like Mr. Held, Defendants also failed to timely produce with Mr. Callahan's report several additional exhibits, which should be excluded. The untimely disclosure of exhibits again violated Rule 26. Defendants also waited to produce additional exhibits until the night before Mr. Callahan's deposition, on February 29, 2024. (Exh, D, Correspondence at 1-2; see Exh. F, Callahan's 231164_3_PM_Rest_Stills.) Making it more prejudicial, after the link to exhibits was produced and downloaded by Plaintiffs' counsel in preparation for Mr. Callahan's deposition, Mr. Callahan added additional documents to the drive unbeknownst to Plaintiffs. In fact, the "Rest Stills" exhibit was only added approximately an hour prior to the deposition beginning. (Exh. G, Callahan Depo at 18:21-20:10.) During the parties' conference, Defense counsel even indicated that Mr. Callahan may be working on an additional exhibit, which obviously has not been produced yet.

The purpose of the discovery rules is to make possible fair and expeditious preparation of cases, minimizing to the extent possible trial time spent in wasteful sparring unrelated to merits of case. *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970). Discovery enables the parties to know before the trial begins what evidence may be presented—designed to prevent "trial by ambush." Further, the expert report is meant to minimize the expense of deposing experts, shorten examinations, and again prevent a trial by ambush. *Doe by & through Pike v. Pike*, 405 F. Supp. 3d 243, 248 (D. Mass. 2019); *Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1266 (W.D. Wash. 2008). "If a party fails to provide information … as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence … at a trial." Fed. R. Civ. P. 37; *China Res. Prod. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 856 F. Supp. 856, 867 (D. Del. 1994); *Santiago-Lampon v. Real Legacy Assur. Co.*, 293 F.R.D. 86, 87-88 (D.P.R. 2013) (exclusion for failure to timely disclose, demonstrating a pattern of delays without justification).

"The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them." *Lohnes v. Level 3 Commc'ns., Inc.*, 272 F.3d 49, 60 (1st Cir. 2001); *see also Insight Tech., Inc. v. Surefire, LLC*, 2007 U.S. Dist. LEXIS 83632, at *3 (D.N.H. Nov. 01, 2007) (excluding explanation of computer animations and animations as undisclosed opinions dispute defendants claiming they are merely demonstrative); *Bentley v. ConocoPhillips Pipeline Co.*, 2010 WL 11537799 at *7 (D. Mont. Feb. 2, 2010) ("The failure to disclose a report meeting the requirements of Rule 26(a)(2)(B) may preclude the proponent from introducing the evidence at trial."); *Olson v. Mont. Rail Link, Inc.*, 227 F.R.D. 550, 553 (D. Mont. 2005) (limiting expert testimony to the admissible conclusions and data that were timely disclosed).

Defendants have withheld expert exhibits they intend to use at trial. They presumably intend to wait until the eve of trial or even at trial to disclose their recharacterized "demonstrative evidence" in an effort to get around their untimely disclosures. Even still, this surprise tactic has and will prevent Plaintiffs from effectively cross-examining the Defendant and his expert and will thwart the Plaintiffs from presenting rebuttal evidence. Defendants' late and undisclosed reconstructions should be excluded from trial.

### B. Mr. Callahan's Inaccurate and Prejudicial Exhibits Must be Excluded from Trial

Defendants must show that their computer-generated animations and renders are fair and accurate representations of the incident. *See Friend v. Time Mfg. Co.*, No. 03-343-TUC-CKJ, 2006 WL 2135807, at *7, 20 (D. Ariz. July 28, 2006) (citing *Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998)); *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1271 (D. Ariz. 2020); *Abrego v. City of Los Angeles*, 2017 WL 11648665, *2 (C.D. Cal. Feb. 26, 2017). There is not a great deal of cases dealing with 3D animation or computer simulation and most are unpublished. Nevertheless, the Ninth Circuit on *Byrd*, 137 F.3d at 1134 upheld the limited use of computer

animations under Rule 403. *United States v. Astarita*, No. 3:17-CR-00226-JO, 2018 WL 3097012, at *14, n.7 (D. Or. June 20, 2018); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 425 (4th Cir. 1996) (courts have routinely ruled that computer animations that attempt to recreate an accident are often inadmissible because they pose a significant risk of misleading the jury and confusing the issues); *Altman v. Bobcat Co.*, 349 Fed. Appx. 758, 763-64 (3d Cir. 2009). Mr. Callahan admits that accuracy is important to achieve scientific certainty. (Callahan Depo at 22:11-16.)

     Computer-generated recreations have the potential to mislead the jury when they inaccurately portray the events. Especially in a society deeply enthralled by cutting-edge technology, the danger the jury will give undue weight to the recreation over the less-glamorous surveillance video actually depicting the incident is far too great. Courts exclude demonstrative exhibits when their probative value is substantially outweighed by its risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence—especially if the exhibit is inaccurate. *See* Fed. Rule Evid. Rule 403; *Live Face On Web, LLC v. Integrity Solutions Grp., Inc.*, 421 F. Supp. 3d. 1051, 1065 (D. Colo. 2019).

     Here, Mr. Callahan produced (thus far) two inaccurate exhibits (1) Callahan's Reconstruction Renders, his first-person recreation of incident; and (2) Callahan's 231164_3_PM_Rest_Stills, his overhead recreation of the incident. But first, see Mr. Callahan's Figure 6 as his impact sequence. (Exh. E, Callahan Report at 7.) There (more accurately), Mr. Callahan does not place Alvarado's vehicle (patrol vehicle 2) in its assumed stopped position until the red car has nearly passed Varela's vehicle (patrol vehicle 1). This is verified by the surveillance video of the incident. Now see both exhibits in question, where Defendants, through Mr. Callahan, attempt to change the facts of the case to make it appear as though Alvarado was out of the patrol vehicle long before he actually was, and make it appear as though the car was being driven towards Alvarado as he stood on the street. The Reconstruction

1  Renders wrongfully and inaccurately attempts to recreate a first-person-view of the
2  incident through Alvarado's eyes. (Exh. E, Callahan Report at 99-108.) However,
3  even Mr. Callahan admits that it is inaccurate.

4      Q    Well, the bottom left-hand corner of this image shows the
5            Escobar vehicle; correct?
6      A    That's correct.
7      Q    Isn't it true that the Escobar vehicle had not come to a stop and
8            was not in this position at the moment in time that the Hyundai
9            began moving in reverse?
10     A    That's right.
11     Q    And then just going – I'm just scrolling and you can look at my
12           screen or yours, but page 2, the Hyundai begins moving; page 3,
13           the Hyundai still is moving in reverse; on page 4 it depicts kind
14           of the movement of impact between the Hyundai and Varela's
15           vehicle; is that right?
16     A    Correct, yes, something in that ballpark. These are half-second
17           intervals, so not the tightest timeline on them, but yes, it's around
18           that time.
19     Q    And at this time depicted on page 4, similar to previously, Officer
20           Escobar's vehicle was not in its parked position at that time
21           either; right?
22     A    That's correct.
23     Q    And I'm just going to scroll to page 5 of Exhibit 5 and then down
24           to 6 and 7. As depicted in all of these frames thus far, you have
25           the image of Officer Escobar's vehicle in a stopped position;
26           right?
27     A    Correct. I would say not by design. The motion of that vehicle is
28           not something I had really enough evidence to sort of accurately

1  demonstrate. So I'm just taking its position I know it sort of is in
2  when impact occurred.
3  (Exh. G, Callahan Depo at 88:6-89:10.) Mr. Callahan first admits that his exhibit is
4  inaccurate. Mr. Callahan also admits that he does not have sufficient facts and data
5  to make an accurate exhibit related to Alvarado's vehicle. So, instead of applying a
6  methodology that respects accurate and scientific certainty, Mr. Callahan choose to
7  make the exhibit inaccurately – that just so happens to correspond with Alvarado's
8  inconsistent story that he was out of the vehicle prior to the car starting in reverse.

Similarly inaccurate, Mr. Callahan's overhead recreation of the incident also has Alvarado's vehicle in its stopped position far too early and Alvarado's door open long before it was. (Exh. F, Callahan Rest Stills at 1-30.) Mr. Callahan shows Officer Vasquez-Lopez's vehicle approaching but chooses to change the reconstruction from his "impact sequence" in his report to inaccurately represent the incident.

Therefore, Plaintiffs respectfully request that the Court issue an order excluding Mr. Callahan's inaccurate exhibits.

**C.   Mr. Callahan's Opinions Based on an Unreliable Methodology, including Speculation Related to Injury and Based on Insufficient Facts and Data, Should Be Excluded From Trial**

Mr. Callahan offers several opinions that are outside of his expertise, based on an unreliable methodology, speculative, and based on insufficient facts and data.

Plaintiffs first take issue with the same unsupported and speculative opinion that Mr. Handy happens to make; knowing Alvarado's story is inconsistent with the objective facts and the first time Alvarado is seen on video he is exiting the patrol vehicle seconds after the shots were fired, Mr. Callahan states that Alvarado was knocked partially back into the threshold of his vehicle. (Exh, E, Callahan Report at 8-9, Opinion No. 4.) Mr. Callahan takes it upon himself to form the belief that Alvarado was "sort of off-balance" when knocked back into his vehicle. (Exh, G,

1  Callahan Depo at 68:19-69:1.) Yet, Mr. Callahan reviewed Alvarado's statement to
2  investigators and deposition testimony, and cannot recall any time that Alvarado
3  claimed to be off balance. (*Id.* at 69:2-11.) Mr. Callahan also admits that Alvarado
4  never stated that he exited the vehicle, was ever partially back in his vehicle, then
5  came out a second time. (*Id.* at 69:15-22.) The only think Mr. Callahan is relying on
6  to state that Alvarado was "off balance" is Officer Vasquez-Lopez's video showing
7  Alvarado two seconds after the last shot was fired. (*Id.* at 69:24-70:22.) There is no
8  basis for this speculative opinion, and no reliable methodology employed to render
9  it. Thus, it should be excluded.

10  Next, Mr. Callahan makes specific opinions outside of his expertise about a
11 significant risk of catastrophic injury to several people without with the same flawed
12 methodology. Mr. Callahan's Opinion No. 1: "The extreme driver inputs of Mr.
13 Benavente (maximum acceleration and steering while reversing) put all involved
14 parties at significant risk of injury." (Exh. E, Callahan Report at 8.) There is no
15 reliable methodology for an opinion that every officer involved was at significant
16 risk of injury in this matter, especially when Mr. Callahan admits that the car's top
17 possible speed was merely 16 mph and Benavente was applying the brakes prior to
18 the final impact and prior to the shots being fired. (*Id.* at 9.) The only relevant
19 evaluation of potential risk here applies to Alvarado, the officer that used force. Any
20 other discussion of risk confuses the issues and misleads the jury. Fed. R. Evid. 403.
21 Mr. Callahan also admits that if Alvarado was not in the threshold of the door at the
22 time the shots were fired, he would not at risk of serous injury or death. (Exh. G,
23 Callahan Depo at 75:14-23.) Further, Mr. Callahan admits that if the car was not
24 moving, even if Alvarado was in the threshold of the door, he would not be at risk of
25 serious bodily injury or death. (*Id.* at 75:25-76:9.) Mr. Callahan also admits that the
26 car was not a significant risk of catastrophic injury or death at the moment it
27 impacted Officer Vasquez-Lopez's vehicle. (*Id.* at 66:16-67:1.) And we know that
28 the car was stopped for approximately 1.1 seconds after it impacted Officer

Vasquez-Lopez's vehicle prior to the first shot being fired. (*Id.* at 44:6-14.) Mr. Callahan's Opinion No. 1 and any opinion related to catastrophic injury is unreliable and should be excluded.

Mr. Callahan's testimony is based on an unreliable methodology, insufficient facts and data, and speculation. Accordingly, Mr. Callahan's opinions should be excluded from the trial.

## IV.   CONCLUSION

Defense expert Michael Callahan's stated opinions, and inaccurate and undisclosed exhibits should be excluded from trial pursuant to Fed. R. Evid. 403 and 702. His opinions and exhibits will not help the jury in resolving the issues of facts presented, are not based on sufficient facts, nor are they the product of reliable principles and methods, are outside of his expertise and usurp the function of the Court and jury.

Respectfully submitted,

Dated: June 21, 2024,   **LAW OFFICE OF DALE K. GALIPO**
**RODRIGUEZ APODACA LAW FIRM, LLP**

By _____/s/_____ *Marcel F. Sincich*_____
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiffs*, FRANK BENAVENTE and NICOLE VENTRESS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certify that this brief contains 3,095 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

Dated: June 21, 2024,     **LAW OFFICE OF DALE K. GALIPO**
     **RODRIGUEZ APODACA LAW FIRM, LLP**


     By _____/s/_____ Marcel F. Sincich_____
     Dale K. Galipo
     Marcel F. Sincich
     *Attorneys for Plaintiffs*, FRANK BENAVENTE
     and NICOLE VENTRESS