**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118

**RODRIGUEZ APODACA LAW FIRM, LLP**
Richard A. Apodaca (SBN 292294)
richarda@ralawllp.com
Elissa K. Buenrostro (SBN 303299)
elyb@ralawllp.com
Empire Towers I
3633 Inland Empire Blvd., Suite 575
Ontario, CA 91764
Tel: (909) 944-3777 | Fax: (909) 944-5777

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BENAVENTE; and NICOLE VENTRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ONTARIO; and ALBERT ALVARADO,<br><br>Defendants. | Case No. 5:23-cv-00266-SSS-KK<br>[*Honorable Sunshine S. Sykes*]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* No. 5 TO EXCLUDE OPINIONS OF DEFENSE EXPERT ROBERT HANDY**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**Hearing on Motions *in Limine*:**<br>July 26, 2024 at 02:00 p.m.<br>**Final Pretrial Conference:**<br>August 2, 2024 at 02:00 p.m.<br>**Jury Trial**<br>August 19, 2024 at 08:30 a.m.<br>Ctrm: 2<br>3470 Twelfth Street,<br>Riverside, California 92501 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs FRANK BENAVENTE and NICOLE VENTRESS hereby move *in limine* for an order excluding the testimony of Defendants' retained police practices expert Robert Handy on the following grounds:

1. Defendants failed to produce Mr. Handy's "list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition" as required by Rule 26(a)(2)(B). (Exh. I, Handy Depo at 21:16-21.)

2. Defendants failed to produce Mr. Handy's "statement of the compensation to be paid for the study and testimony in the case" as required by Rule 26(a)(2)(B). (Exh. I, Handy Depo at 20:9-13.)

3. Defendants' Rule 26 Report for Mr. Handy did not contain all of his opinions in this case as required by Rule 26(a)(2)(B). (Exh. I, Handy Depo at 22:16-18.) Thus exclude any hidden opinions that may be later developed and admitted in surprise to Plaintiffs. (See Exh. I, Handy Depo at 22:19-21.)

4. Mr. Handy's unsupported or irrelevant opinions, based on an unreliable methodology, credibility determinations and insufficient facts and data should be excluded.

  a. Mr. Handy admits that there are disputes of fact yet gives more weight to facts in the officers' depositions. (Exh. I, Handy Depo at 27:23-28:1, 91:1-18.)

  b. That Benavente was "endangering other drivers and nearly causing a traffic collision." (Exh. H, Handy Report at 5.) Yet, no physical or forensic evidence to support this, no video to support this, no statement from drivers on the road to support this. Further, Handy did not review anything in the records that would have indicated how close the subject vehicle came to the civilian vehicle. (Exh. I, Handy Depo at 64:22-25.) No information that a

civilian vehicle had to slam on the brakes or swerve out of the way. (Exh. I, Handy Depo at 65:1-3.) To Handy's knowledge, no civilians were injured during the incident. (Exh. I, Handy Depo at 65:4-6.)

    c.    "As Corporal Alvarado was getting out of the car, the suspect vehicle reversed and rammed into the first police car (Officer Varela's car), …" (Exh. H, Handy Report at 5.) Including Alvarado's position at the time the shots were fired. (Exh. I, Handy Depo at 72:2-4.)

    d.    That Handy thinks Alvarado "was in the car, … got knocked back in the car partially, and then back out of the car." Yet, Alvarado did not say anything to that effect to detectives in investigating the incident and never testified as to anything of that effect in his deposition. Handy's sole source of evidence he relied upon to make this conclusion is the video showing Alvarado's position approximately two seconds after the shooting, which does not show Alvarado getting knocked into his vehicle. (Exh. I, Handy Depo at 74:11-75:8.) According to Alvarado's statements, from Alvarado's perspective, Escobar stopped the car, Alvarado got out and was on foot, then used deadly force. (Exh. I, Handy Depo at 75:9-18.) Handy also found that Alvarado stepped out of the car when the red car impacted Escobar's vehicle. (Exh. I, Handy Depo at 76:17-77:11.)

    e.    That Officer Varela "assumed Benavente may be armed with a gun." (Exh. H, Handy Report at 10.) That Benavente was "possibly reaching for a weapon." (Exh. H, Handy Report at 11.) "Corporal Alvarado thought Benavente was a possible gang member and that he was possibly armed." (Handy Report at 14.)

    f.    That Benavente was "possibly setting up an ambush." (Exh. H, Handy Report at 11.)

    g.    That "Officer Varela saw Benavente's face was tattooed." (Exh. H, Handy Report at 10.)

      h.    That "Corporal Alvarado fired his weapon into the driver's window about the time the car was running into his police vehicle within arm's reach." (Exh. H, Handy Report at 11.)

      i.    Reliance on statements made by Ms. Ventress after the incident regarding whether Benavente was possibly under the influence of methamphetamine or heroin, and the post-incident toxicology results. (Exh. H, Handy Report at 13.)

      j.    Reliance on statements made by Ms. Briones after the incident regarding what Benavente may have said in the car ("I am not fucking stopping" and "Oh yea, watch this"). (Exh. H, Handy Report at 14.) Speculative opinions of Benavente's subjective state of mind. (Exh. I, Handy Depo at 45:1-7.)

      k.    Statements as to what would have occurred if Alvarado did not fire his weapon. "Alvarado told investigators later that had he not fired his handgun, Alvarado believed he would be in the hospital or dead based on the threat Alvarado believed Benavente posed at the time he fired his weapon." (Exh. H, Handy Report at 14.)

      l.    "It is my opinion, based on the totality of circumstances, that Corporal Alvarado reasonably believed he was about to be crushed by Benavente's vehicle and did not have any place to move to avoid being struck and seriously injured or killed by Benavente's deadly assault." (Exh. H, Handy Report at 15.)

      m.    Whether this is a fleeing felon case.

5.    Mr. Handy's testimony regarding legal conclusions (e.g., whether force was reasonable, reasonable suspicion and probable cause, violation of criminal offenses, discussion of law).

6.    Mr. Handy's opinions outside of expertise (e.g., reaction time, cognitive processing).

a. "It has been my training and experience the reaction time for an officer to recognize a threat, react to the threat and take action to neutralize the threat takes some time. It may be whole or fractions of seconds, but reactions take time to process while the incident, including suspect actions, often continue without pause." (Exh. H, Handy Report at 14.)

b. That because "the car windows [were] up, sirens sounding, engines revving, cars were crashing, etc. It was not feasible for Alvarado to issues Benavente a verbal waring before firing his weapon." (Handy Report at 15.) However, at the time of the shot and for one to two seconds prior to the shots, there were no cars crashing or revving because the red car was stopped. Further, the officers controlled whether there were sirens and officers often communicated with people while their windows were up.

Plaintiffs make this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 702, 703, and 802.

Plaintiffs base this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiffs' Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiffs' [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

Referenced herein is Defendants' Rule 26 Report of Expert Robert Handy ("Handy Report"), attached to Sincich Decl ¶16 as Exhibit H; and the relevant portions of the February 19, 2024 Deposition Transcript of Robert Handy ("Handy Depo"), attached to Sincich Decl ¶17 as Exhibit I.

**Statement of Local Rule 7-3 Compliance and pursuant to this Court's Civil Standing Order (Doc. 10 at 11:8-12:6)**: This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on Friday June 14,

PLAINTIFFS' MOTION *IN LIMINE* NO. 5 – TO EXCLUDE OPINIONS OF DEFENSE EXPERT ROBERT HANDY

2024, starting at 2:00 p.m., during which a partial resolution was reached as described below, but no resolution was reached regarding the subject information of the present Motion. Present at the conference were Marcel F. Sincich for the Plaintiffs and James Touchstone for the Defendants. The conference took place over Zoom and lasted a total of approximately two hours, of which approximately 31 minutes this Motion was specifically discussed. During the conference, the parties discussed the following:

- Defendants' failure to produce Mr. Handy's list of testimony from the previous four years.
- Defendants' failure to produce Mr. Handy's statement of compensation.
- Whether Defendants intend to illicit opinions not contained in Mr. Handy's report or expressed at deposition.
- Whether Defendants intend to illicit testimony, admit exhibits, or include in argument inaccurate information, and or based on first making a credibility determination.
- Speculative testimony of endangering drivers during pursuit.
- Speculative and prejudicial testimony of whether Benavente was possibly a gang member, possibly armed with a gun, possibly reaching for a gun, or possibly setting an ambush.
- Improperly basing opinions on information unknown, particularly methamphetamine and post-incident statements by Ms. Briones and Ms. Ventress.
- Speculative statements of what would have occurred if circumstances were different.
- Speculative, ipse dixit, opinions without foundation or factual support, particularly related to a new theory to attempt to justify the use of unreasonable force that is not supported, but contradicted, by Alvarado's own statements, regarding fleeing felon.

- Speculative statements of what a person was intending to do or trying to do.
- Legal conclusions.
- Opinions outside of expertise regarding reaction time and cognitive processing.

During the conference the parties reached an agreement as to the following items of evidence at trial, and therefore will not be included in the present Motion (which otherwise would have been), to exclude such information. The parties have agreed that there shall be no evidence, testimony, argument, or reference at trial to any of the following, including:

a. Any opinions not included in report or expressed in deposition (e.g., at deposition when asked if his report contains all his opinions in this case, Mr. Handy replied, "Probably not, no." (Exh. I, Handy Depo at 22:16-18); and when asked what opinions he has that are not contained in the report, Mr. Handy replied, "I don't know. It's just kind of an unknown." (Exh. I, Handy Depo at 22:19-21).)

b. Any statements related to gang membership (e.g., "Corporal Alvarado thought Benavente was a possible gang member and that he was possibly armed." (Exh. H, Handy report at 14).)

c. Any statements of face tattoos unknown to Alvarado prior to his use of deadly force (i.e., "Officer Varela saw Benavente's face was tattooed" (Exh. H, Handy Report at 10), not Alvarado.)

d. Any statements as to what would have occurred if circumstances were different (e.g., "Alvarado told investigators later that had he not fired his handgun, Alvarado believed he would be in the hospital or dead based on the threat Alvarado believed Benavente posed at the time he fired his weapon." (Handy Report at 14).) However, it appears that after the parties' conference in process of drafting the stipulation regarding motions *in limine*, Defendants withdrew their agreement.

      e.     Any statements as to what the involved party intended to do or was trying to do (e.g., Benavente "turned slightly, as if intentional, and into the two-office car" (Exh. H, Handy Report at 5); that "Varela believed that Benavente was trying to hurt hit and the other officers" (*Id.* at 10); that Escobar "felt Benavente was trying to hurt them" (*Id.* at 10); that Benavente "appeared to have been trying to provoke a collision" (*Id.* at 14); that Benavente was intentionally ramming the police vehicles (*Id.* at 14).)

      f.     Legal conclusions (e.g., whether force was reasonable, reasonable suspicion and probable cause, violation of criminal offenses, discussion of law).

      g.     Credibility determinations.

(Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶¶2, 7.)

Respectfully submitted,

Dated: June 21, 2024,  **LAW OFFICE OF DALE K. GALIPO**
                                **RODRIGUEZ APODACA LAW FIRM, LLP**

                                  By      */s/     Marcel F. Sincich*
                                        Dale K. Galipo
                                        Marcel F. Sincich
                                        *Attorneys for Plaintiffs*, FRANK BENAVENTE and NICOLE VENTRESS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Albert Alvarado unjustifiably shot and killed Joseph Benavente in a stopped car. Alvarado had no information about Benavente, whether he had ever committed a serious crime, was under the influence, or was armed. Benavente stopped on the right side of the street and then continued in reverse around Officer Varela's vehicle. His attempt was halted by the blocking position of the involved officers followed by Alvarado shooting Benavente three times. Prior to and during the shots, the car was stopped, blocked to the rear, with no officer in the path or about to be harmed. Officers cannot shoot the driver of a stopped car and cannot shoot merely for fleeing. So, Alvarado attempts to create an inference that he was threatened by the car by stating that he was out of his unit, the car was moving directly towards him, he thought he was going to be crushed, then after the shooting the car continued to accelerate. Alvarado's story is inconsistent with the objective evidence making reliance on it as the basis for expert opinions unreliable.

By way of the instant Motion, Plaintiffs move to exclude the testimony of Defendants' retained police practices expert Robert Handy, on the grounds that his opinions and testimony are not helpful to the jury, usurp the province of the jury, usurp the province of the Court, outside of his expertise, unsupported basis without sufficient facts and data, unreliable methodology, and based on speculative theory, ipse dixit, and not facts relevant to this matter. Thus, Plaintiffs seek to exclude Mr. Handy from testifying regarding the following.

## II. LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). To be admissible, expert testimony must generally satisfy a two-prong test, reliability, and relevance. *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended sub nom. *Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th

Cir. 2003) (footnote omitted). The proponent of the expert testimony bears the burden of proving admissibility. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("[i]t is the proponent of the expert who has the burden of proving admissibility"); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("the party presenting the expert must show that the expert's findings are based on sound science").

To establish reliability, the testimony must be derived from valid scientific knowledge, the witness must possess sufficient expertise, and the state of pertinent scientific knowledge must permit the assertion of a reasonable opinion. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Testimony is grounded in valid knowledge if it is "based on the methods and procedures of science [or other expertise] rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation*, 259 Fed.Appx. 499, 500, 2008 WL 84540, 1 (3rd Cir. 2008) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003), and *Daubert*, 509 U.S. at 590. Federal Rule of Evidence 702 allows opinion testimony by an expert only if the expert is qualified by knowledge, skill, experience, training, or education and only if the expert: (a) has specialized knowledge to help the jury understand the evidence or determine a fact; (b) testifies based on sufficient facts or data; (c) testifies based on reliable principles and methods; and (d) reliably applied the principles and methods to the facts of the case. The first question for the Court is whether his proffered testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." The next question is whether there is a reliable methodology applied to reach the opinions offered.

Additionally, Rule 26(a)(2)(B) requires the "written report" to contain (v) a list testimony and (vi) statement of compensation. Here, Defendants did not provide either with Mr. Handy's report. (Defendants Expert Disclosures at 6-28.) Courts have excluded experts for similar violations of Rule 26(a)(2)(B). *See, e.g., Elgas v. Colo.*

*Belle Corp.*, 179 F.R.D. 296, 300 (D. Nev. 1998); *see also Cross v. Candlewic*, 2023 WL 4933197 at *7-8 (D. Ariz. Aug. 2, 2023); *Scharf v. Trabucco*, 2016 WL 1084748 at *4 (Mar. 21, 2016).

### III. MR. HANDY'S OPINIONS SHOULD BE EXCLUDED FROM TRIAL

#### A. Mr. Handy's Perception/Reaction Testimony Should Be Excluded

Defendants' speculative anticipated perception/reaction testimony is their alternative theory given that it is undisputed that the car had been stopped for over a second by the time of the use of deadly force to excuse Alvarado's conduct when no threat was present. Mr. Handy's testimony related to perception/reaction takes no expertise and Mr. Handy is not qualified to provide anything more than common knowledge, which is impermissible under Rule 702. First, Mr. Handy does not offer an actual opinion regarding perception/reaction in this matter. Mr. Handy's sole comment, used as a basis for forming his opinions, is that it takes time to recognize a threat and react. (Exh. H, Handy Report at 14.) This obvious and vague statement requires no special knowledge, skill, experience, training or education, and Mr. Handy has no specific scientific, technical, or specialized knowledge to help the jury understand Alvarado's perception/reaction time. See Fed. R. Evid. 702.

Mr. Handy merely testified that he 'thinks' "there is a difference between an officer's perception and then reaction to the threat;" simply not instantaneous. (Exh. I, Handy Depo at 131:10-17.) Mr. Handy has no specific training or education in perception/reaction, just general training in the use of force. (*Id.* at 131:20-23.) When questioned about the time for an officer to perceive a potential threat then react, Mr. Handy does not know, and admits it is different for everyone. (*Id.* at 131:24-132:9.) When asked how fast Alvarado, specifically, can perceive a threat and then react to it, Mr. Handy again does not know. (*Id.* at 132:10-12.)

Mr. Handy offers no opinion helpful to the jury, thus his testimony regarding perception/reaction should be excluded. Mr. Handy's anticipated testimony (if allowed) has no methodology, is unreliable, based on insufficient facts and data, and

1  based on insufficient training and experience. Thus, Rule 702 bars any purported
2  expert opinion as to this subject matter. Additionally, the probative value is
3  substantially outweighed by danger of unfair prejudice, confusing the issues,
4  misleading the jury and presenting needless cumulative evidence of Alvarado's
5  purported conduct ignoring the fact that Benavente was shot while in a stopped
6  vehicle within no one in the path. See Fed. R. Evid. 403. Mr. Handy's speculative
7  and unqualified opinion as to the state of mind of Alvarado concerning cognitive
8  process and perception/reaction should be excluded.

9        **B.    Mr. Handy's Fleeing Felon Testimony Should Be Excluded**

10        Mr. Held's supposed methodology as a police practices expert in this matter
11  includes evaluation of Alvarado's conduct based on whether his perception was
12  reasonable. (Exh. I, Handy Depo at 45:18-24.) Further, whether Alvarado's
13  perceptions were reasonable is based on his perspective of the circumstances, the
14  information Alvarado knew and considered. (*Id.* at 46:7-10.) In other words,
15  according to Mr. Handy, the evaluation of the appropriateness of the use of deadly
16  force depends on Alvarado's perspective. (*Id.* at 66:8-19.) However, here, Mr. Held
17  unreliably employs that methodology by ignoring Alvarado's perspective and
18  providing opinion regarding the force that is not based on the circumstances
19  Alvarado was presented with.

20        Mr. Held does not have a specific opinion regarding this being a fleeing felon
21  case. (Exh. H, Handy Report at 9.) However, as a basis for his opinions, Mr. Handy
22  states, "Benavente was aggressively fleeing officers in a vehicle while posing a
23  significant danger to anybody on or near the roads he traveled. He rammed three
24  police vehicles posing a substantial danger to the officers and would have continued
25  to flee, posing a substantial risk to the public and officers unless stopped." (*Id.* at 15.)
26  Though not an opinion, it appeared that Defendants were attempting to use this
27  statement as a back door to insert "fleeing felon" testimony and arguments at trial.
28  Thus, Plaintiffs inquired if Mr. Handy believes this was a fleeing felon case. Mr.

Handy clearly responded based on his review of nearly every record in this matter, "I don't know that it was. I don't hear that articulated…I don't believe that the officers articulated that that was their justification." (Exh. I, Handy Depo at 126:24-127:6.)

> Q. Do you recall that Mr. or rather that Corporal Alvarado was asked in deposition why he used deadly force?
> A. I do.
> Q. And in his response did he mention anything about the criteria that would otherwise qualify as a fleeing felon?
> A. I don't recall him mentioning that, no.

(*Id.* at 129:5-11.)

Further, the criteria for a fleeing felon justification for the use of deadly force is not met—it requires the officer to believe that if the subject was not immediately apprehended, he would cause death or serious bodily injury to another. (*See Id.* at 129:12-19.) However, Mr. Handy admits that Alvarado repeatedly stated that he used deadly force because he was in fear of his own life being at risk. (Handy Depo at 129:21-24.)

First, Mr. Handy has no opinion about whether this is a fleeing felon case, thus no opinion should be permitted at trial. Second, Mr. Handy does not know if this is a fleeing felon case, thus any testimony by Mr. Handy would be speculative, lack foundation, and based on insufficient facts and data—i.e., impermissible. Third, any testimony or opinion related to fleeing felon would be based on an unreliable methodology that discounts what was articulated by the shooting officer and the officer's own use of force policy—i.e., impermissible. Finally, any testimony or argument regarding fleeing felon would be illogical, confusing and misleading, because the criteria for his was not met. Fleeing felon does not apply. Alvarado's testimony reflects his perception on scene that this incident did not involve the apprehension of a fleeing person for a felony, did not involve Benavente having committed a felony that threatened or resulted in death or serious bodily injury, that Alvarado did not believe that Benavente would cause death or serious bodily injury to some other person if not *immediately* apprehended.

The law has long been established by the Supreme Court of the United States, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Court does not deny the practical difficulty in attempting to assess the suspect's dangerousness, but difficult judgments must be made by the police. *Id.* at 20. "To determine the constitutionality of a seizure 'we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 8. This case should remain focused on the reasonableness of Alvarado's conduct, not whether there was a felony committed or whether some unknown hypothetical bystanders were being threatened.

"'An expert's opinions that are without factual basis and are based on speculation or conjecture'" are inappropriate. *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 (9th Cir. 2010), *on reh'g en banc sub nom. California ex rel. Harris v. Safeway, Inc.*, F.3d 118 (9th Cir. 2011) (quoting *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). "Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri P.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Mr. Handy's opinion fleeing felon testimony is based not on identifiable facts in evidence, but on a string of his own speculations.

"[A]n expert's opinion that something could be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in the case before the jury, does not provide assistance to the jury because the jury is charged with determining what occurred in the case before it, not hypothetical possibilities." *Cooper v. Takeda Pharms. Am., Inc.*, 239 Cal. App. 4th 555, 577 (2015); *Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 (6th Cir. 2017); *McCoy v. Whirlpool Corp.*, 287 F. App'x 669, 677 (10th Cir. 2008); *Zuchowicz v. United*

*States*, 140 F.3d 381, 389 (2d Cir. 1998); *Richardson by Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988); *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir. 1985).

"When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Accordingly, Mr. Handy's fleeing felon testimony should be excluded from trial.

### C. Mr. Handy's Unsupported or Irrelevant Opinions, Based on an Unreliable Methodology, Credibility Determinations and Insufficient Facts and Data Should Be Excluded

Despite there being disputed issues of fact in this matter, Mr. Handy applies an improper and unscientific methodology of making the credibility determination as to accept Alvarado's subjective story of events that are clearly inconsistent with the objective evidence, making his testimony in this matter unreliable, misleading, confusing the issues and unhelpful to the jury. Where there is conflict in testimony, Mr. Handy's methodology for determining which conflicting statement to consider for the purposes of rendering an opinion is to simply accept the officers' sworn deposition testimony. (Exh. I, Handy Depo at 91:1-18.) This unreliable methodology is implemented throughout Mr. Handy's report, deposition, and anticipated future testimony (if allowed).

First, Mr. Handy accepts Defendants erroneous theory, as argued in their Motion for Summary Judgment, that Alvarado stepped out of his car before Benavente went in reverse and that Alvarado fired to stop a moving vehicle that continued in reverse after the shots were fired. (Doc. 31, MSJ at 9:22-10:3; Exh. H, Handy Report at 5.) Mr. Handy confirmed from body-worn camera video that there is a delay of a second or two after the collision with Vasquez-Lopez's vehicle prior to Alvarado's first shot. (Exh. I, Handy Depo at 80:12-21.) Further, that the car

1  stopped on impact with Vasquez-Lopez's vehicle. (*Id.* at 99:19-24.) Finally, based on
2  an actual analysis of the surveillance footage of this incident, Mr. Handy admits that
3  Alvarado's vehicle was not stopped either when Benavente first went in reverse or as
4  it was passing Varela's vehicle. (*Id.* at 149:7-151:7.) And admits he does not know if
5  the vehicle was stopped when Alvarado put foot-to-ground. (*Id.* at 72:2-4.)

6      With no way to reconcile Alvarado's inconsistent statements with the fact that
7  the first time Alvarado is seen on video he is exiting the patrol vehicle, *seconds after*
8  the shots were fired, Defendants appear to invent facts to fit their narrative. Mr.
9  Handy thinks Alvarado "was in the car, … got knocked back in the car partially, and
10 then back out of the car." Despite Alvarado never saying anything to that effect
11 either to detectives or in his deposition. Mr. Handy's sole source of evidence he
12 relied upon to make this conclusion is the video showing Alvarado's position
13 approximately two seconds after the shooting, which does not show Alvarado getting
14 knocked back into his vehicle. (*Id.* at 74:11-75:8.) According to Alvarado's
15 statements, <u>from Alvarado's perspective</u>, Escobar stopped the car, Alvarado got out
16 and was on foot, then used deadly force. (*Id.* at 75:9-18.)

17     Again, Mr. Handy's improper methodology is displayed in his opinion that
18 Benavente was "endangering other drivers and nearly causing a traffic collision."
19 (Exh. H, Handy Report at 5.) The is no physical or forensic evidence to support this
20 claim, no video to support this, no statement from drivers on the road to support this.
21 Further, Mr. Handy did not review anything in the records that would have indicated
22 how close the subject vehicle came to any civilian vehicle such that it might
23 endanger others or nearly cause a traffic collision. (Exh. I, Handy Depo at 64:22-25.)
24 For instance, Mr. Handy has no information that a civilian vehicle had to slam on the
25 brakes or swerve out of the way. (*Id.* at 65:1-3.) Mr. Handy's knowledge, no civilians
26 were injured during the incident. (*Id.* at 65:4-6.) Subjecitve testimony regarding
27 endangering lives and collisions risks unfair prejudice and has nearly no probative
28 value to whether Alvarado should have used deadly force. Fed. R. Evid. 403.

Mr. Handy also reports and relies upon speculative statements of the involved officers designed to inflame the passions of the jury but without any support related to this matter, including (a) Officer Varela "assumed Benavente may be armed with a gun" (Handy Report at 10); (b) that Benavente was "possibly setting up an ambush" (*Id.* at 11); (c) that Benavente was "possibly reaching for a weapon" (*Id.*); and (d) that "Corporal Alvarado thought Benavente was a possible gang member and that he was possibly armed" (*Id.* at 14).

There is no evidence that Benavente was ever in possession of a gun or reaching for a gun, a gang member or attempting to set up an ambush. There is no basis for these inflammatory statements and are just as speculative as any other "possible" situation that has no relevance to this matter. No officer saw a gun at any point prior to Alvarado's shots. (Exh. I, Handy Depo at 104:17-19.) No officer saw anything that looked like a gun prior to Alvarado's shots. (*Id.* at 104:20-105:1.) No officer was threatened with a gun in this matter. (*Id.* at 105:2-6.) If there is no furtive movement indicating the presence of a gun, it is irrelevant to the analysis, and Alvardo never stated that Benavente made a furtive movement towards a gun immediately prior to the use of deadly force. (*Id.* at 106:7-18, 106:25-107:4.) Reliance on what was possible with no supporting evidence to form an opinion reflects an unreliable methodology and would not be helpful to the jury in determining a fact in this case.

Finally, the analysis should be limited to information known, excluding hindsight evidence. A reliable methodology for a police practices expert would do the same. However, here, Mr. Handy's unreliable methodology attempts to backdoor inadmissible evidence that is both unknown and character evidence. Mr. Handy relies on post-incident statements made by Ms. Ventress regarding whether Benavente was possibly under the influence of methamphetamine or heroin during the incident, and the post-incident toxicology results. (Exh. H, Handy Report at 13.) Next Mr. Handy relies on post-incident hearsay statements made by Ms. Briones regarding hearsay

statements made in the car unknown to Alvarado including, "I am not fucking stopping" and "Oh yea, watch this." (*Id.* at 14.) Mr. Handy is not qualified to form speculative opinions as to the meaning of these statements nor Benavente's subjective state of mind. (See *Id.* at 45:1-7.) It is undisputed that Alvarado did not have any information about methamphetamine or heroin, nor the toxicology results or statements made by Benavente or Ms. Briones in the car.

Admission of this evidence through Mr. Handy risks unfair prejudice, is irrelevant, impermissible character evidence, and results in unreliable expert opinion. See Fed. R. Evid. 401, 403, 404, 702. Thus, Mr. Handy's identified testimony and opinions should be excluded as irrelevant, posing a substantial danger of unfair prejudice, confusing the issues, and misleading the jury, unreliable and unhelpful.

## IV. CONCLUSION

Defense expert Robert Handy's stated opinions will not help the jury in resolving the issues, are not based on sufficient facts, nor are they the product of reliable principles and methods, are outside of his expertise and usurp the function of the Court and jury, and/or risk unfair prejudice and impermissible character evidence. Therefore, they should be excluded from trial.

Respectfully submitted,

Dated: June 21, 2024,   **LAW OFFICE OF DALE K. GALIPO**
**RODRIGUEZ APODACA LAW FIRM, LLP**

By _____/s/_____Marcel F. Sincich_____
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiffs*, FRANK BENAVENTE and NICOLE VENTRESS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certify that this brief contains 3,322 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

Dated: June 21, 2024,        **LAW OFFICE OF DALE K. GALIPO**
                             **RODRIGUEZ APODACA LAW FIRM, LLP**


                             By        /s/        Marcel F. Sincich
                                Dale K. Galipo
                                Marcel F. Sincich
                                *Attorneys for Plaintiffs*, FRANK BENAVENTE
                                and NICOLE VENTRESS