# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4   FRANK BENAVENTE; and NICOLE VENTRESS, )
                                           )
 5              Plaintiffs,                )
                                           )
 6              vs.                        )Case No.
                                           )5:23-CV-00266-SSS-KK
 7   ALBERT ALVARADO; CITY OF ONTARIO;     )
     and DOES 1 through 10,                )
 8                                         )
                Defendants.                )
 9   _____)

10

11

12

13

14            REMOTE VIDEOCONFERENCE DEPOSITION OF

15                        ALBERT ALVARADO

16                    FRIDAY, JULY 28, 2023

17

18

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:   459584
```

```
1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4    FRANK BENAVENTE; and NICOLE VENTRESS,  )
                                            )
5                  Plaintiffs,              )
                                            )
6                  vs.                      ) Case No.
                                            ) 5:23-CV-00266-SSS-KK
7    ALBERT ALVARADO; CITY OF ONTARIO;      )
     and DOES 1 through 10,                 )
8                                           )
                   Defendants.              )
9    _____)

10

11

12

13

14           The remote videoconference deposition of ALBERT

15   ALVARADO, taken on behalf of the Plaintiffs, beginning at

16   10:03 a.m., and ending at 11:56 a.m., on Friday, July 28,

17   2023, before Jinna Grace Kim, Certified Stenographic

18   Shorthand Reporter No. 14151.

19

20

21

22

23

24

25
```

FRANK BENAVENTE, ET AL. vs ALBERT ALVARADO, ET AL.
Albert Alvarado on 07/28/2023                                              Page 3

```
 1    APPEARANCES OF COUNSEL:

 2
      For the Plaintiffs:
 3
                LAW OFFICES OF DALE K. GALIPO
 4              BY:   DALE K. GALIPO, ESQ.
                BY:   MARCEL F. SINCICH, ESQ.
 5              BY:   BENJAMIN S. LEVINE, ESQ.
                21800 Burbank Boulevard, Suite 310
 6              Woodland Hills, California 91367
                Tel:   818-347-3333
 7              Fax:   818-347-4118
                E-mail:   dalekgalipo@yahoo.com
 8              E-mail:   msincich@galipolaw.com
                E-mail:   blevine@galipolaw.com
 9

10    For the Defendants:

11              JONES MAYER
                BY:   JAMES R. TOUCHSTONE, ESQ.
12              3777 North Harbor Boulevard
                Fullerton, California 92835
13              Tel:   714-446-1400
                Fax:   714-446-1448
14              E-mail:   jrt@jones-mayer.com

15

16

17

18

19

20

21

22

23

24

25
```

1           MR. TOUCHSTONE: Assumes facts not in evidence.
2           Explain how --
3    BY MR. GALIPO:
4       Q.  Let me ask you this.
5           Where was the red vehicle when you first saw it?
6       A.  So the totality of this red car started at 4th and
7    Mountain where we observed it, and then we started assisting
8    Officer Varela for the traffic stop.
9       Q.  Where did the traffic stop initially take place?
10      A.  Fourth, east of Mountain.
11      Q.  Do you know what the reason for the stop was?
12      A.  No. Not at that time, I did not.
13      Q.  In other words, did you have any information that
14   the occupant of the vehicle had committed a serious crime?
15      A.  No. But I guess I want to correct my last statement
16   where the red car had ran the red light as it made a
17   eastbound turn on 4th Street from Mountain Avenue because
18   that light was red.
19      Q.  Did you observe that?
20      A.  Yes. As I'm looking over, yes.
21      Q.  Did you have a body cam on at the time?
22      A.  I had a body cam, yes. It was on.
23      Q.  Does your body cam capture parts of the shooting?
24      A.  Yes. Parts of it, yes.
25      Q.  And do you know if your body cam captured the

```
 1   vehicle running the red light?
 2       A.   No, it would not.
 3       Q.   Did you have a dash cam in your vehicle at the
 4   time?
 5       A.   No, sir.
 6       Q.   And what I was getting at, I understand that some
 7   people may think running a red light is a serious crime.
 8            But other than that, did you have information that
 9   the driver of the vehicle had committed some violent crime
10   against another crime?
11            MR. TOUCHSTONE:  Vague as to time.
12            Are you referring to the initial contact, Dale?
13            MR. GALIPO:  Yeah.  At any time.  I guess at any
14   time before he saw it reversing.
15            MR. TOUCHSTONE:  Okay.
16            Do you understand the --
17            THE WITNESS:  It -- it was a totality of events that
18   occurred after he ran that red light.  He ran that red light,
19   and we followed Officer Varela with the traffic stop to being
20   his backing officer.
21            At the time we were not driving at a high rate of
22   speed, but there was such movements of that car that were
23   just so obvious, and I called it fidgeting.
24            And it led me to believe something was occurring in
25   that car.  I have a lot experience in the field and our
```

1  training that we do in briefing and classes I've attended.
2  While my experience in the field and what I've been through
3  in other events led me to believe that he could have been
4  reaching for a weapon, he could have been trying to discard
5  evidence.
6            It just kept happening over and over where he --
7  he's fidgeting in the car, and I'm seeing this from the
8  steering wheel because he's going in the east direction to
9  the car behind the north, south direction, and it was very
10 obvious to me.
11           And then in totality, once we get to San Antonio, he
12 takes off at a high rate of speed.  So now I know that there
13 is a pursuit that is going to occur.  The pursuit continues
14 northbound on San Antonio, and in turn we get to about 5th or
15 6th Street, and there is a car -- and I'm going to call it an
16 innocent truck or civilian just driving on the street, and
17 the red compact sedan almost collides into it.
18           Almost it looks like it was going to be T-boned.
19           And I knew that something -- the propensity of
20 violence was going to occur or was heightened because that's
21 what happens in pursuits especially with what I had seen, my
22 experiences.  I almost saw that T-bone.  He didn't go on the
23 back side of the car.  So I knew that the truck had stopped
24 in the middle of the road.
25           The red compact sedan had passed him in the front,

1   and the pursuit continued on.

2           And once we got up to the 10 Freeway, he pulled over

3   to the right side of the road, and it was one of those things

4   I thought that he was going to give up or it was going to

5   lead into an ambush style situation because of what I have

6   seen, like I go back to my training and experience.

7       Q.   Okay.  Let me just stop you for one moment.

8           So up until the time he pulled over, you said on the

9   10 Freeway?

10      A.   Pulled over, yeah, that was the first time he pulled

11  over.

12          MR. TOUCHSTONE:  Well, was he on the 10 Freeway?

13          There's a clarity here --

14          THE WITNESS:  Yeah.  It was a 10 Freeway bridge --

15          MR. GALIPO:  Okay.  Thank you.

16  BY MR. GALIPO:

17      Q.   Up to that time, did you know the name of the

18  driver?

19      A.   No.

20      Q.   Did you have any information, for example, he had a

21  criminal history?

22      A.   No.

23      Q.   Any specific information he was under the influence

24  of drugs or alcohol?

25      A.   No.

 1    Q.   Any information that he had ever physically harmed
 2    another person?
 3    A.   Well, if we're talking about get into the 10
 4    Freeway, from that time frame, yeah, he almost T-boned an
 5    innocent motorist.
 6    Q.   Yeah.  I'm not asking about almost.
 7         I'm asking actually harmed.
 8    A.   No.  At that time he did not hurt anybody at the
 9    time.
10    Q.   And then after, take me from the stop on the 10
11    Freeway.
12    A.   The 10 Freeway, he stops, and it led me to think --
13    led me to think it's a possible ambush situation and/or he
14    was just giving up.  The moment we drove up, the red compact
15    sedan made a U-turn.  And what I started noticing was the
16    acceleration and the sudden stopping, meaning the braking, of
17    the red compact sedan where I was leading to believe that he
18    was trying to get Officer Varela to smash into his unit.
19         Well, that heightened my senses that this was
20    becoming much more violent and/or closing that gap due to an
21    ambush situation.
22         Typically, my experiences have led me to know that
23    people that lead the police on vehicle pursuits want to get
24    away, but given that the gap is closing, my training is
25    telling me that propensity of violence is there.

```
 1                      CERTIFICATE

 2                          OF

 3          CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5          I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8          That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10          That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12          That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15          Further, that the foregoing is an accurate

16   transcription thereof.

17          I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21          IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  July 28, 2023.

23

24                        _____
                           Jinna Grace Kim, CSR No. 14151
25
```